# EXHIBIT A

EEOC FORM 131 (11/09)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Robin Singer **Associate Counsel** NEW YORK CITY DEPARTMENT OF EDUCATION 52 Chambers Street, Room 308 New York, NY 10007 | **Edgar D. Telesford** |

THIS PERSON (check one or both)

[X] Claims To Be Aggrieved

[ ] Is Filing on Behalf of Other(s)

EEOC CHARGE NO.
**520-2015-01375**

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act (Title VII)    [ ] The Equal Pay Act (EPA)    [X] The Americans with Disabilities Act (ADA)

[X] The Age Discrimination in Employment Act (ADEA)    [ ] The Genetic Information Nondiscrimination Act (GINA)

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [ ] Please provide by a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by    **06-APR-15** to    **ADR Unit, at (212) 336-3646**
If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

**Deborah A. Reik,**
**ADR Staff Mediator**

*EEOC Representative*

*Telephone*    **(212) 336-3648**

**New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**
**Fax: (212) 336-3625**

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] Race   [ ] Color   [ ] Sex   [ ] Religion   [ ] National Origin   [X] Age   [X] Disability   [X] Retaliation   [ ] Genetic Information   [ ] Other

See enclosed copy of charge of discrimination. This charge is currently assigned to the EEOC's ADR Unit. No position statement is required at this time. Please complete the attached Invitation to Mediate and submit it to us by the date indicated above. If this charge does not mediate, you will then be given a deadline to provide a position statement and will be expected to provide that position statement by the deadline given.

Also Enclosed: Information on Charges of Discrimination; Document Retention Notice & Invitation to Mediate.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| March 16, 2015 | Kevin J. Berry, **District Director** | *[signature]* |

Enclosure with EEOC ·
Form 131 (11/09)

## INFORMATION ON CHARGES OF DISCRIMINATION

### EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14  Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 207(f) of GINA, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

### NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
New York District Office

33 Whitehall Street, 5th Floor
New York, NY 10004-2112

## MEDIATION INVITATION RESPONSE FORM

**Return this completed form before the mediation response date
on the enclosed Notice of Charge of Discrimination.**

Your charge has been selected for EEOC's Mediation Program. The Commission is making available this effective, neutral and confidential process to Charging Parties and Respondents as an efficient alternative to investigation and possible litigation of employment disputes. If either side prefers investigation to mediation, please let us know immediately, so that we may return your charge back to investigation. If both parties agree to mediation, we will attempt to schedule an agreeable date. Please be advised that this process takes approximately 3-4 weeks.

**While the charge is assigned to the Mediation Unit, the due date for the Position Statement is suspended. If either party chooses not to take advantage of the mediation process, the charge will be reassigned to the Enforcement Division and Respondent will be notified in writing of a Position Statement deadline. Please be advised that we expect to receive the Position Statement on or before the Position Statement Deadline.**

CHARGE NUMBER: _____

PARTY NAMES: _____

Please return this form to:

> *ADR Unit - Mediation*
> *New York District Office*
> *Equal Employment Opportunity Commission*
> *33 Whitehall Street, 5th Floor*
> *New York, NY 10004-2112*

Or fax your invitation to:

> *Fax: (212) 336-3625*

(  )   I/ We agree to mediation:

Provide 3 proposed dates (within 21 calendar days): _____

(  )   I/ We decline to participate in the mediation program:

If you decline to participate in the mediation program, please state the reason for declining. This information will be used for evaluative purposes only.

Comments: _____

Indicate:  [ ] Charging Party / Representative     [ ] Respondent / Representative  \     (Please print clearly)

Charge Number/ Party Names: _____

Name _____ Title: _____

Street Address: _____

City, State & Zip: _____

Telephone: _____ Fax: _____

E-mail: _____

### Document Retention Notice Pursuant to Charge Of Discrimination

YOU ARE HEREBY GIVEN NOTICE NOT TO DESTROY, CONCEAL OR ALTER ANY PAPER DOCUMENTS OR ELECTRONIC DATA INCLUDING DATA GENERATED BY OR STORED ON ANY COMPUTER OR COMPUTER STORAGE MEDIA (E.G., HARD DISKS, FLOPPY DISKS, BACKUP TAPES), THAT RELATE TO THE CLAIMS AND DEFENSES IN THE ACCOMPANYING CHARGE OF DISCRIMINATION. FAILURE TO COMPLY WITH THIS NOTICE, EITHER THROUGH INTENTIONAL ACTS OR NEGLIGENCE, CAN RESULT IN SANCTIONS FOR SPOLIATION OF EVIDENCE. SANCTIONS COULD INCLUDE MONETARY PENALTIES AND OTHER COURT-IMPOSED ACTION.

A.  **Paper Documents to be Preserved:**  Hard-copy information which should be preserved includes, but is not limited to:

1.  Personnel files;
2.  Employee data;
3.  Payroll information;
4.  Personnel policies, procedures, and regulations;
5.  Letters, memoranda and notes;
6.  All complaints of discrimination or unfair treatment;
7.  All documents related to internal investigations; and
8.  All other documents containing information relevant to the subject matter of the charge of discrimination.

Note that even where hard-copy documents exist, the Commission may still seek the same information in an electronic format simultaneously.

B.  **Electronic Data to be Preserved:**  Electronic information which should be preserved includes but is not limited to:

1.  Electronic mail (e-mail) and information about e-mail (including message contents, header information and logs of e-mail system usage) sent or received which is relevant to the subject matter of the charge of discrimination;
2.  Databases (including all records and fields and structural information in such databases), containing any reference to or information about the human resources or personnel information of your employees;
3.  Word processing files, including prior drafts, "deleted" files and file fragments, containing information about or relevant to the subject matter of the charge of discrimination;
4.  Electronic data files and file fragments created or used by electronic spreadsheet programs, where such data files contain information relevant to the subject matter of the charge of discrimination; and
5.  All other electronic data containing information relevant to the subject matter of the charge of discrimination.

C.     **Additional Procedures:** The following procedures should be observed or undertaken to further maintain potentially relevant electronic data:

1.    **Online Data Storage on Mainframes and Minicomputers:** With regard to online storage or direct access storage devices attached to your mainframe computers or minicomputers: you should not modify or delete any electronic data files, "deleted" files, or file fragments existing at the time of the filing of this charge, unless a true and correct copy of each such electronic data file has been made and steps have been taken to assure that such a copy will be preserved and accessible.

2.    **Offline Data Storage, Backups and Archives, Floppy Diskettes, Tapes and Other Removable Electronic Media:** With regard to all electronic media used for offline storage, including magnetic tapes and cartridges and other media that, at the time of the filing of the charge, contained any electronic data meeting the criteria listed in paragraph 1 above. You should stop any activity that may result in the loss of such electronic data, including rotation, destruction, overwriting or erasure of such media in whole or in part. This request is intended to cover all removable electronic media used for data storage in connection with your computer systems, including magnetic tapes and cartridges, magneto-optical disks, floppy diskettes and all other media, whether used with personal computers, minicomputers or mainframes or other computers, and whether containing backup or archive data sets and other electronic data, for all of your computer systems.

3.    **Retention of Data Storage Devices:** You should not to dispose of any electronic data storage devices or media that may contain electronic data meeting the criteria listed in paragraph 1 above.

4.    **Fixed Drives on Stand-Alone Personal Computers and Network Workstations:** With regard to electronic data meeting the criteria listed in paragraph 1 above, which existed on fixed drives attached to stand-alone microcomputers or network workstations at the time of the filing of the charge. You should not alter or erase such electronic data, and should not perform other procedures (such as data compression and disk defragmentation or optimization routines) that may impact such data, unless a true and correct copy has been made of such active files and of completely restored versions of such deleted electronic files and file fragments, copies have been made of all directory listings (including hidden files) for all directories and subdirectories containing such files, and arrangements have been made to preserve copies.

5.    **Programs and Utilities:** You should preserve copies of all application programs and utilities, which may be used to process electronic data described herein.

6.    **Evidence Created Subsequent to This Notice:** With regard to electronic data created subsequent to the date of delivery of this letter, relevant evidence is not be destroyed and you should take whatever steps are appropriate to avoid destruction of evidence.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | | ☐ FEPA | |
| | | ☒ EEOC | 520-2015-01375 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Edgar D. Telesford | ▮▮▮▮  ▮▮▮▮ | ▮1959 |

| Street Address | City, State and ZIP Code |
|---|---|
| ▮▮▮▮▮▮▮▮▮ | ▮▮▮▮▮▮ |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| New York City Department of Education ATTN: Robin Singer, Associate Counsel, Ofc of Legal Services | 500+ | (212) 374-6888 |

| Street Address | City, State and ZIP Code |
|---|---|
| 52 Chambers Street, Room 308 New York, NY 10017 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| East New York Middle School of Excellence | | (718) 257-4061 |

| Street Address | City, State and ZIP Code |
|---|---|
| 605 Shepherd Avenue, Brooklyn, NY 11208 | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest        Latest |

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN

☒ RETALIATION ☒ AGE ☒ DISABILITY ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE: 12/3/2015

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

SEE ATTACHED STATEMENT.

COPY

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| *[signature]* Feb 20, 2015 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

EEOC Complaint of:

Edgar D. Telesford



Phone:
Email:

Vs.

Chancellor City of New York
Superintendent-Joyce Stallings-Harte
Principal- Malik Small
Assistant Principal-Suk Ku Lee
Principal/Payroll Secretary-Beth Capozello
Board of Education
52 Chambers Street
New York, NY 10007

RECEIVED
2015 FEB 20  PM 2: 14
EEOC
NEW YORK DISTRICT OFFICE

## I.  Introduction and Statement of Facts

This complaint is in reference to Constructive Discharge, Disparate Treatment, Unequal Terms and Conditions of Employment, Retaliation, Race (Black), Hostile work environment, disparate disciplinary action, Disability, Age discrimination and in violation of Title VI of the Civil Rights Act of 1964 as amended.

On September 4th, 2012, I was appointed to the position of Science Teacher with the Board of Education City of New York, Assigned to East New York Middle School of Excellence Principal Malik Small 605 Shepard Ave Brooklyn, NY 11208 718-257-4061 Principal at a salary $74,000 Yr.

In December 3rd, 2014 I was served with Termination while on approved pay sick leave from On the Job injury. (Exhibit #1). In 2014, I was subjected to subjective performance Evaluations, Hostile Work Environment, in violation of probation agreement.

In June 2014, I sustained an injury in the performance of my duties. (See Medical Forms).  I sustained a line of Duty Injury and went on Approved Sick Leave. Despite the fact that the injury occurred in the performance of my duties, respondent placed me in a Leave Without Pay duty status. (Exhibit #17).

## II.  Jurisdiction

The U.S, Equal Employment Opportunity, is properly vested with jurisdiction because the allegations involve various violations of Title VII of the Civil Rights Act of 1964 as amended.

1

III. Why are Respondent's actions illegal, and why do they constitute disparate treatment?

As mentioned in my introductory statement, I allege that I was subjected to various discriminatory and illegal acts and other similarly situated personnel of different racial groups received preferential treatment from Respondent. This is expressly prohibited by Title VII of the Civil Rights Act of 1964 as amended.

A. Comparators: The below mentioned persons are similarly situated and they are not African Americans.
   a. Mike DeRosa – White male <40 years old (y.o.)
   b. Jeffrey Mastin – White Male <40 y.o.
   c. Margaret Moran – White Female <40 y.o.
   d. Annie Shroll – White Female <40 y.o.
   e. Roy Welsh – White Male <40 y.o.
   f. Lisa Cassaro – White Female <40 y.o.
   g. Ms. Sessa – White Female <40 y.o
   h. Ms. Whittham – White Female <40 y.o.
   i. Ms. Oshan – White Female <40 y.o.

B. See Exhibits:
   7. Hired letter (09/04/2012)
   8. Pay Stubs
   9. LODI Forms
   10. Medical Forms
   11. Copies of Policies and Procedures regarding probationary employees
   12. Policies and procedures regarding evaluations
   13. LODI Approval
   14. 05/27/2014-Staff Complaint letter to O.E.O. about Beth Capozello
   15. Complaint letter about Mrs. Capozello, Mr. Lee, Mr. Small's abuse of power
   16. 01/23/2015-Copy of Complaint Letter (O.E.O)
   17. 09/17/2014 - Paycheck deduction while on LODI - $242.83 (3pgs)

IV. Remedies
   1. Reinstatement to Full-Duty status.
   2. Reassignment to other school where I can make a difference.
   3. Retroactive seniority, back-pay with interest, benefits and Seniority
   4. Compensatory and Punitive Damages
   5. Reasonable attorney fees: As a result of experiencing these discriminatory actions, I have had to hire legal counsel in order to achieve vindication and defend my rights under the law.
   6. Out of pocket expenses: I have also had to expend money on doctors and other professionals in reference to the treatment of my injury incurred in the performance of my duties despite the fact that

2

the injury in question was a performance of duty injury and said costs should have been covered by Respondent.

## V. Affirmation

I do solemnly swear/affirm that the above allegations are true to the best of my knowledge under penalty of law. I also hereby reserve the right to modify/supplement this complaint at a later date.

Sincerely,

Edgar Telesford

Date: _2/19/2015_

Sworn to before me this
19 February 2015

DORLA ANGLIN
Notary Public, State of New York
No. 01AN4980563
Qualified in Nassau County
Cert. Filed in Kings County
Commission Expires _2/26/17_

3

Untitled Page

esford, Edgar,

Congratulations!

This email confirms that a hiring manager would like to select you as a TEACHER - REGULAR GRADES (TRTRQ) at K678 - E. NY Middle School. We are excited to have quality applicants like you join our team! However, your action is required to complete this transaction.

Every employee of the New York City public schools is required by State law to undergo a background check, including obtaining fingerprint clearance prior to commencing employment. If you were fingerprinted after July 1, 1990, for the New York City Department of Education (DOE), you do not have to be fingerprinted again. All other prospective employees must undergo a background check, including obtaining fingerprint clearance before commencing service in our schools. To be fingerprinted by the DOE, you need a computer generated nomination letter from the Principal which confirms your eligibility to be fingerprinted. In addition, you must bring a valid government-issued photo ID (US Passport, State drivers license, etc.) AND a (U.S.) birth certificate or Social Security card to:

HR Connect Walk-In Center
Division of Human Resources
65 Court Street, Room 102
Brooklyn, N.Y. 11201.

The HR Connect Walk-In Center is open every business day from 8:30 AM to 5:00 PM. The telephone number is 718-935-4000. The cost of fingerprinting is $115; you may pay by check, money order, or credit card (cash and American Express cards are NOT accepted). Please come in to be fingerprinted as soon as possible, but no later than 10 days after you receive this letter, since this process is required in order for you to be eligible to proceed with all other hiring steps.

## Additional Information for School-Based Staff:

Provide proof of State Certification or a DOE-issued license - Teachers, Guidance Counselors, School Psychologists, School Social Workers, and other school-based staff must show proof of certification in addition to submitting fingerprints as described above. You cannot commence service in our schools, and a paycheck cannot be issued to you until a valid credential can be identified. If you hold a current New York State Education Department Certificate we can validate your credential automatically. In other cases, additional effort is required. If necessary please contact your CFN HR Director at the Children First Network 521 for further assistance. For more information on state certification, click here or copy and paste this address in your web browser:
http://schools.nyc.gov/TeachNYC/certification/default.htm

Familiarize yourself with how your salary is calculated - The salary for Teachers, Guidance Counselors, School Psychologists, School Social Workers, and other school-based staff is determined by two factors: (1) prior related professional experience and (2) educational attainment. You will be placed on a salary step based on the work experience you reported in your online application for employment. You may be eligible for additional salary (known as a salary differential) if you have completed an additional 30 college-level credits beyond what was required for your Bachelor's degree. Please know that salary differentials are not granted automatically. Even though you may have reported your education in your online application for employment, a separate application – plus supporting documentation (e.g., transcripts) – must be submitted in order to be considered for this pay increase. If you qualify for a salary differential upon hire, your online salary differential application and all supporting documentation must be received by February 28th in order to receive retroactive monies.

To learn more about salary steps and differentials, please visit the OSS website:
http://schools.nyc.gov/teachersalary

On behalf of the Chancellor and the Division of Human Resources and Talent, welcome to The New York City Department of Education! We all look forward to working with you to create a system of great schools.

Sincerely,

Untitled Page.                                                    Page 2 of 2

The Division of Human Resources and **Talent**
New York City Department of Education

EIS Paystub Page

[ ⤓ Download ]   [ ✓ Close ]

| The City of New York | | | EMPLOYEE DIRECT DEPOSIT PAY STATEMENT | | | | Payroll Management System | | |
|---|---|---|---|---|---|---|---|---|---|
| ITD# | PAY PERIOD | PAY DATE | | | | PAYROLL # | WORK UNIT | CHECK NUMBER | DISTRIBUTION # |
| | 12/16/14 12/31/14 | 12/31/14 | | | | 741 | | 244254465 | 19K678 |

| PENSION # | ELECTRONIC FUNDS TRANSFER INFORMATION | | | | REFERENCE # | CD | EMPLOYEE NAME |
|---|---|---|---|---|---|---|---|
| 944642 | 226079036 | | | | 0318311 | | TELESFORD, HOGAN D |

| TAX INFO | TOTAL EARNINGS | FEDERAL TAX | SOCIAL SECURITY | MEDICARE | STATE TAX | CITY TAX | CITY WAIVER | TOTAL DEDUCTIONS THIS PERIOD |
|---|---|---|---|---|---|---|---|---|
| THIS PERIOD | 3,096.29 | 264.41 | 191.97 | 44.9 | 59.73 | 61.31 | | 1,972.18 |
| YEAR TO DATE | 74,418.06 | 7,797.15 | 4,612.69 | 1,078.77 | 3,642.04 | 1,617.08 | | NET PAY |

| DESCRIPTION | UNITS / HOUR | AMT. EARNED PRIOR PERIOD | UNITS / HOUR | AMT. EARNED THIS PERIOD | LEAVE BALANCE AS OF: 12/30/14 | | | | 1,124.11 |
|---|---|---|---|---|---|---|---|---|---|
| RECURRING GROSS | | | | 3,096.29 | | | | | |

| DESCRIPTION | AMOUNT THIS PERIOD | GOAL AMOUNT OR TOTAL INSTALLMENT # | BALANCE DUE OR INSTALLMENT LEFT | DESCRIPTION | AMOUNT THIS PERIOD | GOAL AMOUNT OR TOTAL INSTALLMENT # | BALANCE DUE OR INSTALLMENT LEFT |
|---|---|---|---|---|---|---|---|
| UFT-PGL DUE S | -0.75 | 75 | 68 | U/T | -53.14 | 23,000.00 | 2,366.11 |
| TR PN LNS | -60.70 | | | TRS TDA | -1,034.94 | | |
| TRS 414H STD | -139.33 | | | | | | |

[ ⤓ Download ]   [ ✓ Close ]

EIS Paystub Page

Page 1 of 1





EIS Paystub Page



| The City of New York | EMPLOYEE DIRECT DEPOSIT PAY STATEMENT | Payroll Management System | | | |
|---|---|---|---|---|---|

| ITEM # | PAY PERIOD | PAY DATE | | | PAYROLL # | WORK UNIT | CHECK NUMBER | DISTRIBUTION # |
|---|---|---|---|---|---|---|---|---|
| | 11/16/14 | 11/30/14 | 11/26/14 | | 742 | | Z43993717 | 394478 |

| PENSION # | ELECTRONIC FUNDS TRANSFER INFORMATION | | | REFERENCE # | CD | EMPLOYEE NAME |
|---|---|---|---|---|---|---|
| 944842 | 726078036 | | | 0318311 | | TELESFORD, EDGAR D |

| TAX INFO | TOTAL EARNINGS | FEDERAL TAX | SOCIAL SECURITY | MEDICARE | STATE TAX | CITY TAX | CITY WAIVER |
|---|---|---|---|---|---|---|---|
| THIS PERIOD | 3,173.79 | 384.41 | 191.97 | 44.9 | 59.73 | 63.31 | |
| YEAR TO DATE | 68,225.48 | 7,228.35 | 4,128.75 | 994.98 | 2,442.56 | 1,522.46 | |

| DESCRIPTION | UNITS / HOURS | AMT. EARNED PRIOR PERIOD | UNITS / HOURS | AMT. EARNED THIS PERIOD | LEAVE BALANCE AS OF 12/30/14 |
|---|---|---|---|---|---|
| TOUR ONCE ARTHR RECURRING GROS | | | | 77.50 3,096.29 | |

TOTAL DEDUCTIONS THIS PERIOD
1,522.18
NET PAY
1,201.11

| DESCRIPTION | AMOUNT THIS PERIOD | GOAL AMOUNT OR TOTAL INSTALLMENT # | BALANCE DUE OR INSTALLMENT LEFT | DESCRIPTION | AMOUNT THIS PERIOD | GOAL AMOUNT OR TOTAL INSTALLMENT # | BALANCE DUE OR INSTALLMENT LEFT |
|---|---|---|---|---|---|---|---|
| UFT-POL DUE S | -0.75 | | | UFT | -33.16 | | |
| TR PN UNS | -60.70 | 75 | 70 | TRS TDA | -1,036.94 | 23,000.00 | 4,435.99 |
| TRS 414H STD | -139.33 | | | | | | |

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Beth Capozello  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Beth Capozello.
c/o Malik small.
@ ymsc.
605 Shepherd Ave.
Brooklyn N.Y. 11208

3. Service Type
☐ Certified Mail   ☐ Priority Mail Express™
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)     7012 3460 0001 7911 1197

PS Form 3811, July 2013        Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Beth Capozello  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Ms. Beth Capozello
c/o Malik small
Enymse Cyk 6787
605 Shepherd A.
Brooklyn, N.Y. 11208

3. Service Type
☐ Certified Mail®   ☐ Priority Mail Express™
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

PS Form 3811, July 2013        Domestic Return Receipt

---



**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®



INJURED

- D. ☐ PRINCIPAL/ASST. PRINCIPAL
- E. ☐ GUIDANCE COUNS., SCH. PSYCH., SCH. SOCIAL WKR., ETC.
- I. ☐ PARENT/GUARDIAN
- J. ☐ VISITOR-DOE EMPLOYEE
- O. ☐ HOURLY SUPPORTIVE (SCH. AIDE, ETC.)
- P. ☐ VOLUNTEER
- Q. ☐ OTHER/SPECIFY

11. Assignment Location (Dist/Boro/School or Division/Office): 19-BK-678 (ENYMSE)

12. Geographical Location of Injury if Off-Site (Only Answer if Location is Different from #11): Highland Park, Brooklyn

13. Telephone Number (Where Injury Occurred): D/K.

14. Name of Supervising Teacher (If Student Injured): Mr. Sukkilee

15. Name of Site Supervisor/Principal: Mr. Malik Small

16. Date of Injury (Month/Day/Year): 06, 06, 2016

17. Time of Injury (Circle AM or PM): 1:56 P.M. AM (PM)

18. Total Years of Service With DOE (If Employee Injured): 2

19. Grade Level/Classroom/Class (If Student Injured):

PLACE APPLICABLE NUMBERS IN THE BOXES BELOW, USING BLUE OR BLACK INK.

INJURY DESCRIPTION

**20. GENERAL ACTIVITY**
01 After School Activities, 02 Before School Activities, 03 Breakfast Program, 04 Classroom Activity, 05 Construction/Repair, 06 Extended Use of School Building, (07) Field Trip, 08 Going to/from Class, 09 Instruction/Teaching, 10 Intramural Sports, 11 Lunch/Recess, 12 PSAL Athletics, 13 Toileting, 98 N/A, 99 Other

Box: 07

**21. SPECIFIC ACTIVITY**
01 Aerobics, 02 Badminton, 03 Baseball, 04 Basketball, 05 Bowling, 06 Carrying, 07 Climbing, 08 Crew, 09 Dancing, 10 Dodgeball, 11 Emergency Drills, 12 Fencing, 13 Football, 14 Free Play, 15 Golf, 16 Gym, 17 Gymnastics, 18 Handball, 19 Hockey, 20 Jump Rope, 21 Lacrosse, 22 Lifting/Lowering Object, 23 Lifting/Lowering Student, 24 Punchball

**21. SPECIFIC ACTIVITY CONT'D**
25 Rope Climbing, 26 Running, 27 Security Activities, 28 Skiing, 29 Small Group Games, 30 Soccer, 31 Softball, 32 Standing, 33 Swimming, 34 Teaching/Instruction, 35 Tennis, 36 Tetherball, 37 Track/Field, 38 Tumbling, 39 Volleyball, 40 Walking, 41 Weight Training, 42 Wheelchair, Use of, 43 Wrestling, 44 N/A, 98 Other, 99

Box: 98

**22. INJURY LOCATION**
01 Ambulance, 02 Athletic Field, 03 Auditorium, 04 Bleacher, 05 Boiler Room, 06 Cafeteria, 07 Classroom, 08 Elevator/Escalator, 09 Gymnasium, 10 Hallway/Corridor, 11 Kitchen, 12 Lab, 13 Locker Area, 14 Lunchroom, 15 Office, 16 Parking Lot, 17 Playground

**22. INJURY LOCATION CONT'D**
18 Public Transportation, 19 Restroom, 20 Pool, 21 School Bus, 22 School Yard, 23 Science Lab, 24 Shop, 25 Shower Area, 26 Sidewalk, 27 Stadium, 28 Staircase/Stairway, 29 Swimming Pool, 30 Workshop, 31 N/A, 98 Other

Box: 98

**23. CAUSAL AGENT**
01 Animal, 02 Asbestos, 03 Ball/Bat, 04 Bloodborne Pathogens, 05 Bodily Excretions, 06 Cardiovascular Machines, 07 Collapse/Structural, 08 Construction Related, 09 Debris/Glass, 10 Door/Door Closing device, 11 Electricity, 12 Equipment Failure, 13 Explosion, 14 Falling Object, 15 Fence, 16 Fire, 17 Floor-Broken, 18 Floor-Slippery/Wet, 19 Free Weights, 20 Furniture, 21 Gym Apparatus, 22 Heating/Ventilation System, 23 Insect

**23. CAUSAL AGENT CONT'D**
24 Lab Chemicals, 25 Lead Contamination, 26 Mechanical Equipment, 27 Medical Waste, 28 Obstruction, 29 Penetrating Object, 30 Playground Equipment, 31 Power Tool/Hand Tool, 32 Private Vehicle, 33 Railing/Stairway/Slope, 34 School Bus, 35 Sidewalk Broken/Uneven, 36 Snow/Ice, 37 Toxic Gases, 38 Trees/Bushes, 39 Water, 40 Weapon, 41 Weight Machines, 42 Window, (98) N/A, (99) Other

Boxes: 98, 99

**24. CAUSAL AGENT-PERSON**
(01) DOE Employee, 02 Other Person, 03 Other Student, 04 Self, 98 N/A

Box: 01

**25. BODY PART(S) INJURED**
01 Abdomen, (02) Ankle, 03 Arm, 04 Back, 05 Buttocks, 06 Cheek, 07 Chest, 08 Chin, 09 Ear, 10 Elbow, 11 Eye, 12 Face, 13 Finger, 14 Fingernail, 15 Foot, 16 Forehead, 17 Groin, 18 Hair, 19 Hand, 20 Head, 21 Knee, (22) Leg, 23 Lip, 24 Mouth, 25 Neck, 26 Nose, 27 Ribs, 28 Shoulder, 29 Stomach, 30 Thigh, 31 Toe, 32 Toenail, 33 Tooth, 34 Trunk, 35 Wrist, 98 N/A, 99 Other

Boxes: 02, 22

PLACE AN "X" IN THE APPROPRIATE BOXES BELOW USING BLUE OR BLACK INK.

26. Was Parent/Guardian Contacted? YES ☐ NO ☒

27. Did Injured Person Refuse Medical Attention? YES ☐ NO ☒

28. Was First Aid Administered at School/Site? YES ☐ NO ☒

29. Was Injured Person Taken to a Hospital? YES ☒ NO ☐

30. Was an Ambulance Utilized? YES ☒ NO ☐

31. Name of Nurse/Physician Used at School/Site

32. Name of Hospital

33. Name of Attending Physician

34. Signature of Injured Person: [signature] Title: Science Teacher Date: [illegible]

35. Name of Preparer (If Other than Injured Party): [signature] Signature: OSAMO

36. Signature of Site Supervisor/School: [signature] Date: 7/10/17

37. Signature of Superintendent: Date:

(IF LODI) APPROVED ☐ DISAPPROVED ☐

ACCESS TO THIS FORM IS GOVERNED BY THE FEDERAL FAMILY EDUCATIONAL RIGHTS AND PRIVACY ACT AND CHANCELLOR'S REGULATION A-820 GRANTING PARENTS THE RIGHT TO INSPECT AND MAKE COPIES OF RECORDS MAINTAINED BY THE SCHOOLS THAT PERTAIN TO THEIR CHILD. ALL INFORMATION CONCERNING OTHER STUDENTS MUST BE DELETED FROM ANY COPIES MADE AVAILABLE TO PARENTS PURSUANT TO THIS PARAGRAPH IN ACCORDANCE WITH THE PROHIBITIONS ON RELEASE CONTAINED IN LAW AND REGULATION. PERSONAL INFORMATION CONCERNING TEACHERS OR OTHER STAFF (E.G. HOME ADDRESS, AGE) MUST ALSO BE DELETED FROM COPIES MADE AVAILABLE TO PARENTS.

O.O.R.S.
Dept. of Education Control # ___/___/___

FORM [illegible] (REV [illegible])

DISTRICT COPY

2014~ Oct. 14. 2014  2:42PM        7182574738 >>                    No. 2737   P. 1 2/2

2014-07-09 00:44  678        7182574738 >>       7182402731           P 2/2

COMPREHENSIVE INJURY REPORT
PART A - FACT SHEET

TELSFORD    EDGAR                D.

N/A      085,92,0341   841482     1959

DISTRICT COPY

**INJURY DESCRIPTION**

SCHOOL CENTRE(S) had field trip/field ___ MANNER IN WHICH THE INJURY OCCURRED.

class on Friday, June 6th, 2014.

The Principal, Rev. Marie Small, the Assistant

Principal, Mrs. Sue Ra Lee, and the

teacher, Miss Eric Young Ki, were all present

in area.

The last event of the day was the

tug of water.

Next, I knew I was on the field

laying on my back and teachers and

students were standing around asking

me to get up — but I could not

move my leg to get up.

The result is a broken left

tibia and fibula bones

a. Name of Preparer (if Other than Injured Person)

b. Signature of Injured Person

[signature]

Title

Date

ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS, that I, _EDGAR D. TELESFORD_
residing at _530 PARKSIDE AVE #2B_, Borough of _BKLYN_ City of New
York, and employed by the City School District of New York as _a science teacher_
_____ assigned to _PN YMS GG 69ZK_ for and in consideration
of being granted an excuse of absence or leave of absence with pay by the City School District of New
York, do hereby assign, transfer and set over unto the City School District of New York such part of any
amount that may hereafter become payable to me as a result of any judgment or settlement of any action or
claim I may have or which might be brought on my behalf against such person or persons, party or parties,
associations or corporations whatsoever as may be liable to me or to my representatives for the injury
sustained by me and for which I have received an excuse of absence or a leave of absence with pay from
the City School District of New York, as shall be equal to the pay that I receive from the City School
District of New York during such excuse of absence or leave of absence.

I hereby authorize the City School District of New York to collect the amount paid to me by the
City School District of New York during my leave of absence or excuse of absence, from the party or
parties who shall be or become indebted to me as the result of any judgment or settlement of any action or
claim arising from the injury sustained by me for which I received an excuse of absence or a leave of
absence with pay form the City School District of New York, and I further stipulate and consent that the
sums paid to me by the City School District of New York during my excuse of absence or leave of absence
shall constitute a primary lien which may be placed or charged against such action, claim and/or funds
secured as a result of such action or claim as I may have, regardless of who may be in possession of such
funds.

I hereby authorize and direct such person or persons, party or parties, firm or firms, corporation or
corporations who will or may become indebted to me by reason of the aforesaid injury sustained by me to
pay the City School District of New York as such assignee, out of the amount due or which may become
due to me, such sums as are claimed by the said City School District of New York for the amount of money
given to me by the City School District of New York during my absence, without further notice to such
parties from me, and I hereby agree to hold such parties harmless on account of such payments.

I hereby authorize and direct my attorney or attorneys, or other person or persons into whose
hands or possession any of the proceeds shall come, to hold in trust for and to pay over the City School
District of New York, such sums as are claimed by the said City School District to have been paid to me by
the City School District of New York during my absence.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this _24_

                                        day of _June_ , 20 _14_

File Number _0641499_

Social Security # ██████████                    _Michael E. Jolly_ (L.S.)
                                            Michael E. Gauen
                                            Notary Public, State of New York
                                            County: Kings No. 01GA6179159
STATE OF NEW YORK                           Valid from 12/24/00? 12/24/011
                    } SS:                       12/24/1?  - 12/24/15
COUNTY OF _____

        On this _24_ _____ day of _June_ , 20 _14_ , before me personally
appeared _EDGAR D TELESFORD_ _____ to me known and known to me to be the
individual described in and who executed the foregoing instrument and duly acknowledged to me that he
executed the same.



-10-

A QUICK-START GUIDE FROM THE UNITED FEDERATION OF TEACHERS

# Summing it up:
## An end-of-year guide to the
# new teacher evaluation & development
## SYSTEM

THIS QUICK-START GUIDE BELONGS TO:

*l. Telesford.*



**UFT**

United Federation of Teachers
*A Union of Professionals*

2013-2014 school year

This is the first — and we hope the last — guide to ending a school year under this particular teacher evaluation and development system. The UFT is currently negotiating with the city about the evaluation system.

For now, as we approach the end of the 2013-14 school year, we hope this guide will help you navigate the evaluation process over the next few months.

To begin, a quick review of some of the terms you have heard throughout this year and will see again in this guide:

**Artifacts:** These are items that you as a teacher gather over the course of the school year to illustrate and provide tangible evidence of your best teaching practices.

**Components and component score:** Components are the 22 specific categories outlined in the four domains of Danielson's Framework for Teaching (2013 Revised Edition). Each component is scored on a range of 1 to 4 based on observations and submitted teacher artifacts.

**Domains:** The components of the Danielson Framework are grouped into four domains: Domain 1 - planning and preparation; Domain 2 - the classroom environment; Domain 3 - instruction; Domain 4 - professional responsibilities.

**Evaluator (supervisor):** Your evaluator or supervisor can be your principal, an assistant principal, district superintendent or assistant superintendent who has received training to observe and evaluate teachers in accordance with state Education Law § 3012-c.

**Final composite APPR rating or APPR composite score:** The final score you receive will be based on the composite scores of the three parts of the Annual Professional Performance Review (APPR): the state measure of student learning; the local measure of student learning; and other measures of teacher effectiveness including observations.

**Group measures:** Also called grade-level or schoolwide measures, these are any measures that cross classrooms. They are based on all the students in a particular grade and subject who are taking the same assessments, even if they take them with different teachers.

**HEDI:** This is an abbreviation for the four rating categories — highly effective, effective, developing, and ineffective — established by the state education commissioner.

## Winding down the year: The last 90 days

April 11: Last day to submit teacher artifacts, except at your summative conference



April 25: First day for summative conferences



June 6: Last day for observations



June 20: Last day for summative conferences

Introduction

# Observations and other measures of teacher effectiveness

✓ **Last day to submit artifacts is April 11 or at summative conference:**

Artifacts give you an opportunity to demonstrate your work in a way that might not be captured through an observation. For example, Danielson component 4C discusses communicating with families. If you send home a parent newsletter, you might consider submitting those newsletters as an artifact.

- You choose up to eight artifacts for the year. Visit *www.uft.org/evaluation/artifacts* for a partial list of possible artifacts.

- Artifacts are about "best foot forward." Think about how you can document for your school leaders your best work this year.

- You could place a brief explanation page about your artifacts in your artifact folder but it is NOT required.

- Find out the process for handing in artifacts in your school. Be sure to follow it so that your artifacts are understood to be ARTIFACTS, not some unrelated administrative requirement.

- Send a follow-up email after submission asking for feedback.

- If there are any Danielson components for which your evaluator has not collected evidence, he or she must ask you for additional artifacts or conduct additional observations prior to your summative conference. If you don't submit these additional artifacts, you may be given an ineffective rating for those components.

✓ **Summative end-of-year conferences will run from April 25 to June 20:**

This is a mandatory, one-on-one conference with your principal or evaluator that should occur during the school day.

- It is an opportunity to discuss the year including your classroom observations and any artifacts you submitted.

- It is also an opportunity to review your professional goals for the year, how you met them and the work you see ahead.

- Be prepared to advocate for your strengths.

- Be ready to refer to your observation reports and your responses.

- Be armed with any remaining artifacts that you have chosen to submit.

✓ **Last day for observations is June 6:**

- It is entirely the evaluator's responsibility to conduct the required number of observations, but if you have not had the required number of observations by now prior to the summative conference you may want to document that in writing and give it to your chapter leader both as an email and a hard copy.

## Your Professional Records

Here are some documents you could take to your summative conference:

➤ A copy of your teacher evaluation option form and the videotape form from your initial planning conference.

➤ Copies of all observation reports; copies of all feedback and your responses to feedback, if applicable; and any other documentation or notes you have on your observations and feedback.

➤ Documentation or notes on any and all requests you have made for assistance, materials or professional development and on the responses to those requests.

➤ Copies of all artifacts submitted and any feedback and scoring on artifacts.

It is also important that you keep records in case down the road you need to appeal your year-end rating. A more complete list of records to keep is at *www.uft.org/evaluation.*

## Your rating on observations and other measures of effectiveness

No later than 10 days after your summative conference, you should receive your rating for the portion of your evaluation on observations and other measures of teacher effectiveness. Each Danielson component in all four domains is rated, and then these smaller individual ratings are combined through a complex formula into a single number between 1 and 4 that will fall into a category for highly effective, effective, developing or ineffective (known as HEDI categories).

(After the rating on the 1-to-4 scale is calculated, it is converted to a 60-point scale, representing 60 percent of your overall year-end rating. You can find the conversion chart at www.uft.org/evaluation.)

*Rating categories for observations and other measures of effectiveness:*

| Highly Effective | 3.26 - 4.00 |
| Effective | 2.51 - 3.25 |
| Developing | 1.76 - 2.50 |
| Ineffective | 1.00 - 1.75 |

The Danielson Framework for Teaching, with the 22 components to be used in the teacher evaluation and development process:

### Domain 1: Planning and Preparation

- 1a  Demonstrating Knowledge of Content and Pedagogy
- 1b  Demonstrating Knowledge of Students
- 1c  Setting Instructional Outcomes
- 1d  Demonstrating Knowledge of Resources
- 1e  Designing Coherent Instruction
- 1f  Designing Student Assessments

### Domain 4: Professional Responsibilities

- 4a  Reflecting on Teaching
- 4b  Maintaining Accurate Records
- 4c  Communicating with Families
- 4d  Participating in the Professional Community
- 4e  Growing and Developing Professionally
- 4f  Demonstrating Professionalism

### Domain 2: Classroom Environment

- 2a  Creating an Environment of Respect and Rapport
- 2b  Establishing a Culture for Learning
- 2c  Managing Classroom Procedures
- 2d  Managing Student Behavior
- 2e  Organizing Physical Space

- 3a  Communicating With Students
- 3b  Using Questioning and Discussion Techniques
- 3c  Engaging Students in Learning
- 3d  Using Assessment in Instruction
- 3e  Demonstrating Flexibility and Responsiveness

2

# Measures of student learning (MOSL)

In addition to observations and other measures of teacher effectiveness, your evaluation will come from measures of student learning based on state and local assessments that your students take and possibly on group measures.

These measures are always based on student growth — in other words, they measure where each student ended compared to where the student began. To be as fair as possible, the measures compare each student's growth to the growth of similar students.

In deciding whether students are similar, some of the factors that may be considered are the students' academic history, special education status, ELL status and whether they are economically disadvantaged.

## How will assessment results figure into your evaluation?

The state has set standards for student growth. If your students' growth is average compared to similar students, then the state standard shows you as an effective teacher.

Ultimately, teachers will be awarded points based upon the extent to which students have met these standards, i.e. how well they did compared to students just like them.

| Rating | Standards |
|---|---|
| Highly Effective | Results are well above average for similar students. |
| Effective | Results are average for similar students |
| Developing | Results are below average for similar students |
| Ineffective | Results are well below average for similar students |

## Summing it up

To calculate your overall rating, each of your ratings on the state and local measures of student learning will be converted to a 20-point scale and these points will be added to those you received on the 60-point scale for other measures of teacher effectiveness. Adding up these points will give you your total points on a 100-point scale.

| Final Rating | State measures of student learning 20pts | Local measures of student learning 20pts | Other measures of teacher effectiveness 60pts | Overall composite score |
|---|---|---|---|---|
| HIGHLY EFFECTIVE | 18-20 | 18-20 | 55-60 | 91-100 |
| EFFECTIVE | 15-17 | 15-17 | 45-54 | 75-90 |
| DEVELOPING | 13-14 | 13-14 | 39-44 | 65-74 |
| INEFFECTIVE | 0-12 | 0-12 | 0-38 | 0-64 |

For more information, go to *www.uft.org/evaluation*.

Contact your chapter leader or district representative with any questions or concerns.

If you are concerned about how the evaluation system is being implemented at your school, talk to your chapter leader or district representative about filing an APPR complaint form.

➤ If you are concerned about the rating you may receive for the 2013-14 school year, talk to your chapter leader or district representative about filing an APPR end-of-the-year questionnaire.

Your district representative can be reached through the union's borough offices:

**Bronx**
718-379-6200
Hours:
Monday - Friday:
10 a.m. - 7 p.m.

**Brooklyn**
718-852-4900
Hours:
Monday,
Wednesday,
Thursday, Friday:
10 a.m. - 6 p.m.
Tuesday:
10 a.m. - 7 p.m.

**Manhattan**
212-598-6800
Hours:
Monday -
Thursday:
10 a.m. - 7 p.m.
Friday:
10 a.m. - 6 p.m.

**Queens**
718-275-4400
Hours:
Monday, Tuesday,
Wednesday, Friday:
10 a.m. - 6 p.m.
Thursday:
10 a.m. - 7 p.m.

**Staten Island**
718-605-1400
Hours:
Monday,
Wednesday,
Thursday, Friday:
10 a.m. - 6 p.m.
Tuesday:
10 a.m. - 7 p.m.

# END-OF-YEAR TIMELINE DATES AND ITEMS





# At a Glance: Best Practices for Teacher Improvement Plans (TIP)

### What:

Any teacher who receives an overall *Advance* rating of "Developing" or "Ineffective" for school year 2013-14 will begin implementing a Teacher Improvement Plan (TIP) by September 17, 2014. Teachers have the opportunity to collaborate with their administrator in TIP development and will be supported in TIP implementation. The purpose of a TIP is to assist teachers to work to their fullest potential. The plan will identify specific improvement areas as well as a timeline and plan for assessing improvement. This document helps evaluators consider strategies for creating meaningful TIPs in collaboration with their teachers. Teachers may also find it useful for their thinking.

### When:

The TIP will be discussed as part of the Initial Planning Conference (IPC) which will be held between September 2nd and 17th for teachers who received an overall "Ineffective" or "Developing" rating. Teachers need to receive a TIP by the tenth day of school (September 17th).  This TIP may be subject to further discussion at an additional meeting as described below.



For the 2014-15 school year, teachers rated "Ineffective" may request, in writing, a separate meeting with their evaluators to further discuss the TIP.  If requested, this meeting shall occur at a mutually agreed-upon time but no later than October 3, 2014. For teachers rated "Developing," they may request, in writing, a separate meeting to further discuss the TIP and such request shall not be unreasonably denied.  This meeting shall also occur at a mutually-agreed upon date but no later than October 3, 2014. Based on the conversation with the teacher (whether rated "Ineffective" or "Developing") at this separate follow-up meeting, the evaluator may also modify the TIP prior to October 3, 2014.

### *Best Practices for Creating and Implementing a TIP*

To develop a TIP that supports a teacher's growth, it is recommended that evaluators and teachers:

> Communicate: Let your teachers know that you're ready to listen, learn, and engage in a professional conversation through the TIP process throughout the school year.

> Collaborate: Invite teachers to reflect on their own teaching practice and evidence of student learning to identify areas of improvement and bring these ideas to the first TIP meeting. During that meeting discuss and identify the action steps to achieve improvement in these areas, resources and support for these steps, the timeline and how progress will be assessed. In subsequent TIP meetings, reflect on progress and determine next steps for the TIP improvement areas.

> Check in frequently. Formal and informal check-ins should occur throughout the year.

As part of the year-long TIP process, the teacher and evaluator will engage in the following meetings:

- Meeting #1: (Fall) To occur in the same meeting as the Initial Planning Conference or in a follow-up TIP meeting requested in writing and conducted before October 3rd
- Meeting #2: (Midyear) To occur between January 2 – April 30
- Meeting #3: (Spring) To occur in the same meeting as the Summative End-of-Year Conference

If the teacher and evaluator are unable to come to agreement on when to meet, the final decision will rest with the evaluator.





### What happens prior to the first TIP meeting?

Identify any teacher who received a "Developing" or an "Ineffective" rating for school year 2013-14. Plan to give yourself enough time to prepare for each meeting. Then, schedule Initial Planning Conferences, prioritizing teachers receiving TIPs. Invite teachers to collaborate in the TIP process by sharing their own ideas for the plan.

Prepare for the meeting by reviewing relevant evidence from last school year like observation reports, feedback that was shared, and Measures of Student Learning assessment results to identify areas for improvement.

*TIP Resources*

Evaluators and teachers may find it helpful to draw upon the following resources available on the *Advance* Intranet when creating the TIP:

- Sample TIPs
- Ideas Bank of Action Steps for Teacher Growth Areas
- Next Steps in the Teacher Development and Improvement Guide for Professional Growth

### What happens during the fall TIP Meeting(s)?

The first TIP meeting that occurs by September 17 involves several steps:

1. Identify specific areas in need of improvement:
   - Share the areas in need of improvement, connecting those areas to evidence from last school year's annual professional performance review.
   - Invite the teacher to share his/her ideas about the TIP.

2. Identify action steps to achieve improvement in these areas, including resources and/or support systems, and a timeline:
   - Discuss with the teacher specific actions for what the teacher will be expected to do to improve in the identified areas.



3. Identify how the improvement will be assessed:
   - Discuss how progress will be measured and assessed.
   - Schedule a minimum of two additional mutually agreed upon meeting dates with the teacher. These meetings include:
     - Meeting #2: To occur midyear between January 2 – April 30
     - Meeting #3: To occur in the spring, at same meeting as the Summative End-Of-Year Conference

Note: Teachers may request the attendance of a union representative at the fall TIP meeting.

### What happens after the fall TIP meeting(s)?

The evaluator finalizes the TIP and enters the TIP in the *Advance* Web Application so that the plan:
- Delineates specific, realistic, achievable activities[1] for the teacher. Also, it identifies a timeline for achieving the action steps/activities.
- Identifies specific resources and support systems available to assist the teacher to improve performance (e.g., professional development, peer visits, content area specialists, materials).
- Specifies next steps to be taken if the teacher is successful, partially successful, or unsuccessful in efforts to improve performance.

The evaluator shares a copy of the TIP with the teacher by September 17, which is signed by both the principal and teacher and placed in the teacher's file. As noted on page one, the teacher may request a follow-up meeting to discuss the TIP. Based upon the discussion with the teacher, the evaluator may modify the TIP after finalizing the plan. In the event the teacher and evaluator cannot come to an agreement on the content of the TIP, the



[1] Any activities should be consistent with the Collective Bargaining Agreement.

final decision will rest with the evaluator. If any modifications are made, a signed copy (by both teacher and principal) of the modified TIP must be placed in the teacher's file by October 3, 2014.

The TIP is implemented with the teacher engaging in the action steps/activities and with the support outlined in the TIP. Through the cycles of observations and feedback, the evaluator assesses practice and shares feedback related to the teacher's areas of improvement. Also, activities during professional learning time and Circular Six /professional periods may be aligned with the TIP.

# What happens in the mid-year and spring TIP meetings?

At each one of the scheduled meetings, the teacher is responsible for presenting evidence to his/her evaluator that demonstrates the progress the teacher has made/is making towards achieving improvement on the outlined activities. It is the evaluator's responsibility to document on the TIP form the completion of each activity for improvement. Teachers and administrators will look to teaching practice and student outcomes for evidence of growth in the identified areas for improvement. As with all teachers, annual ratings for teachers with TIPs are calculated from the Measures of Teacher Practice and Measures of Student Learning components of *Advance*.

If the teacher successfully completes all activities for improvement outlined in the TIP prior to the final meeting, each subsequent TIP meeting between the teacher and evaluator will serve as a way to provide opportunities to further improve on the teacher's performance.

# What happens with the TIP at the end of the school year?

Upon successful completion of all activities outlined for improvement and after the final TIP meeting between the teacher and evaluator, the TIP is completed.

If prior to the final TIP meeting the teacher is unable to successfully satisfy all the identified activities for improvement that were outlined in the TIP, the purpose of the final meeting will shift to a discussion of the reasons for non-completion of those activities, where the teacher could improve his/her performance, and possible professional development opportunities in which the teacher may wish to engage.

The evaluator shall maintain copies of all documents used in the development and implementation of the TIP, have the documents signed by the teacher, and place copies of all documents in the teacher's permanent personnel file.

*Plan Ahead...*

Consider how to best organize the TIP related documents for each teacher and copies of all documents used in the development and implementation of the TIP process. Are proper logs and a place in the teacher's personnel file updated in a timely fashion?

3

-11-

Telesford, Edgar (MR # 9506705)                                    Encounter Date: 06/12/2014

ROS:
Const: no fever/chills, no wt loss
Chest: No cough/wheeze
CV: no palps/no CP
Abd: no abd pain, no diarrhea
MSK: +L leg pain
Neuro: no numbness/tingling.

Physical Exam:
Vital Signs:
BP:          116/78
Pulse:       78

All vital signs reviewed

Axox3, nad
LLE: splint intact
Skin edges intact
Moving all toes, 5/5 ehl/fhl
Silt all exposed toes, dp/sp
vasc intact cr<2s, 2+DP
No pain with passive stretch of toes
Overall tibial rotation clinically appears wnl

Imaging:
XR L tibia: no interval displacement of tibia-fibula.  Overall alignment acceptable sagittal
and coronal planes, ~25% cortical translation.

A/P: 54M ~1wk s/p splinting of L tibia-fibula fx with XRs today showing maintenance of
alignment, length and clinically acceptable rotatiojn

-i had lengthy discussion with the patient regarding the risks/benefits of operative (IMN) vs.
nonoperative (casting) of this injury.  He understands these points and is opting for
nonoperative treatment.
-i will plan to continue the long-leg splint for an additional 2 weeks and the patient will have
to maintain close follow-up to ensure no fx displacement.
-f/u 1wk for XRs tibia in splint to ensure no displacement.
-plan to transition to PTB cast at 3wks post-injury and allow WBAT
-continue dvtp x 4wks postinjury

Telesford, Edgar (MR # 9506705)

Encounter Date: 06/12/2014

## Progress Notes

Edgar Telesford (MR# 9506705)

Progress Notes Info

| Author | Note Status | Last Update User | Last Update Date/Time |
|---|---|---|---|
| Sanjit Konda, MD | Signed | Sanjit Konda, MD | |

Progress Notes

CC: L tibia-fibula fx

HPI: Edgar Telesford is a 54 y.o. Male ~1wk s/p injury L leg pain. Patient had several people fall onto his left leg earlier today . Had immediate pain and deformity in leg. Unable to ambulate. No pain elsewhere. No head trauma or LOC. Evaluated in JHMC ED where XRs showed displaced tib-fx. I supervised placement of this splint at JHMC ED including manipulation of tibia to achieve acceptable reduction. After discussion with pt regarding operative vs. nonoperative tx, he opted to think about it and was placed into long leg splint and reduced and discharged for f/u.

In interim, pain has been moderate but overall well controlled with narcotics.  No fever/chills, no distal parasthesias, no distal motor weakness.  Compliant with  NWB.

History reviewed. No pertinent past medical history.

History reviewed. No pertinent past surgical history.

Current outpatient prescriptions:oxyCODONE-acetaminophen (PERCOCET) 5-325 mg per tablet, Take 1 Tab by mouth every 4 hours as needed for Adjunctive pain., Disp: , Rfl: ; aspirin 325 mg tablet, Take 325 mg by mouth daily., Disp: , Rfl: ; ENOXAPARIN SODIUM (LOVENOX SUBQ), Inject 140 mg into the skin., Disp: , Rfl:

No Known Allergies

History

Social History
 · Marital Status:                          Single
      Spouse Name:                       N/A
      Number of Children:              N/A
 · Years of Education:                  N/A

Occupational History
 · Not on file.

Social History Main Topics
 · Smoking status:                       Never Smoker
 · Smokeless tobacco:                 Not on file
 · Alcohol Use:                            Not on file
 · Drug Use:                                 Not on file
 · Sexually Active:                        Yes – Female partner(s)

Other Topics
 · Not on file                                                         Concern

Social History Narrative
 · No narrative on file

Telesford, Edgar (MR # 9506705) Printed by

Telesford, Edgar (MR # 9506705)

Encounter Date: 06/19/2014

## Progress Notes

Edgar Telesford (MR# 9506705)

### Progress Notes Info

| Author | Note Status | Last Update User | Last Update Date/Time |
|---|---|---|---|
| Sanjit Konda, MD | Signed | Sanjit Konda, MD | 6/23/2014 10:03 PM |

### Progress Notes

HPI: 54M 2 weeks s/p left distal third tibial fracture treated nonoperatively. No complaints. Pain under control. Denies fever and chills.

PE:
Left ankle, knee: exam limited by cast
SILT in toes, motor 5/5
Vasc intact 2+dp, cr<2s

Imaging: AP and lateral of the L tibia reveal a healing distal third tibia fracture with ~25% tibial displacement. Fibula fracture is minimally displaced. Alignment is acceptable.

A/P: 54M with a non-operative left distal third tib/fib fracture maintained in acceptable alignment. Continue non-operative treatment.
- F/U in one week - XR of his left ankle (3 views) and tibia (AP and lateral) on arrival. Please notify me so I can help with positioning
- Transition to a weight bearing cast in 1 week

Telesford, Edgar (MR # 9506705)

Telesford, Edgar (MR # 9506705)

Encounter Date: 06/26/2014

## Progress Notes

### Progress Notes Info

| Author | Note Status | Last Update User | Last Update Date/Time |
|---|---|---|---|
| Sanjit Konda, MD | Signed | Sanjit Konda, MD | 6/30/2014 8:03 PM |

### Progress Notes

HPI: 54M 3 weeks s/p left distal third tibial fracture treated nonoperatively. No complaints. Pain under control. Denies fever and chills.

PE:
Left ankle, knee; exam limited by cast
SILT in toes, motor 5/5
Vasc intact 2+dp, cr<2s

Imaging: AP and lateral of the L tibia reveal a healing distal third tibia fracture with ~25% tibial displacement. Fibula fracture is minimally displaced. Alignment is acceptable.

A/P: 54M 3 weeks out non-operative left distal third tib/fib fracture maintained in acceptable alignment. Since alignment is maintained, we removed the splint and placed him into a short leg cast. Repeat x-rays reveal acceptable alignment. Continue non-operative treatment.
- PWB in cast
- F/U in 2 weeks with XR of his left ankle (3 views) and tibia (AP and lateral) on arrival
- Will reassess alignment at that time and continue nonoperatively treatment if alignment remains acceptable

Telesford, Edgar (MR # 9506705) Printed by Brit... ... ...

Telesford, Edgar (MR # 9506705)

Encounter Date: 07/17/2014

## Progress Notes

Edgar Telesford (MR# 9506705)

### Progress Notes Info

| Author | Note Status | Last Update User | Last Update Date/Time |
|---|---|---|---|
| Sanjit Konda, MD | Signed | Sanjit Konda, MD | 7/18/2014 8:20 AM |

### Progress Notes

54 yo M 6 wk s/p closed L tibial shaft fracture treated non-op. Reports pain levels are improving. Weightbearing minimally using crutches. He is no longer taking any anticoagulation. Pt denies numbness or tingling of the toes. No fevers, no chills. No other concerns.

PE:
AOx3, NAD
Filed Vitals:

|  | 07/17/14 1231 |
|---|---|
| BP: | 116/78 |
| Pulse: | 78 |

Cast intact, re-padded posteriorly and proximally.
Skin edges intact
Knee ROM: 0-130deg
Wiggling all toes, motor intact 5/5 EHL/FHL
Silt all exposed toes
vasc intact cr<2s, all toes visible, warm and pink

XR L tibia: Alignment maintained. Evidence of bridging callous on 4/4 cortices. No significant shortening.

A/P: 55M ~6wks s/p closed treatment of midshaft tibia-fibula fx, overall doing well with evidence of interval fx healing.
-procedure: cut down posterior cast to improve knee ROM and prevent irritation in popliteal fossa
-Continue WBAT with crutches. Work with PT on gait training and knee ROM.
-Patient is fully disabled at this moment. Will reassess for disability 4 months post injury.
-F/U in 6 wks with new xrays tibia (3mo post-injury visit).

Telesford, Edgar (MR # 9506705) Printed by Bili Lee

Telesford, Edgar (MR # 9506705)

Encounter Date: 08/28/2014

## Progress Notes

Edgar Telesford (MR# 9506705)

**Progress Notes Info**

| Author | Note Status | Last Update User | Last Update Date/Time |
|---|---|---|---|
| Sanjit Konda, MD | Signed | Sanjit Konda, MD | 9/22/2014 18:07:8Ms |

**Progress Notes**

54 yo M ~11wks s/p closed L tibial shaft fracture treated non-op. No pain with ambulation at this point. PTB cast intact. No fevers/chills, no distal parasthesias, no distal motor weakness.

PE:
AOx3, NAD
Filed Vitals:

| | 08/28/14 1152 |
|---|---|
| BP: | 119/78 |
| Pulse: | 82 |

Cast intact, removed. Skin intact, no lesions.
nttp at fracture site
Knee ROM: 0-130deg
Motor intact 5/5 ta/ehl/gs
Slit su/sa/dp/sp/t n.
vasc intact cr<2s, 2+dp.

XR L tibia: Alignment maintained. Bridging callous on 4/4 cortices. No significant shortening.

A/P: 55M 11 weeks s/p closed treatment of midshaft tibia-fibula fx, overall doing well with evidence of interval fx healing. Healed appearing fracture on XR and clinical exam. Cast removed and switched to CAM boot for improved knee ROM and to further protect tibia during weight-bearing.
-Continue WBAT with CAM boot. Work with PT on gait training and knee ROM and strenghtening.
-Patient continues to be disabled at this moment. Will reassess for disability 4 months post injury.
-F/U in 6 wks with new xrays tibia/fibula. If continued improvement at that time, plan to transition to regular shoe.

Telesford, Edgar (MR # 9506705) Printed by...

Telesford, Edgar (MR # 9506705)

Encounter Date: 10/09/2014

### Progress Notes

Progress Notes Info                                                    Edgar Telesford (MR# 9506705)

| Author | Note Status | Last Update User | Last Update Date/Time |
|---|---|---|---|
| Sanjit Konda, MD | Signed | Sanjit Konda, MD | 10/9/2014 |

Progress Notes

54 yo M ~15wks s/p closed L tibial shaft fracture treated non-op, No pain with ambulation at this point. No fevers/chills, no distal parasthesias, no distal motor weakness.

PE:
AOx3, NAD
There were no vitals filed for this visit.
Skin intact, no lesions.
Mild ttp at fracture site
Knee ROM: 0-130deg
Motor intact 5/5 ta/ehl/gs
Silt su/sa/dp/sp/t n.
vasc intact cr<2s, 2+dp,

Ankle: Dorsi to 10 deg, plantar to 20

XR L tibia: Alignment maintained. Bridging callous on 4/4 cortices. No significant shortening.

A/P: 55M 11 weeks s/p closed treatment of midshaft tibia-fibula fx, overall doing well with evidence of interval fx healing. Healed appearing fracture on XR and clinical exam. Continue with CAM boot for improved knee ROM and to further protect tibia during weight-bearing.
-Continue WBAT with CAM boot. Transition to regular shoe as tolerable. Work with PT on gait training and knee ROM and strenghtening.
-Patient continues to be disabled at this moment. Will reassess for disability 4 months post injury.
-F/U in 2 months with new xrays tibia/fibula.

Telesford, Edgar (MR # 9506705) Printed by

-12-



**Probationary Period**

If you are appointed under a new license, state law requires that you serve a three-year probationary period. Each time you change your license and are reappointed, you must serve a new three-year probationary period. You may be able to reduce your probationary period in one of the following ways:

•Jarema Credit. This is a way that appointed teachers who worked satisfactorily as regular substitutes in the same license at the same school level can reduce the normal three-year probationary period by up to two years. To obtain one term of credit, you must have worked as a sub for a minimum of 80 days within a period of 90 consecutive school days in the same school. For a credit of one year, you must have worked at least 160 days in a one-year period. If you have any questions, call your UFT borough office for assistance. You can find the application for Jarema Credit online. Return the completed form to the Division of Human Resources, Office of Regional Field Services, 65 Court Street, Room 811, Brooklyn, NY 11201. Make sure to keep a copy of the application for your record, along with the "return receipt requested" notice.

•Traveling Tenure. If you received tenure in one license area and elect to take an appointment in a new license area, or if you were tenured in another school district in New York State, you can apply to have your probationary period reduced to two years. This is commonly known as "traveling tenure." If this applies to you, call your UFT borough office for more information.

Generally, at the end of three years of satisfactory service, you are granted tenure. If the DOE intends to discontinue your service prior to your obtaining tenure, you must be given 60 calendar days' notice prior to the end of your probationary period. If you are discontinued, call your UFT borough office. The DOE will schedule a hearing for you during the next school year. At that time, the UFT borough office will assign an advocate to represent you.



## Classroom Observations

Under our teacher evaluation system, teachers have a choice between two options for classroom observation:

- Option 1: One formal classroom observation and a minimum of three informal classroom observations

- Option 2: A minimum of six informal classroom observations

A formal classroom observation is announced, takes a full period and requires a pre-observation conference and a post-observation conference. At the pre-observation conference, the teacher and the principal or other evaluator discuss the lesson focus, activities, students to be taught and expectations. At the post-observation conference, the two reflect upon the teacher's performance during the observationa and discuss student work and learning outcomes and how they could guide future teaching practice. The Danielson rubric provides a framework for these conversations.

For informal classroom observations, the principal or other evaluator makes unannounced short visits to the teacher's classroom for a minimum of 15 minutes per visit. The evaluator must provide feedback to the teacher, whether through an in-person conversation, a phone call or an email. The evaluator writes up a report following each of these informal observations. Your evaluator is required to provide you a copy of his or her report on your informal observations within 90 school days of the observation. You should keep a copy of these reports.



If there are concerns about your professional skills, you can seek assistance from your mentor; your school's lead teacher (if one exists), the literacy or math coach, the Peer Intervention Program, the Peer Intervention Plus program or the Teacher

Center. In any case, if the observation report is not used to support disciplinary charges for three years, you have the right to remove it permanently from your file.

Principals have always had the right to make unannounced (informal) visits to your classroom, to ask to see your lesson plan, and to write up what they observe. If you think you are being singled out (e.g., observed more than other staff), you should keep a log of the visits and speak to your chapter leader.

For more information on teacher evaluation, see our teacher evaluation section »

In some cases, a principal may ask you to sign a document stating that you agree to an extension of your probationary period beyond the three years. If this occurs, contact your UFT borough office immediately so we can arrange, if necessary, for an attorney to review the document in order to protect your rights as a probationary teacher.

FW: SOLAS Determination: Your LODI Application has been APPROVED

**FW: SOLAS Determination: Your LODI Application has been APPROVED**
Telesford E

**Sent:** Tuesday, November 25, 2014 5:09 PM
**To:** edgartelesford@yahoo.com

**From:** solas_donotreply@schools.nyc.gov [solas_donotreply@schools.nyc.gov]
**Sent:** Thursday, October 30, 2014 11:56 AM
**To:** Telesford E
**Subject:** SOLAS Determination: Your LODI Application has been APPROVED

Oct 30 2014 11:44AM

Type of Leave: Line of Duty (LODI)
Dates of Requested Leave:2014-06-09to2015-01-08
Case:13489
File: 0641499
EMP ID: 318311

Dear EDGAR TELESFORD,

The Medical, Leaves, and Records Administration has reviewed your request for the following:

Type of Leave: Line of Duty (LODI)
Dates of Requested Leave: 2014-06-09 to 2015-01-08

We have approved your request for the period as follows:

Type of Leave: Line of Duty (LODI)

Approved Dates: 2014-06-09 to 2015-01-08

Leave Details:

| Description | Reason Code | Start Date | End Date |
|---|---|---|---|
| Approved LODI | APPROVED | 5/9/2014 12:00:00 AM | 1/8/2015 12:00:00 AM |

Approved days will not be taken from your Cumulative Absence Reserve (CAR).

Please be aware that any absence beyond the above approved dates will require additional review and will be considered as personal illness if not approved as leave for injury in the line of duty status. If you have been paid for this additional period and it is not approved as leave for line of duty injury, days will be deducted from your CAR and if necessary, the NYC Department of Education will recoup the remaining funds paid to you for this period.

" If your address changes while you are out on leave, you must update your information with the Department of Education. You can update your address online using Employee Self-Service: www.nyc.gov/ess

" To return to a teaching or supervisory position at the conclusion of your leave, you must hold a valid New York State certification or NYC Board of Examiners license in your appointment area

We recommend that you keep a copy of this notice for your personal records. Do NOT reply to this email. If you have any

Case 1:16-cv-00819-CBA-SMG   Document 47-1   Filed 01/08/18   Page 50 of 66 PageID #: 231



questions, please call HR Connect at 718-935-4000 and refer to the case number at the top of this notice.

Sincerely,

HR Connect
Medical, Leaves, and Records Administration

Ref Number - QX891385 N390 FDALODI01_Empl_Determination_Approval

-14-

5/27/14

To Whom It May Concern:

I am writing this grievance on behalf of the teachers of East New York Middle School of Excellence. Many of the teachers are complaining of being harassed by the secretary Beth Capozello. The complaints are the following:

1. Punching teachers time cards after 8:00 am
2. Talking to teachers in a condescending disrespectful manner in front of peers, students, and parents
3. Refusing to accept doctors notes
4. Disrespecting/embarrassing teachers at meetings
5. Openly sharing personal/confidential information of individual staff members with others
6. Exhibiting signs of racism by forcing African American teachers to punch when they are late while white teachers are allowed to go to class without punching their card
7. Bullying staff members who speak to teachers she does not favor
8. Wrongfully taking away days from teachers when they weren't absent

Ms. Capozello's behavior has created a hostile work environment where teachers are complaining of feel anxiety, the desire to throw up and have diarrhea upon entering the office and seeing Ms. Capozello. This behavior is bringing down the morale of the school community, which impacts the quality of education that students receive, which directly impacts student performance. The teachers are seeking an immediate removal of Ms. Capozello as secretary. Thanking you in advance for your support. Please find the signatures of teachers that are in agreement with this letter attached.

Sincerely distressed staff,

**Mary Marks**

To Whom It May Concern:

I am writing this letter because I am concerned about my well being at East New York Middle School of Excellence. I am concerned for the following reasons:

- I am being harassed as a form of retaliation against me because of a complaint that I filed against the school secretary, Beth Capozello. In a meeting that I had with the school principal, Mr. Small I discussed the issue that Beth speaks to me in a disrespectful way. Ms. Capozello is verbally abusive. The Principal Mr. Small said, "Beth is very valuable to this school. I give her a lot of things to do, sometimes at the last minute. If she snaps at you it's because she's overwhelmed." I responded to Mr. Small by saying, "We are all overwhelmed with last minute things to do, but **that doesn't give us a right to be disrespectful.**"

- **On June 17, 2014** a paraprofessional Ms. Redway informed me that the principal, Mr. Small and the assistant principal, Mr. Lee called her into the principal's office. She said, "Mr. Lee told me that they want me to spy on you. They want me to write stuff about you. I told him I'm not going to do it; it's not part of my job. Mr. Lee said you have to do it.  Mr. Small said if you don't want to do it then you don't have to do it. I asked Mr. Small if I could go he said, 'Yes'. I flew out of the office." Ms. Redway said, "I went to the chapter leader Ms. Thomas and told her what happened, and asked her if I had to write a statement. Ms. Thomas told me that I had to do it." On June 18th Mr. Small and Mr. Lee came into the classroom where Ms. Redway and I were working with students and asked Ms. Redway to go with them. When Ms. Redway returned to class she said, "They forced me to write a statement against you. They held an incident I had with a student over my head. I didn't have a choice." I asked Ms. Redway what she wrote.

She said that she wrote, "Ms. Marks may have left me with the class one or two times, but Ms. Marks doesn't have a classroom." I don't have a classroom. I am not a cluster teacher. I teach a self-contained class. Mr. Small decided that he wanted the students to travel from class to class like their peers. This presented several problems:

**1.** I am teaching ELA in the Science, Spanish, and Social studies classrooms. I cannot put up any process charts for the students to refer to which is necessary for the academic support that they need.

**2.** The charts that I use for modeling have to be removed before I leave the room because the other teacher needs the space, and Mr. Small, the principal, requires "bell-to-bell" instruction. As a result of me removing my charts, which take a few minutes, the students and the paraprofessional get to the following class before me. Therefore, the circumstances are out of my control.

**3.** The paraprofessional being left alone with the students is a direct result of the schedule that was given to me from administration.

**4.** The administration is neglecting the academic needs of the special needs students. The students were placed in a self-contained setting for a reason. The students are not receiving academic instruction that is beneficial to their learning. In addition, they are wandering around the school building while other classes are in session, which poses a safety issue and a disturbance to other classes.

- On June 17th 2014, one of my students ▮▮▮▮ ▮▮▮▮ informed me that the assistant principal Mr. Lee was asking him questions about me. He said, "Mr. Lee asked me if Ms. Marks ever left the class alone with Ms. Redway. I said no. Mr. Lee told me to keep it confidential. Don't tell Ms. Marks. I was afraid. Why is Mr. Lee asking me questions about you?"

- On June 25, 2014 the student ▮▮▮▮ ▮▮▮▮ came to me and said, "Ms. Thomas the teacher asked me if I wrote a statement for Ms. Marks I said yes why? Ms. Thomas told me that I could not write statements." Ms. Thomas is also the chapter leader. It is my belief

that Ms. Redway told the administration and Ms. Thomas that the student wrote a statement, as she was the only other adult in the room at the time ▨▨▨▨ wrote the statement.

* **On Friday June 20th** I received a letter from Ms. Capozelo, the secretary, stating that I would be deducted two days pay because I did not provide doctor's notes for June 4th and June 5th. When I tried to give Ms. Capozello doctor's notes she refused to take them. She flung them at me and said in a demeaning tone. " I can't do this right now. I have too much work on my desk." Now I am having funds taken away from me.

* **On Wednesday June 25, 2014** Mr. Small called the student ▨▨▨▨ into his office. When ▨▨▨▨ returned to the class he was crying. I asked ▨▨▨▨ what was wrong he said "I'm tired of them asking me questions about you." I asked ▨▨▨▨ what did they ask you he said, "Mr. Small asked me what did Ms. Marks ask you? I told him Ms. Marks didn't ask me anything I told her that Mr. Lee was asking me questions about her. I told her what happened. Mr. Small asked me if I wrote a statement I said yes." The student was aggravated and very upset. He sat down and kicked the desk over, as he continued to cry. Another teacher who entered the room tried to assist me in calming ▨▨▨▨ down.

* **On Thursday morning June 26, 2014,** at approximately 8:30. Mr. Lee approached me and pressured me to redo the state Black line assessment with a student ▨▨▨▨ ▨▨▨▨ I told Mr. Lee that the student already took it. I reminded Mr. Lee that they took the student out of my class and had Ms. Thomas a general education teacher give the student the exam because the teacher said she would get the student to take the exam. I went to the student who was sitting in the main office with her mother and asked her if she took the Black line reassurance the student said, "Yes Ms. Marks I took the ELA and the math." Mr. Lee approached me again saying, "Ms. Marks this has to be done!" I said, "I'm not doing it because it is illegal. It is a sate assessment. I'm not going to do it." I've heard from several colleagues that Mr. Small is making students that failed the Black line retake it because he doesn't want that many students in summer school.

• In addition, I have been teaching an ICT class by myself, which requires the presence of two teachers. My co-teacher was injured on the job and was unable to return to work. I mentioned this to Mr. Small in a rebuttal. I was still left alone with the students.

I conclude, that I am a teacher with a great deal of integrity. I think it is both unprofessional and disrespectful for an administrator to ask me to do something illegal such as having a student retake a state assessment. Doing so will deprive our students of the ability to believe in themselves. It also takes away from the rigor that we expect from them. They will be left to think that they do not have to put effort in their work because someone will help them redo it. It is the wrong message to send to children who have to go out and compete in the real world. It is also unfair and destroys the integrity of the exam. If one student retakes the exam, them all students should have the opportunity to retake the exam.

As a result of wanting the same respect as I give others, and refusing to compromise my integrity by doing something illegal, I am being harassed. My working environment has become hostile. It is difficult for me to be at my best when I have to constantly look over my shoulder. I feel threatened. I am requesting a safety transfer.

Educationally Yours,

Mary Marks

-16-

OEO Case Number Confirmation - Yahoo Mail                                          Page 1 of 2



OEO Case Number Confirmation

From: "donotreply@schools.nyc.gov" <donotreply@schools.nyc.gov>          Friday, January 23, 2015 3:58 AM
To: edgartelesford@yahoo.com

Your complaint has been forwarded to the Office of Equal Opportunity. You will be contacted shortly via phone or email.

Mail a copy of this page with additional documents to:
**Office of Equal Opportunity**
**65 Court Street - Suite 1102**
**Brooklyn, New York 11201**

## Below is a Copy of your Submitted Complaint:

**First Name:** Edgar
**Last Name:** Telesford
**Job Title:** Science Teacher
**Student First Name:**
**Student Last Name:**
**Address:**
**Home Phone:**
**Work Phone:**
**Cell Phone:**
**Email:**

**Full Name of Principal/Head of Office:** Malik , Small
**Title:** Principal
**Site Address:** K678, 605 Shepherd Av
**Site Phone:** (718) 257-4061

### Nature of Complaint

List below why you were discriminated against:
Disability,
Name/Title of person(s) believed to have discriminated against you:
Principal. Malik, Small,
Assistant Principal. Su Ku, Lee,
Principal/Payroll Secretary. Beth, Capozello,
Superintendent. Joyce, Stallings Harte,
Location of Incident:
East New York Middle School of Excellence 678K (ENYMSE) 605 Shepherd Avenue Brooklyn, NY 11208
Date(s) on which alleged act of discrimination occurred:
6/6,9,11,17,20:7/8,10,17:9/29:10/01:11/22:12/03/14
Explanation:
While on the medical disability/ line of duty injury(LODI) I was denied tenure, and probationary period was terminated. All these matters came after I was out on medica leave that was approved by the superintendent and signed by the principal. My paid medical leave was terminated; my health insurance was terminated, and now I have no income and medical insurance while out on approved medical leave.
Seeking Action:
To prevent this from happening to somone else and to be fairly treated in this matter without age or disability discrimination. 1. I would like the matter investigated fully 2. A transfer to different work environment 3. My job back so that I can have the fair chance to make a difference in the lives of students in a less hostile, retaliatory, discriminatory work environment.

Thank you once again for using the OEO Online Complaint Form.



OEO Case Number Confirmation - Yahoo Mail

PLEASE DO NOT REPLY TO THIS EMAIL. This email has been generated automatically from an unmonitored account.

-17-

```
                 NYC PUBLIC SCHOOLS EMPLOYEE INFORMATION SYSTEM        EI1MGD1
)/17 15:17            PAY DETAIL HISTORY FOR EMPLOYEE-JOB              PAGE:  1
                               SEMI-MONTHLY
3    : 0641499   SSN: XXX-XX-0342        JOB: GL9SM        RATE:      74,311.00
P   ME: TELESFORD      EDGAR        D  EMPL ID:  318311   AS OF: 09/13/2014
                                     PERIOD REQUESTED:                   (-)
         ------ PAY EVENT ------    PY                   RETRO/  AUTH   PY    CHK
RN DATE  TYP CAT CODE DESCRIPTION   TYP DOLLAR AMT        OTM    RSN    DT    CAN
-------  --- --- ---- -----------   --- ----------       -----  ----  -----  ---
9/15/14  PY RCG 01000 RECURRING GROS R    3,035.33              000 09/15/14
6/03/14  TK AUA 50000 UNAUTH ABSENCE R     -242.81             000 09/15/14
9/15/14               SUB TOTAL $AMT =     2,792.50
8/31/14  PY RCG 01000 RECURRING GROS R    3,035.33              000 08/29/14
)8/29/14              SUB TOTAL $AMT =     3,035.33
)8/15/14 PY RCG 01000 RECURRING GROS R    3,035.33              000 08/15/14
)8/15/14              SUB TOTAL $AMT =     3,035.33
)7/31/14 PY RCG 01000 RECURRING GROS R    3,035.33              000 07/31/14
)7/31/14              SUB TOTAL $AMT =     3,035.33
)7/15/14 PY RCG 01000 RECURRING GROS R    3,035.33              000 07/15/14

                                                          MORE DETAILS

F1/HELP F3/MENU F4/WINDOW F5/PREV SCR    F7/PG BACK  F8/PG FORWARD   F12/QUIT
```

NYC PUBLIC SCHOOLS - EMPLOYEE INFORMATION SYSTEM    EI1M341
PAYROLL REGISTER DETAIL                    PAGE:  1
REGULAR PAYROLL

'/1/ 15:18

DISP: E ISSUED BY EFT
    : XXX-XX-0342          BIS ID : 0641499        NAME: TELESFORD        E D
IST : 19K678            JOB SEQ NUM: 1          EMPL ID : 0318311
NS NUM: 944842          PEN DES/DESC: T TEACHERS RETIREMENT
AR STAT FED/ST: A / A   EXEMPT FED/ST: 0 / 0        CK DATE: 09/15/14
ALARY :  72,848.00      CK NUM : Z43349187    CK TYP: DIRECT DEPOSIT
TD   :  51,447.62       FICA CLASS : A
URRENT CHK AMTS ----> GROSS:   2,792.50 NET:    796.60 DED:  1,995.90

------------------- DEDUCTION INFORMATION -------------------------------
 CODE  DESCRIPTION    AMOUNT          CODE  DESCRIPTION        AMOUNT
 ----  -----------    ------          ----  -----------        ------
 6010  FICA TX EMPE    173.13-        7675  TRS 414H ARR        22.34-
 6012  MDICARE-EMPE     40.49-        7726  UFT                 53.14-
 6015  FED WTHD        233.64-        8111  OLD GRNSHMT        279.25-
 6020  ST WTHD          87.19-        9022  TRS TDA            925.58-
 6030  NYC WTHD         54.73-
 7018  UFT-POL DUE S     0.75-
 7655  TRS 414H STD    125.66-

F1/HELP F3/PR MENU F5/PR SCR PF6/YTD      F7/BK F8/FWD F10/PREV PPD F11/NXT PPD

O P A
1 Centre Street
212-669-8555
NYS Attn Gnrl
518-457-
5893
212-661-3461

```
                NYC PUBLIC SCHOOLS - EMPLOYEE INFORMATION SYSTEM    EI1M341
/ 1 / 15:19            PAYROLL REGISTER DETAIL                    PAGE:  1
                        SUPPLEMENTARY PAYROLL

K DISP: E ISSUED BY EFT                              NAME: TELESFORD        E D
    : XXX-XX-0342        EIS ID : 0641499      EMPL ID : 0318311
ST : 19K678            JOB SEQ NUM: 1
NS NUM: 944842         PEN DES/DESC: T TEACHERS RETIREMENT
R STAT FED/ST: A / A   EXEMPT FED/ST: 0 / 0       CK DATE: 06/25/14
ALARY :      0.00      CK NUM : Z43141424   CK TYP: DIRECT DEPOSIT
TD   :  48,655.12      FICA CLASS : A
JRRENT CHK AMTS ----> GROSS:   1,000.00 NET:    459.40 DED:    540.60

--------------------- DEDUCTION INFORMATION ----------------------------
  CODE  DESCRIPTION     AMOUNT       CODE  DESCRIPTION     AMOUNT
  ----  -----------     ------       ----  -----------     ------
  6010 FICA TX EMPE      62.00-
  6012 MDICARE-EMPE      14.50-
  6015 FED WTHD          60.14-
  6020 ST WTHD           14.64-
  6030 NYC WTHD          10.07-
  7655 TRS 414H STD      45.00-
  9022 TRS TDA          334.25-
PREVIOUS PAY DATE DISPLAYED
F1/HELP F3/PR MENU F5/PR SCR PF6/YTD        F7/BK F8/FWD F10/PREV PPD F11/NXT PPD
```

CP Enclosure with EEOC Form 5 (11/09)

PRIVACY ACT STATEMENT: Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.    FORM NUMBER/TITLE/DATE. EEOC Form 5, Charge of Discrimination (11/09).

2.    AUTHORITY. 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.    PRINCIPAL PURPOSES. The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.    ROUTINE USES. This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.    WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION. Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: Edgar D. Telesford | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|

On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2015-01375 | Roxanne Zygmund,<br>Investigator | (212) 336-3764 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

Kevin J. Berry,
District Director

NOV 19 2015
(Date Mailed)

Enclosures(s)

cc:
Henry Chou, Esq.
Office of Legal Services
NYC DEPARTMENT OF EDUCATION
52 Chambers Street, Room 308
New York, NY 10007

Antonia Kousoulas, Esq.
Kousoulas & Associates, P.C.
48 Wall Street, 25th Floor
New York, NY 10005