1    IN THE UNITED STATES DISTRICT COURT
     FOR THE EASTERN DISTRICT OF NEW YORK
2

3    EDGAR D. TELESFORD,              ) Civil Action
                                      ) No. 16-819 (CBA)
4              Plaintiff,             )
                                      ) ORAL ARGUMENT
5    vs.                             )
                                      ) Brooklyn, New York
6    NEW YORK CITY DEPARTMENT OF      ) Date:  January 24, 2018
     EDUCATION, et al.,               ) Time:  2:00 p.m.
7                                     )
               Defendant.             )
8    _____

9              TRANSCRIPT OF ORAL ARGUMENT
                     HELD BEFORE
10        THE HONORABLE JUDGE CAROL BAGLEY AMON
               UNITED STATES DISTRICT JUDGE
11   _____

12                  A P P E A R A N C E S

13   For the Plaintiff:        Daniel E. Dugan, Esq.
                               Law Offices of
14                             Stewart Lee Karlin P.C.
                               111 John Street, 22nd Floor
15                             New York, New York  10038
                               212-792-9670
16
     For the Defendant:        Natalie S. Marcus, Esq.
17                             New York City Law Department
                               100 Church Street
18                             New York, New York  10017
                               212-356-2629
19

20

21   Proceedings reported by machine shorthand, transcript produced
     by computer-aided transcription.
22   _____

23   Court Reporter:           Annette M. Montalvo, CSR, RDR, CRR
                               Official Court Reporter
24                             United States Courthouse, Room N375
                               225 Cadman Plaza East
25                             Brooklyn, New York  11201
                               718-804-2711

1        (WHEREUPON, commencing at 1:55 p.m., the following

2   proceedings were had in open court, to wit:)

3        THE LAW CLERK:  16-cv-819, *Telesford v. New York*

4   *City Department of Education*, on for oral argument.

5        THE COURT:  Do the parties want to state their

6   appearances, please.  First, for plaintiff.

7        MR. DUGAN:  Daniel Dugan from the Stewart Lee Karlin

8   Law Group for the plaintiff, Edgar Telesford.

9        THE COURT:  Good afternoon.

10        MR. DUGAN:  Good afternoon, Your Honor.

11        THE COURT:  And for the defendant.

12        MS. MARCUS:  Natalie Marcus from the New York City

13   Law Department, on behalf of the defendant New York City

14   Department of Education.

15        THE COURT:  Good afternoon.

16        Let's just resolve a couple of things.  First,

17   Mr. Dugan, you are not proceeding against the individual

18   defendants?

19        MR. DUGAN:  That is correct, Your Honor.

20        THE COURT:  Okay.  So it is just the Department of

21   Education?

22        MR. DUGAN:  Yes, Your Honor.

23        THE COURT:  All right.  Let me see if I can narrow

24   the issues down a little bit further.  The law seems pretty

25   clear that you don't have a claim for punitive damages against

1   the municipality.  Do you agree with that?

2           MR. DUGAN:  Yes, Your Honor.

3           THE COURT:  So punitive damages are out?

4           MR. DUGAN:  Yes, Your Honor.

5           THE COURT:  Also, in terms of a due process

6   violation for 1983, the cases also seem to hold that an

7   article -- the availability of an Article 78 proceeding is

8   your due process, that's your procedural due process.

9           MR. DUGAN:  I would argue that --

10          THE COURT:  In other words, he could have had an --

11   gone to an Article 78, correct?

12          MR. DUGAN:  Well, Your Honor, he can bring a tenure

13   by estoppel claim through a 1983 claim, as I think we have

14   shown here.

15          THE COURT:  I know, but you have a procedural --

16   isn't your -- don't you have a procedural due process claim?

17          MR. DUGAN:  Yes, Your Honor.  He wasn't granted his

18   3020a rights because he wasn't awarded his tenure.

19          THE COURT:  But he could have challenged that

20   decision in an Article 78 proceeding, correct?

21          MR. DUGAN:  He could have challenged the decision to

22   terminate him through an Article 78 proceeding, if I

23   understand your question correctly?

24          THE COURT:  Yes.

25          MR. DUGAN:  Yes, Your Honor.  That is not the same

1  due process that's afforded to him, should he have been

2  awarded tenure.  If he was tenured, he would be protected by

3  education law 3020a in which he would have had an arbitration

4  hearing in front of a 3020a hearing officer.

5          THE COURT:  But why --

6          MR. DUGAN:  So he would have been afforded

7  additional rights.  Had that decision been adverse to him, he

8  could have challenged that in court through an Article 75

9  proceeding challenging the hearing officer's determination.

10  He wasn't given his due process --

11         THE COURT:  But he also could have challenged the

12  fact that -- he could have brought all of this estoppel issue

13  up before the Article 78 judge.  In other words, once he was

14  terminated -- it was his position he couldn't be terminated,

15  that he couldn't be terminated without a hearing, correct?

16         MR. DUGAN:  That is correct, Your Honor.

17         THE COURT:  All right.  So he could have challenged

18  what they did and said, "Listen, I have gotten tenure, I was

19  supposed to have a hearing," and he could have challenged all

20  of that in an Article 78, correct?

21         MR. DUGAN:  Certainly that's a different standard

22  than the 1983 claim that's brought here, and I don't believe

23  they are mutually exclusive, based on the case law.

24         THE COURT:  But the whole idea of a 1983 is that you

25  lost property without due process of law, and if the state

1  provides you some process, then you don't have that claim.

2  And the process available to him would have been an Article 78

3  proceeding.  Because in an Article 78 proceeding, they could

4  have decided issues of tenure denial and employment

5  determination, correct?

6          MR. DUGAN:  Your Honor, it is a much different

7  standard than had he gone through the 3020a process.  That's

8  the benefit these teachers get, by receiving tenure.

9          THE COURT:  I know.  I think you are -- anyhow.

10          All right.  Ms. Marcus, you want to stay seated?

11          MS. MARCUS:  Yes, Your Honor.  Thank you.

12          Well, Your Honor, the defendant Department of

13  Education moves for judgment on the pleadings dismissing the

14  amended complaint for several reasons.  The first reason being

15  that plaintiff failed to exhaust his administrative remedies.

16  When he filed the EEOC charge of discrimination, he didn't

17  include a reasonable accomodation claim or any alleged

18  discrimination or retaliation that flowed from that.

19          THE COURT:  But how could he have?  I mean, that

20  happened after he filed his complaint, right?

21          MS. MARCUS:  But there's case law, Your Honor,

22  saying that you can supplement or amend your EEOC charge.

23  And, in fact, plaintiff recognized that in his initial charge.

24  In his one charge he filed, he wrote that "I reserve my right

25  to modify or supplement this charge."

1    THE COURT:  But if it is reasonably related to his

2  first charge, why does he have to do that?

3    MS. MARCUS:  Well, yes, it is reasonably related,

4  but in this instance we have argued it isn't reasonably

5  related.  There's nothing in the charge to put the EEOC on

6  notice that there was a request for reasonable accommodation

7  or any claims of discrimination or retaliation after that

8  request.  They would just -- there would be no reason for them

9  to inquire about that line of alleged facts.  And, in fact,

10  there's case law saying that, for example, in *Bawa*, where

11  there were claims of denial of promotion and transfers, that

12  while the plaintiff may have claimed that subsequent to filing

13  the EEOC charge there were other denials of transfers of

14  promotions, that the plaintiff needed to modify or supplement

15  or amend the EEOC charge.  Similarly here, the plaintiff

16  should have either filed a new charge or supplemented, amended

17  to put the EEOC on notice of these new facts.

18    THE COURT:  Well, the charges sort of have to be

19  qualitatively different.  He claimed in his original charge

20  that he was discriminated because of disability, he was

21  subject to retaliation, harassment, hostile work environment.

22  Is it really based on a different type of discrimination?

23    MS. MARCUS:  Well, in his initial charge he's

24  claiming he was discriminated on the basis of the broken leg,

25  and then later on in the complaint that was filed in court

Annette M. Montalvo, CSR, RDR, CRR
Official Court Reporter

1   he's claiming an additional claim that he made a reasonable

2   accommodation to the Department of Education, and as a result

3   of that a separate accommodation request was again

4   discriminated against and retaliated against.

5           THE COURT:  Do you want -- maybe we can do it claim

6   by claim.  Do you want to respond to that?

7           MR. DUGAN:  Yes, I do, Your Honor.  Thank you.

8           It is reasonably related to that EEOC charge.  There

9   was one line of duty injury he suffered, which the DOE was on

10  notice of, and which he included in the EEOC charge.  He

11  attaches to that EEOC charge the line of duty injury reports,

12  the medical reports from the DOE.  Then he is terminated on

13  December 2, 2014, timely files that EEOC charge in February of

14  2015.  So there's approximately two months later.

15          It is when then he is reinstated to his position,

16  briefly, that he seeks accommodations for that same injury

17  that he suffered in his line of duty.  The accommodations were

18  things related to him being reinstated by the DOE so that he

19  could go back to work and perform his duties, elevator access,

20  extra time between classes, being able to sit after an hour,

21  again, all related to the leg injury which he claims he was

22  discriminated against by the DOE in that EEOC charge.

23          The Second Circuit, you know, does support that

24  subsequent conduct.  They don't state that he needs to amend

25  his charge, but that if it's reasonably related, then that

1  EEOC charge is timely filed and he may pursue those claims

2  that arise from that.

3      THE COURT:  I take it that his claim is to the later

4  conduct that he was terminated because he requested

5  accommodations?

6      MR. DUGAN:  Yes.  And he has a claim that it is

7  retaliatory due to his complaint of disability discrimination

8  in that EEOC charge.

9      THE COURT:  All right.  You have another argument,

10  Ms. Marcus, about the disability claim itself?

11      MS. MARCUS:  Yes, Your Honor.  The motion to

12  dismiss, we also argue that plaintiff hasn't stated a claim

13  under the ADA regarding the alleged disability.  The case law

14  is clear that you can't have a formulaic recitation, "I

15  suffered X, Y, and Z, and that substantially impaired my

16  ability to engage in a major life activity," which is what

17  occurred in this complaint.

18      The plaintiff alleges in the complaint that as a

19  result of this injury, his major life activities, including

20  walking, running, ascending and descending stairs and bending

21  were substantially limited.  And as outlined in the briefing,

22  the case law is clear that such a formulaic recitation is not

23  sufficient.

24      THE COURT:  Why is saying that you're substantially

25  limited in walking, why is that formulaic?  It is pretty

1    straightforward.  "I can't walk."

2         MS. MARCUS:  Well, the case law talks -- well,

3    that's a good point, Your Honor, that's saying "I can't walk."

4    That isn't what he's saying in the complaint.  He's just been

5    limited, allegedly, in how -- walking.  And then he goes on to

6    allege that he's now walking with a cane.  And there's some

7    recent case law from the Southern District where if you allege

8    walking with a cane and that it doesn't substantially impair

9    your ability to walk, that's considered a mitigating factor.

10   It doesn't establish a disability.

11        THE COURT:  No, but there's a -- we've had this new

12   law, I guess, the ADAAA, and there's a regulation 29 CFR

13   1630.2, that the determination of whether an impairment

14   substantially limits a major life activity shall be made

15   without regard to the ameliorative effects of mitigating

16   measures, which is the cane.

17        MS. MARCUS:  Yes, Your Honor.

18        THE COURT:  Does that not sort of undermine your

19   argument?

20        MS. MARCUS:  It does go towards, you know, whether

21   or not to consider mitigation, but the court, particularly in

22   the Southern District case, in *Telemaque*, I believe took the

23   cane into consideration because the plaintiff wasn't --

24        THE COURT:  Which Southern District case is that?

25   *Nieves*?

1    MS. MARCUS:  I apologize.  I believe it's *Nieves*,

2  yes.  And the case law is going towards that walking -- having

3  that as a substantial impairment is a very high burden to even

4  plead in a complaint, that there needs to be more facts than

5  just walking was impaired.  There needs to be some allegation

6  of how or what kind of effects it actually has.

7    THE COURT:  Doesn't he say he was bedridden for six

8  weeks, was required to use a wheelchair for two months, that

9  he had extensive physical therapy, continued to suffer

10  arthritis and walk with a cane?

11    MS. MARCUS:  Yes, Your Honor.  But the allegations

12  about the bed rest and the wheelchair only pertains to that

13  brief period of time when he was healing from his broken leg.

14  And case law talks about a broken bone, particularly a broken

15  leg, as the established case law talks about how that is not a

16  disability.  Depending on what flows from that, there may be

17  injuries where it is so catastrophic it turns into a

18  disability.  But the immediate effects of healing from a

19  broken leg and having limited mobility for a discrete period

20  of time doesn't establish a disability.  He's not alleging

21  that he's currently in a wheelchair following, you know, his

22  leg healing.  That was immediately after.  And then with

23  respect --

24    THE COURT:  Don't the new regulations, though, claim

25  that the limitations can last for a much shorter period of

1   time than was the case before the new regulations?

2           MS. MARCUS:  Well, the case law cited in our

3   briefing that I believe is relatively new, it's post the

4   revisions to the ADA, talks about how, you know, an

5   intermittent impairment for six months or so or less does not

6   establish a disability.  So the allegations about being

7   bedridden and using a wheelchair, it was during a

8   several-month period while he healed up from that.

9           THE COURT:  But there's one of those regulations

10  that says the effects of an impairment lasting or expected to

11  last fewer than six months can be substantially limiting, as

12  one of those regulations that has a lot of numbers and even

13  more letters, 1630.2(j)(1)(ix).

14          MS. MARCUS:  Well, I, unfortunately, don't have that

15  regulation in front of me, and while I'm sure it is true that

16  there can be impairments when you have this effect for under

17  six months, he's in the complaint alleged that he's no longer

18  dealing with those issues.  He's able to walk around.  He's

19  not alleging that he would be in a wheelchair to get around

20  the school.  He may have during that recovery period something

21  related to that regulation, what you're saying, being

22  disabled, but the case law also talks about how, you know,

23  episodic impairments that is improving doesn't result in a

24  disability.

25          As an example, you mentioned in the complaint that

1  he alleges that he suffers from arthritis. And the case law

2  talks about merely saying you have arthritis isn't sufficient

3  for a disability. He doesn't allege he's in pain from it or

4  takes any type of medication, just merely he has this

5  condition. There's no allegations about the severity of it.

6  And case law post the changes to the ADA have looked at it and

7  said, where the person alleges that they suffered from

8  arthritis and took medication, that that was insufficient to

9  establish a disability. And, here, the plaintiff's complaint

10 doesn't even allege anything beyond "I have arthritis."

11          THE COURT: It says he walked with a cane. He has

12 arthritis and walked with a cane.

13          MS. MARCUS: And that's how we cycle back to the

14 *Nieves* case, where when the individual alleged that he walked

15 with a cane --

16          THE COURT: That seems to be counter to the

17 regulation. That case doesn't seem to recognize the --

18          MS. MARCUS: Setting aside the dispute between the

19 regulation and the case law, even if we put that case to the

20 side, the other case law demonstrates that merely making

21 these --

22          THE COURT: What about perceived disability?

23          MS. MARCUS: So there's also case law that merely

24 putting -- for example, plaintiff argued that defendant was

25 aware that plaintiff broke his leg and that created a

1   perceived disability.  But the case law holds that an employer

2   merely knowing that an individual has some type of injury or

3   impairment doesn't mean that they perceive them as disabled.

4   From the documents, the pleadings that plaintiff has submitted

5   to the DOE, it is that he broke his leg while he was at work.

6   There's nothing -- from the DOE's perspective, they were just

7   expecting -- normal course of a broken leg is you heal up,

8   depending on the severity, and you come back.  And the case

9   law, just knowing that somebody has some type of injury,

10  doesn't mean that they perceived you as being disabled.

11              THE COURT:  All right.  Counsel, do you want to be

12  heard?

13              MR. DUGAN:  Yes, Your Honor.  Thank you.

14              As to the allegation that he has formulaically

15  resuscitated his injuries, plaintiff does go into detail in

16  the amended complaint.  As you mentioned, he was bedridden.

17  Again, this wasn't a normal -- this was a severe broken leg.

18  He had a hip-to-toe cast.  And then going to the DOE's own

19  actions in perceiving him as disabled, and to the fact that he

20  was actually disabled, they had approved him for line of duty

21  injury leave through the date that -- through January 8, 2015.

22  Well, the first time they moved to terminate him here was

23  December 2, 2014.  At that time they didn't find him fit to

24  come back to work.  They perceived him as disabled, they did

25  not feel -- their own medical doctors did not feel that he

1    could come back to work at that time.  Again, he does go into

2    detail in the amended complaint as to the severity of these

3    injuries, and then he requested the reasonable accommodations

4    to come back to work because of this same broken leg.

5           Again, as you mentioned, under the regulations,

6    which were newly set forth, he has met the pleading

7    requirements at this stage to have a disability or perceived

8    disability when the DOE themselves were treating him as not

9    being able to work, disabled at this time.

10          THE COURT:  What was his -- he was a science

11   teacher?

12          MR. DUGAN:  I believe so, Your Honor.

13          THE COURT:  What he's doing now?

14          MR. DUGAN:  He's not working, Your Honor.

15          THE COURT:  He hasn't worked since when?

16          MR. DUGAN:  It is a little disputed in the facts

17   here, but since the time of the injury, has essentially not

18   been in a classroom since the time of the injury.  Then, as

19   you see, he was terminated in December, reinstated for a brief

20   period of time, which I believe defendant disputes, and then

21   we're talking June of 2015 when he was ultimately terminated

22   from the Department of Education.

23          THE COURT:  And he hasn't worked since then?

24          MR. DUGAN:  He's not, Your Honor.  Not in a teaching

25   capacity.  And I don't believe any other capacity.

1          THE COURT:  Well, you know, we're talking about --
2    assuming -- assume for the moment the case goes forward, what
3    kind of damages are we talking about here?
4          MR. DUGAN:  Your Honor, the most --
5          THE COURT:  And there's no punitive damages, so
6    we've knocked that out.
7          MR. DUGAN:  Understood.  Compensatory damages, I
8    mean, he wanted to come back to work with the reasonable
9    accommodations, Your Honor.  So reinstatement is obviously the
10   priority here.
11         THE COURT:  Oh, he wants to be reinstated now?
12         MR. DUGAN:  Yes.  He's ready to teach, Your Honor.
13         THE COURT:  Oh.
14         MR. DUGAN:  That's why he's -- when they reinstated
15   him briefly for that day there, before terminating him again,
16   as the allegations allege, he asked for these reasonable
17   accommodations so he can go back into the classroom.
18         THE COURT:  He still needs these reasonable
19   accommodations, or is he better now and he can go back and
20   teach?
21         MR. DUGAN:  I believe there would be some
22   accommodation requirement, Your Honor.
23         THE COURT:  How old is he?
24         MR. DUGAN:  I don't have it off the top of my head,
25   Your Honor.  I'm just looking here in his EEOC charge.

1          THE LAW CLERK:  He was born in '59.

2          THE COURT:  Born in '59?

3          THE LAW CLERK:  Yes.

4          MR. DUGAN:  Did you say '59?

5          THE LAW CLERK:  Yes.

6          MR. DUGAN:  That would seem reasonable.

7          THE LAW CLERK:  A little shy of 60.

8          THE COURT:  What's he doing playing tug of war in

9  a -- how old was he when he was doing this?  I thought this

10 was some young person.

11         MR. DUGAN:  No, Your Honor.  He may have been moving

12 like a young person at that point, but no longer.

13         THE COURT:  Is there a possibility this case can be

14 resolved on him being reinstated?

15         MR. DUGAN:  I believe when prior counsel from

16 both -- prior law firm and prior counsel from your office had

17 engaged in lengthy settlement discussions, and there was not a

18 resolution that could be met at this point.  I believe we --

19 they met with Magistrate Gold over quite a lengthy time period

20 in an attempt to do that and it was not feasible.

21         THE COURT:  Do you know whether it is feasible now?

22         MS. MARCUS:  Without going into details, it gets

23 awkward in what the settlement talks were, beginning when I

24 was assigned to the case, I talked with Mr. Dugan and asked if

25 there was any modifications to the City's proposal that might

1  result in a settlement, and I haven't received any response.

2         THE COURT: There was a -- let's go off the record

3  for a moment.

4         (WHEREUPON, discussion was had off the record.)

5         THE COURT: All right. I'll reserve decision.

6  Thank you.

7         MR. DUGAN: Thank you, Your Honor.

8         THE COURT: Except with respect to two things. I am

9  going to strike the claim for punitive damages, and I am going

10  to dismiss the 1983 action because I think the Article 78

11  resolves that, the existence of the Article 78 resolves that,

12  and I'll reserve on whether there's an ADA claim.

13         The state claims, your position is simply that he

14  didn't file a notice of claim?

15         MS. MARCUS: Yes, Your Honor, that the plaintiff

16  hadn't filed a notice of claim so all the state and city human

17  rights law claims must be dismissed.

18         MR. DUGAN: To simply respond, notice claims are

19  required to receive --

20         THE COURT: I'm sorry, what?

21         MR. DUGAN: A notice claim is required to receive

22  monetary compensation. Under the state and city human rights

23  law, he would still be entitled to equitable relief on those

24  claims so they should not be dismissed in their entirety.

25         THE COURT: So you agree that the compensatory

1   claims should be dismissed, but not the equitable claims?

2        MR. DUGAN:  As to the state human rights law and the

3   city human rights law claim, yes.

4        MS. MARCUS:  Well, Your Honor, frankly, it wasn't

5   raised in the papers about that point, it gave me the

6   impression that they were agreeing to dismiss all the state

7   and city human rights laws against the DOE.  But, in any

8   event, our position is that all the claims related to state

9   and city human rights laws must be dismissed against the DOE

10  for failure to file a notice of claim.

11        Your Honor, if I may, in their opposition brief, on

12  page 12 it says:  Plaintiff acknowledges that a notice of

13  claim was not filed; however, this is a requirement only as to

14  plaintiff's SHRL and CHRL claims against the DOE.  It is not

15  required for maintaining a SHRL and CHRL against individual

16  defendants.

17        MR. DUGAN:  Yes, Judge, it should have said that it

18  should have only applied to the monetary damages on those

19  claims.  It is well established that the notice of claims is

20  only a prerequisite to maintaining an action for monetary

21  damages against the City of New York.  That's what your notice

22  of claim does, is puts them on notice that you are asking for

23  money.  He's still entitled to equitable relief under those

24  statutes.

25        THE COURT:  How is it, in effect, different?

1    MR. DUGAN:  Well, the city human rights law --

2    THE COURT:  Oh, it is less strict.

3    MR. DUGAN:  -- is less stringent.  So it does

4  have -- could have an effect.

5    THE COURT:  Well, what case says you still remain

6  entitled to equitable relief?

7    MR. DUGAN:  I'd be happy to submit one to

8  Your Honor.  I don't have one off the top of my head.

9    THE COURT:  Are you familiar with this principle?

10    MS. MARCUS:  Unfortunately, Your Honor, I am not.  I

11  get the impression I will quickly become familiar with the

12  case law on it.

13    MR. DUGAN:  I apologize, Your Honor.  It is

14  common -- we commonly brief it, but I don't have a case off

15  the top of my head.

16    THE COURT:  Well, why don't you write me a letter by

17  the end of the day tomorrow.

18    MR. DUGAN:  Thank you, Your Honor.

19    THE COURT:  A case you have that supports that.

20    And you can respond by the end of the day on Friday,

21  okay.  So he'll do it the end of the day on Thursday --

22    MS. MARCUS:  Would it be possible to have until

23  Monday because I have a motion for summary judgment due that

24  same day.

25    THE COURT:  Yes.

1          MS. MARCUS:  Thank you, Judge.

2          THE COURT:  Okay.  Thank you.

3          MR. DUGAN:  Thank you very much, Your Honor.

4          (WHEREUPON, at 2:49 p.m., the proceedings were

5     concluded.)

6

7

8

9

10                     *  *  *  *  *

11

## REPORTER'S CERTIFICATE

12

13          I, ANNETTE M. MONTALVO, do hereby certify that the
      above and foregoing constitutes a true and accurate transcript
      of my stenographic notes and is a full, true and complete
14    transcript of the proceedings to the best of my ability.

15          Dated this 26th day of January, 2018.

16    /s/Annette M. Montalvo
      Annette M. Montalvo, CSR, RDR, CRR
17    Official Court Reporter

18

19

20

21

22

23

24

25