UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
EDGAR TELESFORD,

                Plaintiff,

   -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION; MALIK SMALL, Principal
of East New York Middle School of
Excellence; and JOYCE STALLINGS-
HARTE, Superintendent of Community
School District 19,

                Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
16-CV-819 (CBA) (SMG)

**AMON, United States District Judge:**

      Plaintiff Edgar Telesford brings the instant action against Defendants New York City Department of Education (the "DOE"), Malik Small, and Joyce Stallings-Harte (with Small, the "Individual Defendants"), asserting claims under 42 U.S.C. § 1983; Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296; and the New York City Human Rights Law ("NYCHRL"), N.Y. Comp. Codes R. & Regs. tit. 8, § 101 et seq. (See D.E. # 19 ("Am. Compl.").) The DOE—which Telesford served, (see D.E. # 6)—has filed an answer to Telesford's Amended Complaint, (D.E. # 21). All claims against the Individual Defendants have been dismissed. (D.E. # 55, Transcript of Jan. 24, 2018, Oral Argument at 2:15–22.)

      Before the Court is the DOE's motion for judgment on the pleadings. (D.E. # 45.) At the January 24, 2018, oral argument, the Court granted the motion in part, dismissing the § 1983 denial-of-tenure claim and striking Telesford's request for punitive damages as to the remaining claims. (D.E. dated Jan. 24, 2018.) The Court reserved judgment on the ADA, NYSHRL, and

1

NYCHRL claims. (Id.) For the reasons stated below, the Court grants the DOE's motion to dismiss with regard to Telesford's NYSHRL and NYCHRL claims and denies DOE's motion to dismiss with regard to Telesford's ADA claim.

## BACKGROUND[1]

On September 4, 2012, Telesford started working as a probationary science teacher at East New York Middle School of Excellence ("ENYMSE") in Brooklyn. (Am. Compl. ¶ 15; D.E. # 47-1[2] at 8.) On June 6, 2014, Telesford suffered broken tibia and fibula bones in his left leg when several people fell on him as they played tug of war on a school field trip. (Am. Compl. ¶ 18; D.E. # 47-1 at 22, 38.) According to Telesford, the injuries "substantially limited" his "major life activities, including walking, running, ascending, and descending stairs, and bending." (Am. Compl. ¶ 22.) Because of the "severe" injury, Telesford "was bed-ridden for six weeks and then required a wheelchair for mobility for two months." (Id. ¶ 20.) Starting in September 2014, Telesford began "extensive physical therapy and continued to suffer arthritis and [to] walk with a cane." (Id. ¶ 21.) In light of the injuries, the DOE approved so-called "Line of Duty Injury" ("LODI") leave from June 9, 2014, to January 8, 2015. (Id. ¶ 23; see also D.E. # 47-1 at 49.)

On December 2, 2014, ten days after the end of his probationary period and more than a month before the end of his LODI leave, Stallings-Harte sent a letter announcing her decision to

---

[1] The Court generally "accept[s] all allegations in the [C]omplaint as true and draw[s] all inferences in [Plaintiff's] favor." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). "On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (citing Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009)). The Second Circuit has suggested that attachments to answers should be considered only if their authenticity is not under dispute. Lexon Ins. Co. v. Wells Fargo Bank, 619 F. App'x 27, 28 (2d Cir. 2015). Because Telesford does not dispute the authenticity of the DOE's attachments, (D.E. # 21-1–6), the Court considers them for purposes of this motion. In any event, none of the DOE's attachments are material to any issues decided against Telesford.

[2] Defendant offered a copy of Plaintiff's charge filed with the United States Equal Employment Opportunity Commission ("EEOC"). (See D.E. # 47-1.) The Court may take judicial notice of the EEOC charge because it is a public document and integral to Plaintiff's pleadings. See, e.g., Morris v. David Lerner Assocs., 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010).

end Telesford's employment but providing no reason for the termination. (Am. Compl. ¶¶ 24–25; see also D.E. # 47-1 at 8 (noting that Telesford received the letter on December 3, 2014).)

In response, Telesford filed a complaint of age and disability discrimination with the DOE's Office of Equal Opportunity on January 23, 2015. (D.E. # 47-1 at 59.) In the complaint, he wrote that, "[w]hile on the medical disability/ line of duty injury (LODI) [leave, he] was denied tenure, [and that] his probationary period was terminated." (Id.) Sometime after the termination, Telesford also requested a review hearing with the DOE's Office of Appeals and Reviews. (Am. Compl. ¶ 27.) The hearing took place on March 3, 2015. (Id. ¶¶ 28; see also D.E. # 21-4.)

On March 26, 2015, Telesford filed a charge with the EEOC. (Am. Compl. ¶¶ 29; D.E. # 47-1 at 2.) In the charge, he asserted "Constructive Discharge, Disparate Treatment, Unequal Terms and Conditions of Employment, Retaliation, Race (Black), Hostile work environment, disparate disciplinary action, Disability, [and] Age discrimination." (D.E. # 47-1 at 8 (emphasis in original).) He stated that he was "served with Termination while on approved pay sick leave from On the Job injury." (Id.) Telesford said he was "subjected to subjective performance Evaluations[] [and] Hostile Work Environment." (Id.) Elsewhere, he said that he "was subjected to various discriminatory and illegal acts," and that "other similarly situated personnel of different racial groups received preferential treatment." (Id. at 9.) Telesford attached numerous exhibits to his charge: his hiring letter, pay records, medical records, injury reports, his LODI approval notice, materials about his probationary period and teacher evaluations, and letters written by another teacher who complained about harassment by a secretary in the school. (Id. at 11–64.) The pleadings do not indicate that Telesford filed an amendment to his EEOC charge to reflect subsequent communications between Stallings-Harte and him.

On June 11, 2015, Stallings-Harte wrote in a letter that, after receiving a report about the March DOE meeting, she had reversed her December 2, 2014, decision. (Am. Compl. ¶ 30; D.E. # 21-4.) In a June 13, 2015, e-mail, Telesford told Stallings-Harte that he would return to work if he received certain accommodations: "access to an elevator; flexible time to sit or rest after standing for more than an hour; additional time to move between classrooms; and extra time and assistance to set up and break down science labs." (Am. Compl. ¶¶ 31–32.) In a letter dated four days later, Stallings-Harte issued another letter telling Telesford to disregard the June 11, 2015, letter. (Id. ¶ 33.) She wrote that the prior letter was "sent in error" and that she has "reaffirmed" the denial of tenure and termination of Telesford's employment. (D.E. # 21-5.)

On November 19, 2015, the EEOC issued a right-to-sue letter to Telesford. (Am. Compl., Ex. A.) In the letter accompanying the notice, the EEOC recognized Telesford's allegations that he was discriminated "because of [his] Race (Black), Age (DOB: 7-28-1958), [and] Disability" and "subjected to Retaliation, Harassment, and hostile work environment . . . when [he was] terminated from [his] position." (D.E. # 1 at 15.) Proceeding pro se and in forma pauperis, Telesford filed the instant action on February 12, 2016, asserting not only disability discrimination claims under the ADA but also race and age discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.[3] (D.E. # 1–2, 4.) The Court issued a summons for the DOE, and the summons was returned on March 21, 2016. (D.E. # 5–6.)

## STANDARD OF REVIEW

"Pursuant to Fed. R. Civ. P. 12(h)(2), . . . a defense of failure to state a claim may be raised in a Rule 12(c) motion for judgment on the pleadings, and when this occurs the [C]ourt simply

---

[3] Telesford's Title VII and ADEA claims were omitted from his Amended Complaint, filed September 20, 2016.

4

treats the motion as if it were a motion to dismiss" under Rule 12(b)(6). Leather v. Eyck, 180 F.3d 420, 423 n.4 (2d Cir. 1999) (quoting Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs., 850 F.2d 904, 909 n.2 (2d Cir. 1988)). Plaintiff must allege "sufficient factual matter" to "nudge[]" Plaintiff's claims "across the line from the conceivable to plausible." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2008)). Plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of actions and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." L-7 Designs, 647 F.3d at 430. Drawing upon its "experience and common sense," the Court must determine whether liability is a "reasonable inference" from the allegations. Iqbal, 556 U.S. at 678–79. The Court must dismiss the Complaint if its "well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct . . . ." Id. at 679. Still, the Court must adopt all factual allegations, even the "doubtful" ones. Twombly, 550 U.S. at 555. And "where there is a dispute as to material facts[,] judgment on the pleadings is inappropriate." George C. Frey Read-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 553 (2d Cir. 1977).

## DISCUSSION

### I. ADA

The DOE argues both that Telesford failed to exhaust his administrative remedies and that his claim fails on the merits. (Br. at 4–13, D.E. # 46.) For the reasons stated below, the Court rejects both arguments.

A.  **EEOC Charge**

Defendant argues that Telesford's March 26, 2015, EEOC charge did not put the DOE on notice of Stallings-Harte's June 2015 conduct,[4] which occurred more than two months after the charge was filed. In response, Telesford argues that the Court may hear his ADA claims based on the alleged June 2015 termination because it is "reasonably related" to the December 2014 termination. See Alfano v. Costello, 294 F.3d 365, 381 (2d Cir. 2002). An ADA claim based on conduct subsequent to a charge's filing is not barred if (1) it "fall[s] within the reasonably expected scope of an EEOC investigation of the charges of discrimination"; (2) it "alleges retaliation for filing the EEOC charge"; or (3) it involves "incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Id. Telesford argues the first prong. (See Br. at 6.)

In analyzing the first prong, the Court must "focus" on the "factual allegations made in the [EEOC] charge itself" and answer the "central question" of "whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (quoting Deravin v. Kerik, 335 F.3d 195, 201–02 (2d Cir. 2003)). The prong is "essentially an allowance of loose pleading" because courts recognize that many litigants file EEOC charges pro se. Id. "Generally, courts dismiss claims that are so qualitatively different from the allegations contained in an EEOC charge that any investigation would not likely encompass the new allegations." Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 469 (S.D.N.Y. 2011).

The Court finds that the Stallings-Harte's alleged June 2015 reinstatement and termination of Telesford is not "qualitatively different" or "based on a wholly different type of discrimination"

---

[4] The DOE does not appear to contend that Telesford's EEOC charge did not put it on notice of Telesford's claims arising out of his December 2014 denial of tenure and termination. (Br. at 4–7.) Nor could it. Telesford's EEOC charge was centered around those events.

6

from the December 2014 termination. Id. In the EEOC charge, Telesford provided relevant documents about his broken left leg, and he alleged a wide array of discriminatory conduct that occurred when the DOE allegedly denied him tenure and terminated his employment. (See, e.g., D.E. # 47-1 at 8.) The EEOC recognized the broad scope of Telesford's charge in its right-to-sue letter, acknowledging both that Telesford was allegedly being discriminated against "because of [his] . . . Disability" and that he was being "subjected to Retaliation, Harassment, and hostile work environment . . . when [he was] terminated from [his] position." (D.E. # 1 at 15.)

The pleadings plausibly assert that Stallings-Harte terminated him in response to his filing a request for disability accommodations. The December 2014 and June 2015 terminations share a "reasonable relationship, and indeed a close connection." Erasmus v. Deutsche Bank Ams. Holding Corp., No. 15-CV-1398 (PAE), 2015 WL 7736554, at *14 (S.D.N.Y. Nov. 30, 2015). The two terminations allegedly resulted from the same disability. In fact, Stallings-Harte's June 2015 conduct simply "reaffirmed" Telesford's December 2014 termination—that is, it re-implemented the same allegedly discriminatory conduct complained of in the EEOC charge. See, e.g., Peterson v. Ins. Co. of North America., 884 F. Supp. 107, 111 (S.D.N.Y. 1995) ("Given the close relationship between promotions on the one hand and positive performance reviews and salary increases on the other, it is clear that Peterson's ADEA claim for denied promotions is well within the subject matter of his EEOC complaint even though it was not explicitly asserted."); cf. Chandler v. AMR Am. Eagle Airline, 251 F. Supp. 2d 1173, 1178 (E.D.N.Y. 2003) (finding no reasonable relation between back and leg injuries, which were asserted in the EEOC charge, and prostate issues, which was not). The Court sees no meaningful difference between a termination occurring during a work accommodation (the LODI leave) and reaffirmation of that termination

following a request for more accommodations of the same disability. Accordingly, the Court finds that Telesford filed a sufficient EEOC charge to exhaust his administrative remedies.

### B.   Failure to State a Claim

The DOE also urges this Court to dismiss the ADA claim for failure to state a claim. The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prove an ADA claim, Telesford must show that: (1) "the employer is subject to the ADA"; (2) Plaintiff "is disabled within the meaning of the ADA or perceived to be so by [his] employer"; (3) he "was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation"; (4) he "suffered an adverse employment action"; and (5) "the adverse action was imposed because of [his] disability." Davis v. N.Y.C. Dep't of Educ., 804 F.3d 231, 235 (2d Cir. 2015). The DOE does not dispute the first, third, or fourth elements. It argues that (1) Telesford fails to assert an actual or perceived disability, and that (2) Telesford fails to plausibly allege that the DOE's adverse employment action was caused by his disability. The Court addresses each in turn.

### 1.   Actual Disability

The DOE argues that Telesford fails to allege an actual disability under the ADA. With respect to an actual disability claim, Telesford must prove that (1) he "suffered from a physical or mental impairment"; (2) "'the life activity' upon which the plaintiff relied constitutes a major life activity under the ADA"; and (3) his "impairment 'substantially limited' the major life activity identified." Jacques v. DiMarzio, Inc., 386 F.3d 192, 201 (2d Cir. 2004) (alterations and citation omitted), superseded in part by statute on other grounds, ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553. Major life activities include "caring for

8

oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

With respect to the substantial limitation prong, the federal courts for many years imposed a "demanding standard" that required a "considerable" or "large" impairment, one that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." See, e.g., Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 196–98 (2002), superseded by statute, ADAAA, Pub. L. No. 110-325, 122 Stat. 3553. However, Congress enacted the ADAAA in 2008 "in part because it had concluded that Toyota Motor 'interpreted the term "substantially limits" to require a greater degree of limitation than was [originally] intended by Congress,' and 'created an inappropriately high level of limitation necessary to obtain coverage under the ADA.'" Price v. City of N.Y., 558 F. App'x 119, 120 (2d Cir. 2014) (quoting ADAAA, Pub. L. No. 110-325, §§ 2(a)(7), 2(b)(5), 122 Stat. 3553, 3553–54).

Telesford now has a relatively light burden. See 29 C.F.R. § 1630.2(j)(1)(iii) (noting that the substantial limitation prong "should not demand extensive analysis").[5] Post-ADAAA regulations provide that Telesford must show that the impairment "substantially limits"—but not necessarily "prevent[s], or significantly or severely restrict[s]"—"the ability of an individual to perform" at least one "major life activity as compared to most people in the general population." Id. §§ 1630.2(j)(1)(ii), 1630.2(j)(1)(viii). Moreover, the "effects of an impairment lasting or expected to last fewer than six months can be substantially limiting." Id. § 1630.2(j)(1)(ix).

---

[5] The Court "accord[s] 'great deference' to the EEOC's interpretation of the ADA, since it is charged with administering the statute." Francis v. City of Meriden, 129 F.3d 281, 283 n.1 (2d Cir. 1997) (quoting Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 309 (2d Cir. 1996)).

9

The Court finds that the current set of allegations meet Telesford's lighter burden at the pleadings stage. The Amended Complaint states that Telesford had a "severe" injury that "substantially limited" his "major life activities, including walking, running, ascending, and descending stairs, and bending." (Am. Compl. ¶¶ 20, 22.) Although this allegation is conclusory when viewed alone, Telesford pleads additional allegations that satisfy his burden. Telesford pled that (1) after the injury, he "was bed-ridden for six weeks and then required a wheelchair for mobility for two months," and that (2) during his LODI leave, he started "extensive physical therapy and continued to suffer arthritis and walk with a cane." (Id. ¶¶ 20–21.) "[S]hort term or temporary impairments generally do . . . not render a person disabled" under the ADAAA, see Mastrio v. Eurest Servs., Inc., No. 3:13-CV-564 (VLB), 2014 WL 840229, at *4 (D. Conn. Mar. 4, 2014) (collecting cases), and neither do broken bones, see, e.g., Kruger v. Hamilton Manor Nursing Home, 10 F. Supp. 3d 385, 389 (W.D.N.Y. 2014). However, Telesford plausibly alleges that, in the time leading to the December 2014 termination, he was effectively unable to walk for three and a half months and later suffered arthritis and required a cane.[6] He plausibly alleges physical limitations lasting beyond the period during which his broken bones were healing. In short, because walking is a "major life activity," because the EEOC regulations require a "substantial limitation" on only a single activity, and because substantial limitations may last for fewer than six months, the Court cannot find that Telesford fails to allege an actual disability as a matter of law. See 29 C.F.R. §§ 1630.2(j)(1)(ii), 1630.2(j)(1)(viii), 1630.2(j)(1)(ix).

---

[6] The DOE cites to Nieves v. City of N.Y., No. 15-CV-2227 (ALC), 2017 U.S. Dist. LEXIS 133503 (S.D.N.Y. Aug. 18, 2017), for the proposition that "a plaintiff was not substantially limited in walking as long as she can use her cane." (See Br. at 10 (citing Nieves, 2017 U.S. Dist. LEXIS 133503, at *18).) The Court disagrees with Nieves. The Nieves court held that "[i]n determining whether the major life activity of walking has been substantially limited, courts consider available mitigating aids, such as a cane." Nieves, 2017 U.S. Dist. LEXIS 133503, at *18. But post-ADAAA regulations establish the contrary. See 29 C.F.R. § 1630.2(j)(vi) ("The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures.").

10

## 2. Perceived Disability

The DOE further claims that Telesford has not adequately alleged that the DOE perceived him to be disabled because Telesford alleged only that the DOE had "knowledge of plaintiff's broken leg" and mere "aware[ness] of an employee's impairment is insufficient" to prove a perceived disability. (Br. at 12.) The Court disagrees. The ADAAA bars discrimination against individuals with "disabilit[ies]" including: "a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A), and also "being regarded as having such an impairment," id. §12102(1)(C). In contrast with subparagraph (A), subparagraph (C) does not require a <u>perceived</u> impairment to be one "that substantially limits one or more major life activities." The ADAAA goes on to say: "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment <u>whether or not the impairment limits or is perceived to limit a major life activity</u>." 42 U.S.C. § 12102(3)(A) (emphasis added). Even the DOE admits that it perceived Telesford as having an impairment.

Relying on <u>Kruger v. Hamilton Manor Nursing Home</u>, 10 F. Supp. 3d 385 (W.D.N.Y. 2014), the DOE argues that its perception of Telesford's impairment is not enough to state a claim of perceived disability. <u>Kruger</u> cited <u>Reeves v. Johnson Control World Servs., Inc.</u>, 140 F.3d 144, 153 (2d Cir. 1998), for the proposition that "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate . . . that the employer regarded the employee as disabled." But the Second Circuit recognized in <u>Hilton v. Wright</u>, 673 F.3d 120, 128 (2d Cir. 2012), that this standard did not survive the passage of the ADAAA in 2008. Following those amendments, "it is clear that" Telesford is only required to plead facts "about whether [defendants]

11

regarded him as having a mental or physical impairment. [He is] not required to present evidence of how or to what degree they believed the impairment affected him." Hilton, 673 F.3d at 129. Because Telesford pled such facts, the Court finds that he adequately pled a perceived disability.

### 3. Causation

The DOE also argues that Telesford fails sufficiently to allege that he was terminated "because of" his disability. (Br. 12–13.) This claim has no merit. Telesford "need only give plausible support to a minimal inference of discriminatory motivation at the pleading stage." Luka v. Bard Coll., 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (quoting Dooley v. JetBlue Airways Corp., 636 F. App'x 16, 21 (2d Cir. 2015)). "[T]emporal proximity is sufficient to raise an inference of discrimination to plausibly state a claim of employment discrimination." Vale v. Great Neck Water Pollution Control Dist., 80 F. Supp. 3d 426, 437 (E.D.N.Y. 2015). Here, the December 2015 termination allegedly occurred while Telesford was on his LODI leave for his injuries, and the June 2015 termination allegedly occurred a few days after he had sent his request for accommodations. See id. (collecting cases). This "temporal proximity" is "very close"— within the range the Supreme Court has indicated can establish a "prima facie case" of causation. See Clark County School Dist. v. Breeden, 532 U.S. 268, 273–74 (2001). In the very least, these pleadings suffice to make the "minimum inference of discriminatory motivation" needed for the claim to proceed to discovery. Luka, 263 F. Supp. 3d at 487.

The DOE also asserts that "[P]laintiff was on notice of his poor performance prior to injuring his leg." (Br. at 12.) But the evidence the DOE provides does not contradict Telesford's prima facie showing of causation. Instead, the DOE offers a nondiscriminatory reason for Telesford's termination, relevant under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The Court considers that framework only at the summary

judgment stage, not at the dismissal stage. See Davis, 804 F.3d at 235. Telesford is not required to meet his McDonnell Douglas burden at this stage. The ADA claim can proceed to discovery.

## II. NYSHRL and NYCHRL

The DOE seeks dismissal of Telesford's state-law claims by arguing that Telesford failed to file a notice of claim with the DOE pursuant to New York Education Law ("NYEL") § 3813(1). (Br. at 17–19.) Telesford agrees that notice is required when seeking compensatory relief under the NYSHRL and NYCHRL, and agrees that a notice of claim was not filed. (Opp'n at 12, D.E. # 50.) However, Telesford contends that "notice is not required where the only relief sought is equitable in nature." (D.E. # 53.) The Court finds that Telesford cannot satisfy this exception to the notice requirement of § 3813(1).

The New York Appellate Divisions have recognized that equitable claims "are not barred by failure to file a notice of claim." Kahn v. New York City Dept. of Educ., 915 N.Y.S.2d 26 (1st Dep't 2010); Ruocco v. Doyle, 327 N.Y.S.2d 933 (2d Dep't 1972). However, this exception applies only when "a litigant seeks only equitable relief." Fotopoulos v. Bd. Of Fire Comm'rs of Hicksville Fire Dist., 76 N.Y.S.3d 592, 594 (2d Dep't 2018) (emphasis added); Sheil v. Melucci, 941 N.Y.S.2d 265, 266 (2d Dep't 2012). Here, Telesford seeks primarily monetary relief. His request for equitable relief was an afterthought. (Am. Compl. ¶ j (requesting "[s]uch other and further legal, equitable, or other relief as the Court deems just and proper" in the final paragraph of the Amended Complaint).) "Since [Telesford] seeks both equitable relief and recovery of damages, h[is] failure to comply with the pleading requirements of Education Law § 3813(1) requires that h[is] petition be dismissed in its entirety." Id. at 266–67; see also Fotopoulos, 76 N.Y.S.3d at 594 ("Here, since the petitioner seeks both equitable relief and the recovery of

damages in the form of back pay, the filing of a notice of claim within 90 days after his claim arose was a condition precedent to the maintenance of this proceeding.").

Courts routinely enforce § 3813(1)'s notice requirement in discrimination cases brought under the NYSHRL and NYCHRL. See, e.g., Seifullah v. City of New York, 74 N.Y.S.3d 506, 507 (2d Dep't 2018); Laboy v. City of New York, 74 N.Y.S.3d 524, 525 (2d Dep't 2018); Warmin v. New York City Dep't of Educ., 16-cv-8044 (KPF), 2018 WL 1441382, at *6–7 (S.D.N.Y. Mar. 22, 2018); Garrido v. New York City Dep't of Educ., 16-cv-9464 (DAB), 2018 WL 1664793, at *7 (S.D.N.Y. Mar. 15, 2018). Because Telesford did not satisfy the notice-of-claim requirement of § 3813(1), his state-law claims are dismissed.

## CONCLUSION

In sum, the Court GRANTS IN PART and DENIES IN PART the DOE's motion for judgment on the pleadings. As stated on the record during the January 24, 2018, oral argument, the Court dismisses the § 1983 claim against the DOE and strikes the request for punitive damages as to the other claims. Also as stated on the record, the Court dismisses all claims against the Individual Defendants. And for the reasons stated in this Memorandum and Order, the Court grants the DOE's motion to dismiss Telesford's NYCHRL and NYSHRL claims and denies the DOE's motion on the ADA claim. This claim may proceed to discovery.

SO ORDERED.

Dated: September 17, 2018
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge