**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**16 Civ. 819 (CBA) (SMG)**
--------------------------------------------------------X

EDGAR TELESFORD,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.
----------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT MOTION

Respectfully submitted,

s/Daniel E. Dugan
DANIEL E. DUGAN, ESQ.
Attorneys for Plaintiff
111 John Street, 22nd Floor
New York, New York
10038 (212) 792-9670
dan@stewartkarlin.com

TO:  Mark Ferguson, ACC
       Attorney for Defendant
       via ECF

## TABLE OF CONTENTS

*Item* *Page*

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-v

PRELIMINARY  STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-8

    A.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    2012-2013 School Year . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

    C.    2013-2014 School Year . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    D.    Plaintiff's Line of Duty Injury on June 6, 2014 . . . . . . . . . . . . . . . . . . . . 4-5

    E.    DOE's Decision to Deny Tenure and Terminate Telesford's Employment While on Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

    F.    Complaints of Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    G.    DOE Chancellor Committee's Reversal of the Discontinuance and Reinstatement of Telesford to His Teaching Position . . . . . . . . . . . . . . . . 6-7

    H.    Superintendent Stalling-Harte's Actions to Terminate Telesford's Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-24

    POINT I: APPLICABLE SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . 9-10

    POINT II: PLAINTIFF'S DISABILITY DISCRIMINATION CLAIM UNDER THE ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-17

    A.    Disability Discrimination Framework . . . . . . . . . . . . . . . . . . . . . . . . 10

        1.    Plaintiff's Injury Qualifies as a Disability under the ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

i

2.     There Exists an Inference of Discrimination . . . . . . . . . . . . . . . . . . 13-14

3.     Defendant's Purported Legitimate Non-Discriminatory
Reasons for Its actions are Pretextual . . . . . . . . . . . . . . . . . . . . . . . 14-17

POINT III: PLAINTIFF'S RETALIATION CLAIM UNDER THE
ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-24

A.     Plaintiff's Prima Facie Case of Retaliation . . . . . . . . . . . . . . . . . . . 18-21

B.     The Stated Basis for Superintendent Stalling-Harte
Decision was merely a Pretext for Retaliation . . . . . . . . . . . . . . . . . 21-23

C.     Defendant Failed to Accommodate Plaintiff's Disability . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## <u>TABLE OF AUTHORITIES</u>

*Item*                                                                                    *Page*

**Laws and Statutes:**

29 C.F.R. § 1630.2(j)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ADA Amendments Act of 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed.R.Civ.P. 56 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Cases:**

*American Ca. Co. Of Reading, PA. v. Nordic Leasing, Inc.,*
42 F.3d 725, 728 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Baron v. Advanced Asset & Prop. Mgmt Solution LLC,*
15 Supp. 3d 274, 280 (EDNY 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Cifra v. Gen. Elec. Co.,*
252 F.3d 205, 217 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Clark County School Dist. v. Breeden*
532 U.S. 268, 273-74 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19

*Colwell v. Suffolk County Police Dep't,*
158 F.3d 635, 644 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cronin v. Aetna Life Ins. Co.,*
46 F.3d 196, 203 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Eastman Mach. Co. V. United States,*
841 F.2d 469, 473 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Grant v. Bethlehem Steel Corp.,*
622 F.2d 43, 45 46 (2d Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Harris v. NYU Langone Med. Ctr.,*
No. 12 Civ. 0454(RA) (JLC), 2013 U.S. Dist. LEXIS 99328 at
*62-63 (S.D.N.Y. July 9, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Krasner,*
U.S. Dist. LEXIS 136534 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Laurent v. G & G Bus Serv., Inc.,*
No. 10 Civ. 4055 (JGK) (LMS), 2011 U.S. Dist. LEXIS 77138 at *19 (S.D.N.Y. 2011) . . . . . . 11

*Lovejoy Wilson v. NOCO Motor Fuel, Inc.,*
263 F.3d 208, 212 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792, 802-805.  (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*Montana v. First Fed. Sav. & Loan Assn,*
869 F.2d 100, 103 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Quinn v. Green Tree Credit Corp.,*
159 F.3d 759, 769 (2d Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Reed v. A.W. Lawrence & Co.,*
95 F.3d 1170, 1178 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Reeves v. Johnson Controls World Servs.,*
140 F.3d 144, 149-50 (2d 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Richardson v. New York State Dep't of Corr. Serv.,*
180 F.3d 426, 446 47 (2d Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Rodal v. Anesthesia Group of Onondaga, P.C.,*
369 F.3d 113 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Spadola v. New York City Transit Authority,*
242 F. Supp. 2d 284 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Spruill v. N.Y. City Health & Hosps. Corp.,*
No. 06 Civ. 11362 (WHP), 2008 U.S. Dist. LEXIS 64468,
at *7 (S.D.N.Y. Aug. 25, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Suburban Propane v. Proctor Gas, Inc.,*
953 F.2d 780, 788 (2d Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Trans Orient Marine Corp. v. Star Trading & Marine, Inc.*
925 F.2d 566, 572 (2d Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Treglia v. Town of Manlius,*
313 F.3d 713, 719 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

iv

*United States v. Diebold Inc.,*
369 U.S. 654 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Vale v. Great Neck Water Pollution Control District.*
 80 F. Supp. 3D 426 437 (EDNY 2015)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Weg v. Macchiarola,*
995 F.2d 15, 18 (2d Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Weixel v. Board of Educ. of the City of New York,*
287 F.3d 138, 148 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

v

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
EDGAR TELESFORD,

                  Plaintiff,

     -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                                     **16 Civ. 819 (CBA) (SMG)**

                  Defendant.
------------------------------------------------------------------------x

### MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANT'S SUMMARY JUDGMENT MOTION

### PRELIMINARY STATEMENT

Plaintiff Edgard Telesford submits this memorandum of law in opposition to Defendant's Motion for Summary Judgment.

Plaintiff, a former teacher with the Defendant New York City Department of Education ("DOE"), was discriminated due to his disability (a severe broken leg suffered in the line of duty) and retaliated against due to his complaints of discrimination following the injury.

In May 2014, less than a month prior to the conclusion of Telesford's second school year as a probationary teacher, he was verbally informed by his Principal that he would be returning to his position as a teacher for the 2014-2015 school year and also be receiving a summer school assignment to teach an SAT preparation class for his eighth grade students.

Just days later, on June 6, 2014, Telesford suffered a severe broken leg during a school field trip, causing him to be bed-ridden for six weeks, followed by months of wheelchair use and extensive physical therapy with still continuing effects or the injury.

Telesford would not teach again with the DOE following the injury, as his employment was terminated on July 8, 2014, while he was on an approved leave for his "line of duty injury."

1

Defendant has set forth that Telesford was terminated for poor performance and disciplinary letters that had been placed in his file, yet these purported issues were all prior to his Principal's assertion that Telesford would be receiving a summer assignment and returning to his teaching position for the following school year.  Further, following Telesford's  internal appeal of his termination and denial of tenure, a three-member committee designated by the Chancellor of the DOE, ruled that Telesford's termination should be reversed and he be reinstated to his teaching position, finding that same evidence that the DOE continues to rely on in its attempts to show a legitimate reason for the adverse employment action, was insufficient to support Telesford's termination.

Superintendent Stallings-Harte, who was aware of Plaintiff's intervening complaints of disability discrimination (to the DOE Equal Employment Office and the EEOC) in early 2015, singlehandedly overruled the decision of the Chancellor's Committee and upheld the decision to terminate Telesford's employment on June 13, 2015.

Defendant has failed to meet its burden on the instant motion for summary judgment as the totality of the circumstances surrounding Telesford's termination create a question of fact as to whether the stated basis for the adverse employment action was a pretext for discrimination and retaliation.

## STATEMENT OF FACTS

### A.      Background

Plaintiff Edgar Telesford commenced working with Defendant New York City Department of Education ("DOE") as a probationary science teacher at the East New York Middle School of Excellence (hereinafter referred to as "ENYSME") within Community School District 19 in Brooklyn, New York in September 2012.   He was hired by Principal Malik Small from the NYC Teaching Fellows program and subject to a one-year probation period.  (Pl.'s Dec. ¶ 2).

### B.      2012-2013 School Year

Shortly into Telesford's employment, in October 2012, he was falsely accused by a student of giving her suggestive, after he had told her that she could not eat potato chips in the classroom. During the investigation Telesford was reassigned away from ENYSME from October 12, 2012. (Def.'s Ex. G).  The allegation was found to be unsubstantiated and he returned to his position as a teacher at ENYSME on January 3, 2013 (Def.'s Ex. H; Pl.'s Dec. ¶ 3).

On May 24, 2013, Plaintiff was again subjected to a false accusation against him.  He was accused of recording a group of students during gym class when he was assigned as a substitute teacher for an 8th grade gym class on that day.  A group of students kept attempting to leave the gym through the back door during the class period and, in an attempt to stop that behavior, Telesford motioned with his phone towards them.  The camera was not on and he was not filming the students.   An investigation was conducted and he was interviewed by Principal Small. Following the investigation, Telesford was not disciplined and the investigation resulted in a "Letter **Not** to File."  (Emphasis added) (Def.'s Ex. I).  This letter was not issued until August 6, 2014, over a year after the allegations were made, and even after Principal Small had terminated Telesford's employment after the 2013-2014 school year. (Def.'s Ex. I; Pl.'s Dec. ¶ 4).

Despite the above incidents, Telesford's first year teaching was successful and he received a Satisfactory Annual Professional Performance Review ("APPR") for the 2012-13 school year. (Def.'s Exhibit L).

In June 2013, Plaintiff's probationary period was extended from the end of the 2012-13 school year until November 22, 2014.  (Def.'s Ex. E)

## C.    2013-2014 School Year

During the 2013-2014, school year Telesford was not provided with the required assistance/professional development necessary.  Additionally, while he was observed on six occasions during the school year, four of those observations occurred in the month of May 2014, the last full month of the school year, which did not allow him a sufficient opportunity to implement the feedback he received.  (Pl.'s Dec. ¶ 7)

Following the completion of Telesford's observations for the school year,on May 27, 2014, Principal Small verbally invited him to return to teach an SAT Prep Course during Summer 2014 for the eighth grade students at ENYSME.  During this meeting Principal Small and Telesford verbally agreed that Telesford would be returning to his teaching position at ENYSME for the 2014-2015 school year.  In this discussion regarding the next school year, Principal Small stated that he was removing the letters that were in Telesford's personnel file, going so far as physically place them in the paper shredder in front of me, indicating that I was going to be moving forward with a "clean slate."  (Pl.'s Dec. ¶ 9)

## D.    Plaintiff's Line of Duty Injury on June 6, 2014

On June 6, 2014, Telesford suffered a severe broken leg to his tibia and fibula on a field trip during normal work hours at the school, and therefore suffered this injury in the line of duty. During a field trip a group of students and teachers were playing "tug-of-war."   Telesford was

asked to participate, but after briefly participating, responded that he was a bit too old to be playing "tug-of-war," so he stood off to the side.  During the game, several teachers stumbled and fell, resulting in Telesford getting knocked over and then fallen on by other teachers.  This caused a severe break in his leg and he was transported to the hospital by ambulance.  (Pl.'s Dec. ¶ 9)

Principal, Malik Small, was present when Telesford suffered the injury.  He was not able to immediately return to work for several months because he was bed-ridden for six weeks and then required a wheelchair for mobility for two months after this severe leg injury.  Telesford wore a cast on his leg from the tip of his toes to his hip. When the cast was removed in early September 2014, he began extensive physical therapy and continued to suffer arthritis and walk with a cane as a result of the injury.  As a result of his injury, major life activities, including walking, running, ascending and descending stairs, and bending were substantially limited.  (Pl.'s Dec. ¶ 11)

Based on the severity of his injuries, the DOE approved his Line of Duty Injury ("LODI") leave request for his injuries from June 9, 2014 until January 8, 2015.  (Def.'s Ex. V).  Despite ultimately being approved, the approval was delayed because of Principal Small's delay in signing the LODI forms Telesford had submitted.

## E.    DOE's Decision to Deny Tenure and Terminate Telesford's Employment While on Leave

On July 8, 2014, during his approved LODI leave, Telesford received an email from Principal Small informing him that he submitted a recommendation that Telesford's tenure be denied.  (Def.'s Ex. W).  Prior to this email Plaintiff had never had a conversation with Principal Small or any other administrator informing him that he was in danger of being denied tenure and/or discontinued.  (Pl.'s Dec. ¶ 13)

As a result of having Telesford's employment being terminated, his salary and health insurance benefits were cancelled, effective December 2, 2014, and while still on his medical leave recovering from his line of duty injury.  (Pl.'s Dec. ¶ 14) F.

**F.      Complaints of Discrimination**

On January 13, 2015, Telesford filed a complaint against Principal Small and Superintendent Stallings-Harte with the DOE's Office of Equal Opportunity ("OEO") alleging that I had been discriminated against based on his disability because he was denied tenure and discontinued while on medical leave.  (Def.'s Ex. FF)

On February 20, 2015, Telesford filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission.  ("EEOC").  In his charge Telesford selected the box indicating, "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above.  I understand **that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.**"  (Emphasis in original)

**G.      DOE Chancellor Committee's Reversal of the Discontinuance and Reinstatement of Telesford to His Teaching Position**

Telesford filed for a review hearing of his denial of tenure and discontinuance of employment with the DOE Office of Appeals and Reviews.  (Pl. Dep at 97:3-6)

On March 3, 2015, a hearing was held in front of the three-member Chancellor's Committee of the DOE Office of Appeals and Review ("Chancellor's Committee") on March 3, 2015.  The Chancellor's Committee heard testimony from Plaintiff and Principal Small, as well as reviewed all the evidence submitted by the DOE in support of its decision to deny Telesford tenure and discontinue his employment.  (Def.'s Ex. BB)

Following the testimony and a review of the documentary evidence, in a 2-1 decision, the Chancellor's Committee found that the decision to deny Telesford's tenure should be **reversed.** (Def.'s Ex. BB)

## H.     Superintendent Stalling-Harte's Actions to Terminate Telesford's Employment

On June 11, 2015, Superintendent Joyce Stallings-Harte issued a letter to Telesford, that consistent with the Chancellor's Committee decision, she was rescinding her original December 2, 2014 determination denying the denial of tenure and discontinuance, thereby effectively reinstating Plaintiff's employment.  (Def.'s Ex. DD)

In anticipation of his return to work, following the Chancellor's Committee's reversal of his discontinuance and Superintendent Stalling-Harte's notification of her acceptance of that decision, Telesford, on June 13, 2015, sent an email to Superintendent Stallings-Harte stating his intention to return to work provided that he receive reasonable accommodations for his disabilities due to the leg injury.  (Def.'s Ex. GG)

Specifically, Telesford requested access to an elevator; flexible time to sit or rest after standing for more than an hour; additional time to move between classrooms; and extra time and assistance to set up and break down science labs.   (Def.'s Ex. GG)

Five days after her letter reinstating Telesford's employment, and three days after the accommodation request, Superintendent Stallings-Harte reversed her own decision and that of the Chancellor's Committee and informed Telesford via letter, dated June 16, 2015, that he was to disregard her June 11, 2015 letter, and  she was reaffirming her initial decision to deny Telesford's tenure and terminate his employment.  (Def.'s Exhibit EE)

## I.     Procedural History

Plaintiff commenced the instant action *pro se* by filing a Summons and Complaint on February 12, 2016.  On May 24, 2016, Defendants moved to dismiss the Complaint.  (*See* ECF Dkt. No. 10).  By letter dated June 16, 2016, Defendants request to file the motion to dismiss unopposed was denied (Dkt No. 11) and Plaintiff was granted til October 13, 2016 to file opposition to the motion.   Following Plaintiff's retention of prior counsel in this action, Defendant DOE chose to file an Answer to the Amended Complaint on October 18, 2016.  (Dkt. No. 21).

After settlement discussions and the substitution of counsel by the undersigned, Defendant DOE moved to dismiss the action in its entirety.

By Memorandum and Order dated September 17, 2018, the Court granted in part and denied in part Defendant's motion to dismiss.  (Def.'s Ex. B).  The Court permitted Plaintiff's ADA claims to proceed to discovery.

# ARGUMENT

## POINT I

## APPLICABLE SUMMARY JUDGMENT STANDARD

Summary judgment can be granted only when the submissions of the parties, taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. American Ca. Co. Of Reading, PA. v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir. 1994). *See also* Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113 (2d Cir. 2004), Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001). In connection with a motion for summary judgment, the court's function is to determine whether a material factual issue exists, not to resolve any existing factual issues. United States v. Diebold Inc., 369 U.S. 654 (1962), Eastman Mach. Co. V. United States, 841 F.2d 469, 473 (2d Cir. 1988). A court may grant summary judgment under Fed. R. Civ. P. 56(c) only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is proper only when, "viewing the evidence in the light most favorable to the non-movant, the court can determine that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir.1993) (quoting Suburban Propane v. Proctor Gas, Inc.,953 F.2d 780, 788 (2d Cir.1992)). The court must resolve all ambiguities and draw all doubtful inferences against the moving parties. Trans-Orient Marine Corp. v. Star Trading & Marine, Inc. 925 F.2d 566, 572 (2d Cir.1991). Ordinarily, plaintiff's evidence establishing a prima facie case and defendant's production of a non-discriminatory reason for the employment action raise a question of fact to be resolved by the factfinder after a trial. Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995). Summary judgment is appropriate at this point only if the employer's nondiscriminatory reason is dispositive

and forecloses any issue of material fact.  Lastly, a trial court must be careful about granting summary judgment to an employer where its intent is at issue. Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 103 (2d Cir. 1989).

## POINT II

## PLAINTIFF'S DISABILITY DISCRIMINATION CLAIM UNDER THE ADA

### A.   Disability Discrimination Framework

Plaintiff's claim of disability discrimination under the ADA is subject to the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805. (1973). A *prima facie* case is established if Plaintiff shows that he is a qualified individual with a disability and that there exists an inference of discrimination motivation for the Defendant's adverse employment action.

Once Plaintiff meets the *prima facie* burden, the burden then shifts to the employer to set forth a legitimate, non-discriminatory reason for its action.  Baron v. Advanced Asset & Prop. Mgmt Solution LLC, 15 Supp. 3d 274, 280 (EDNY 2014).  If the employer meets that burden then Plaintiff must show that stated basis was pretextual.  (Id.)

### 1.   Plaintiff's Injury Qualifies as a Disability under the ADA

"To establish a prima facie case under the ADA, a plaintiff must show, *inter alia*, that he has a disability." Spruill v. N.Y. City Health & Hosps. Corp., No. 06 Civ. 11362 (WHP), 2008 U.S. Dist. LEXIS 64468, at *7 (S.D.N.Y. Aug. 25, 2008) (citing Reeves v. Johnson Controls World Servs., 140 F.3d 144, 149-50 (2d 1998)), aff'd, 2010 U.S. App. LEXIS 4282 (2d Cir. Mar. 2, 2010). The ADA defines the term "disability," with respect to an individual, as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having

such an impairment." 42 U.S.C. § 12102(1). The term "substantially limited" is defined as: "(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." *See* Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 644 (2d Cir. 1998) (quoting 29 C.F.R. § 1630.2(j)(1)). The ADA Amendments Act of 2008 ("ADAAA) (codified as amended at 42 U.S.C.A. §§ 12101-12102 (1990)), set forth a new, more lenient, standard for determining whether an individual is "regarded as disabled."

Specifically, the ADAAA provides that "'[a]n individual meets the requirement of 'being regarded as having such an impairment' if the  individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment  limits or is perceived to limit a major life activity.'" Laurent v. G & G Bus Serv., Inc., No. 10 Civ. 4055 (JGK) (LMS), 2011 U.S. Dist. LEXIS 77138 at *19 (S.D.N.Y. 2011) (quoting 42 U.S.C. § 12102(3)(A)) report & rec. adopted, 2011 U.S. Dist. LEXIS 74348 (S.D.N.Y. 2011). However, even after the 2008 amendments to the ADA, "not every impairment will constitute a disability within the meaning" of the statute. See 29 C.F.R. § 1630.2(j)(ii). It remains that "[a]n impairment is a disability within the meaning of [the statute, only] if it substantially limits the  ability of an individual to perform a major life activity as compared to most people in the general  population." See id. Additionally, while plaintiffs are no longer required to demonstrate that the  perceived disability limits a major life activity, a plaintiff must still allege facts showing that the  employer *regarded* the plaintiff as disabled.  See Laurent, 2011 U.S. Dist. LEXIS 77138 at *20-*21; *see also* Harris v. NYU

Langone Med. Ctr., No. 12 Civ. 0454(RA) (JLC), 2013 U.S. Dist. LEXIS 99328 at *62-63 (S.D.N.Y. July 9, 2013).  Furthermore, a plaintiff will not be regarded as disabled if the perceived disability is transitory, meaning it has an actual or expected  duration of six months or less, and minor.  See Harris, 2013 U.S. Dist. LEXIS 99328 at *63.

Here, Plaintiff satisfies the disability definition set forth under the ADA.  On June 6, 2014, Plaintiff suffered a severe broken leg to his tibia and fibula on a field trip while working during normal work hours at the school, and therefore suffered this injury in the line of duty.  Telesford's Principal, Malik Small, was present when he suffered the injury.  Plaintiff was not able to immediately return to work for several months because he was bed-ridden for six weeks and then required a wheelchair for mobility for two months after this severe leg injury.  Plaintiff wore a cast on his leg from the tip of his toes to his hip. When the cast was removed in early September 2014, Plaintiff began extensive physical therapy and continues to suffer arthritis and walk with a cane as a result of the injury.  As a result of his injury, Plaintiff's major life activities, including walking, running, ascending and descending stairs, and bending were substantially limited.  (Pl.'s Dec. ¶ 11)

Plaintiff's broken leg, requiring bed-rest, wheelchair use and a hip to toe cast, satisfies the definition of disability under the ADA.  Further, based on the severity of Plaintiff's injuries, Plaintiff was approved for Line of Duty Injury ("LODI") leave for his injuries from June 9, 2014 until January 8, 2015.  (Amd. Cmp. ¶ 23).  At the time of Plaintiff's termination, he was out on the approved LODI leave due to the severity of the injury.

### 2.      There Exists an Inference of Discrimination

The September 17, 2018 Decision of this Court found that Plaintiff had met his *prima facie* burden of showing an inference of discrimination sufficient to shift the burden to Defendant to set forth a legitimate. non-discriminatory reason for its actions.  (Def.'s Ex.B)

On May 27, 2014, just days prior to his injury, Principal Small verbally invited him to return to teach an SAT Prep Course during Summer 2014 for the eighth-grade students at ENYSME.  During this meeting Principal Small and Telesford verbally agreed that Telesford would be returning to his teaching position at ENYSME for the 2014-2015 school year.  In this discussion regarding the next school year, Principal Small stated that he was removing the letters that were in Telesford's personnel file, going so far as physically place them in the paper shredder in front of me, indicating that I was going to be moving forward with a "clean slate."  Principal Small confirmed that when he gave Telesford his final rating for the 2013-2014 school year that Telesford had a position for the following year.  (Def.'s Ex. D at pg. 38)

Further, following the internal of appeal of Principal's Small's decision, on June 11, 2015, Superintendent Joyce Stallings-Harte issued a letter to Telesford, that consistent with the Chancellor's Committee decision, she was rescinding her original December 2, 2014 determination denying my denial of tenure and discontinuance, thereby effectively reinstating me to my employment.  (Def.'s Ex. DD)

In anticipation of his return to work, following the Chancellor's Committee's reversal of his discontinuance and Superintendent Stalling-Harte's notification of her acceptance of that decision, Telesford, on June 13, 2015, sent an email to Superintendent Stallings-Harte stating his intention to return to work provided that he receive reasonable accommodations for his disabilities due to the leg injury.  (Def.'s Ex. GG)

13

Five days after her letter reinstating Telesford's employment, and three days after the accommodation request, Superintendent Stallings-Harte reversed her own decision and that of the Chancellor's Committee and informed Telesford via letter, dated June 16, 2015, that he was to disregard her June 11, 2015 letter, and she was reaffirming her initial decision to deny Telesford's tenure and terminate his employment. (Def.'s Ex. EE)

As set forth in this Court's September 17, 2018 Decision, "temporal proximity is sufficient to raise an inference of discrimination to plausibly state a claim of employment discrimination. Vale v. Great Neck Water Pollution Control District. 80 F. Supp. 3D 426 437 (EDNY 2015). Discovery has confirmed the Court's analysis that Principal Small's decision to deny tenure and discontinue Plaintiff occurred while Plaintiff was on his LODI leave, and that Superintendent Stallings-Harte's June 2015 decision to overrule the Chancellor Committee decision,  occurred just days after she had confirmed that decision and subsequently received Plaintiff's accommodation request.  This temporal proximity is "very close," and well within the range the Supreme Court has indicated can establish "a prima facie "of causation. *See* Clark County School Dist. v. Breeden 532 U.S. 268, 273-74 (2001).

Again, as acknowledged in the September 17, 2018 Decision of this Court, Defendant's repeated arguments as to his alleged poor performance do not contradict Plaintiff's *prima facie* showing of causation, but instead are only as the burden shifts to Defendant to show a legitimate basis for termination, under the ˆˆMcDonnell-Douglas  framework, as addressed below. (Ex. B)

### 3.   Defendant's Purported Legitimate Non-Discriminatory Reasons for Its actions are Pretextual

Defendant DOE has alleged that Plaintiff's observations and letters to the file are sufficient to show a legitimate, non-discriminatory basis for Plaintiff's termination.  Defendant's argument

fails though, as the same evidence that that DOE now relies on to support its alleged non-discriminatory basis for Plaintiff's termination was found insufficient by the majority of the DOE's own Chancellor's Committee to warrant Plaintiff's termination.  (Ex. BB)

First, Principal Small, just 10 days prior to Plaintiff suffering his severe broken leg on a field trip, verbally invited Telesford to return to teach an SAT Prep Course during Summer 2014 for the eighth-grade students at ENYSME.  During this meeting Principal Small and Telesford verbally agreed that Telesford would be returning to his teaching position at ENYSME for the 2014-2015 school year.  In this discussion regarding the next school year, Principal Small stated that he was removing the letters that were in Telesford's personnel file, going so far as physically place them in the paper shredder in front of me, indicating that I was going to be moving forward with a "clean slate."  Following this May 27, 2014 discussion between Principal Small and Plaintiff, there were no further observations of Plaintiff's teaching, nor any allegations of misconduct.  The same evidence that the DOE relies on to support its non-discriminatory basis for termination was all known to Principal Small when he made this verbal confirmation that Plaintiff would not only be returning the following school year but also receive an additional summer teaching assignment.  The only intervening event between Principal's Small's May 27th statements and his decision to terminate Plaintiff's employment was Telesford's line of duty injury just ten days later.  (Pl.'s Dec. ¶ 9)

Following his termination, Telesford filed for a review hearing of his denial of tenure and discontinuance of employment with the DOE Office of Appeals and Reviews.  (Def's Ex. C, Pl. Dep at 97:3-6).  On March 3, 2015, a hearing was held in front of the three-member Chancellor's Committee of the DOE Office of Appeals and Review ("Chancellor's Committee") on March 3, 2015.  The Chancellor's Committee heard testimony from Plaintiff and Principal Small, as well

as reviewed all the evidence submitted by the DOE in support of its decision to deny Telesford tenure and discontinue his employment.  (Def.'s Ex. BB)

Following the testimony and a review of the documentary evidence, in a 2-1 decision, the Chancellor's Committee found that the decision to deny Telesford's tenure should be **reversed.** (Def.'s Ex. BB).  The Chancellor's Committee decided as follows,

> the majority members of the Chancellor's Committee contend that the Rating Officer did not provide sufficient/documented assistance to this fledgling teacher nor did he genuinely attempt to evaluate the Probationer's performance due to the inadequate time allocated between observation.  The majority of the members of the Chancellor's Committee do not support the recommendation to deny certification of completion of probation.  (Def.'s Ex. BB at "Telesford Ds000439)

Thus, the DOE's own independent review committee found the same evidence now in the record insufficient to support Plaintiff's discontinuance.  Telesford's discontinuance was only maintained because of Superintend Stalling-Harte, who was aware of Plaintiff's disability and complaints of discrimination as set forth in more detail below, as she made a decision to go against the majority decision of the Chancellor's Committee and keep Telesford out of work.

While the Defendant's highlight what are admittedly serious allegations against Telesford during his first-year teaching, the end result was that he received one letter to the file for his improper use of a cellphone following the DOE's full investigations of both incidents.  Telesford still received a satisfactory annual professional performance review for the year and was brought back to his position for the following school year.  Even if the Defendant can rely on the letter to Telesford's personnel file to support his termination over one year later, they cannot revisit the initial allegations, which the DOE themselves had fully investigated on both instances, to now ex post facto build up support for its decision to terminate Plaintiff's employment

Furthermore, Superintendent Stallings-Harte's decision to go against the majority of the Chancellor's Committee shows a failure to accommodate Plaintiff's disability.  On June 11, 2015,

16

Superintendent Joyce Stallings-Harte issued a letter to Telesford, that consistent with the Chancellor's Committee decision, she was rescinding her original December 2, 2014 determination denying my denial of tenure and discontinuance, thereby effectively reinstating me to my employment.  (Def.'s Ex. DD)

In anticipation of his return to work, following the Chancellor's Committee's reversal of his discontinuance and Superintendent Stalling-Harte's notification of her acceptance of that decision, Telesford, on June 13, 2015, sent an email to Superintendent Stallings-Harte stating his intention to return to work provided that he receive reasonable accommodations for his disabilities due to the leg injury.  (Def.'s Ex. GG)

Specifically, Telesford requested access to an elevator; flexible time to sit or rest after standing for more than an hour; additional time to move between classrooms; and extra time and assistance to set up and break down science labs.   (Def.'s Ex. GG)

Five days after her letter reinstating Telesford's employment, and three days after the accommodation request, Superintendent Stallings-Harte reversed her own decision and that of the Chancellor's Committee and informed Telesford via letter, dated June 16, 2015, that he was to disregard her June 11, 2015 letter, and  she was reaffirming her initial decision to deny Telesford's tenure and terminate his employment.

Defendant's argument that Principal Small would have granted this type of accommodation is irrelevant, as he had not input into Superintendent Stallings-Harte's quick decision to terminate Plaintiff's employment just days after his accommodation request.

Based on the above, Plaintiff has met his burden of showing the pretextual nature of Defendant's stated basis for the adverse employment action.

17

## Point III

### PLAINTIFF'S RETALIATION CLAIM UNDER THE ADA

Claims for retaliation are analyzed under the same burden-shifting framework established for Title VII cases.  Weixel v. Board of Educ. of the City of New York, 287 F.3d 138, 148 (2d Cir. 2002).  In order to establish a *prima facie* case of retaliation, Plaintiff must show that: (1) he engaged in protected activity; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity.  *See* Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).  To establish protected activity in an employment case, Plaintiff does not have to prove that the conditions she complained about actually violated the statute.  All that is needed is a good faith belief that the actions of the employer violated the law, the reasonableness of the Plaintiff's belief is assessed in light of the totality of the circumstances.  Spadola v. New York City Transit Authority, 242 F. Supp. 2d 284 (S.D.N.Y. 2003).

### A.    Plaintiff's *Prima Facie* Case of Retaliation

Plaintiff has established that there exists a causal connection between his protected activity and Superintendent Stalling Harte's decision to overrule the DOE's Chancellor's Committee and maintain Plaintiff's termination.

Plaintiff first engaged in protected activity on January 13, 2015 when he  filed a complaint against Principal Small and Superintendent Stallings-Harte with the DOE's Office of Equal Opportunity ("OEO") alleging that he had been discriminated against based on his disability because he was denied tenure and discontinued while on medical leave.  (Def.'s Ex. FF)

Additionally, on February 20, 2015, Telesford filed a charge of discrimination with the EEOC.  In his charge Telesford selected that the box indicating, "I want to file a charge of

18

discrimination, and I authorize the EEOC to look into the discrimination I described above.  I understand **that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.**"  (Emphasis in original).  Thus, the DOE was on notice of the complaint.

Lastly, Plaintiff engaged in protected activity by requesting a reasonable accommodation in anticipation of his return to work.  (Ex. GG)  Following the Chancellor's Committee's reversal of his discontinuance and Superintendent Stalling-Harte's notification of her acceptance of that decision, Telesford, on June 13, 2015, sent an email to Superintendent Stallings-Harte stating his intention to return to work provided that he receive reasonable accommodations for his disabilities due to the leg injury.  (Def.'s Ex. GG).  Five days after her letter reinstating Telesford's employment, and three days after the accommodation request, Superintendent Stallings-Harte reversed her own decision and that of the Chancellor's Committee and informed Telesford via letter, dated June 16, 2015, that he was to disregard her June 11, 2015 letter, and  she was reaffirming her initial decision to deny Telesford's tenure and terminate his employment.  (Ex. EE)

Plaintiff is able to establish that a causal connection exists between the alleged adverse action and the protected activity.  It has been held that a close temporal relationship between plaintiff's participation in protected activity and the subsequent adverse actions by the employer is sufficient to establish causation.  See Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.").  In Clark County School District v. Breeden, 532 U.S. 268 (2001), the Supreme Court held that temporal proximity can provide the causation element for a prima facie case of retaliation when

the connection is "very close."  Additionally, the Second Circuit has established that a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by "showing that the protected activity was closely followed in time by the adverse employment action.  Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996).

Further the Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.  See Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 446-47 (2d Cir.1999) (abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir.1998) (discharge less than two months after plaintiff filed a sexual harassment complaint with management and ten days after filing complaint with state human rights office provided prima facie evidence of a causal connection between protected activity and retaliation); and Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45-46 (2d Cir.1980) (eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship).

Defendant's argument that Plaintiff's discrimination complaints to the OEO and EEOC on January 13, 2015 and February 20, 2015 are too far removed from Superintendent Stalling-Harte's June 16, 2015 fails as it ignores the circumstances surrounding the timing of the decision. Following Principal Small's decision to discontinue Plaintiff in July 2014, Plaintiff internally appealed that decision to the DOE's Chancellor's Committee, which did not hear Plaintiff's appeal until March 3, 2015.  Between the time the appeal had been filed and his hearing date, Plaintiff filed his complaints of discrimination.  Superintendent Stallings-Harte, who is the individual that is alleged to have retaliated against Plaintiff, could not have performed any retaliatory action all until she received the decision of the Chancellor's Committee in June 2015.

At the first instance she was capable of engaging in retaliation she did, by overruling the DOE's own independent review by the Chancellor's Committee.  While arguably this gap in time still falls within the acceptable standards to establish causation, the amount of time between the protected activity and the retaliatory action by Superintendent Stallings-Harte was caused solely by the DOE's own internal appeal procedure.

Further, the temporal proximity between Plaintiff's accommodation request and Superintendent Stalling-Harte's reversal of her own and the Chancellor's Committee's decision three days later clearly establishes a causal connection, which is further supported by the totality of the circumstances surrounding that decision as set forth below.

## B.    The Stated Basis for Superintendent Stalling-Harte Decision was merely a Pretext for Retaliation

Following Plaintiff's establishment of a *prima facie* case of retaliation under the ADA, the burden shifts to the DOE to provide a legitimate, non-retaliatory reason for the Superintendent Stalling-Harte's June 16, 2015 to maintain Telesford's termination, going against the majority decision of the DOE's own Chancellor's Committee.  (*See* Krasner U.S. Dist. LEXIS 136534 at *45).

First, the circumstances surrounding the June 16, 2015 decision evidence the pretextual nature of Superintendent Stalling-Harte's decision. Following receipt of the decision of the Chancellor's Committee, initially, on June 11, 2015, Superintendent Joyce Stallings-Harte issued a letter to Telesford, that consistent with the Chancellor's Committee decision, she was rescinding her original December 2, 2014 determination, thereby effectively reinstating him to his employment.  (Def.'s Ex. DD)

In anticipation of his return to work, following the Chancellor's Committee's reversal of his discontinuance and Superintendent Stalling-Harte's notification of her acceptance of that decision, Telesford, on June 13, 2015, Telesford sent an email to Superintendent Stallings-Harte stating his intention to return to work provided that he receive reasonable accommodations for his disabilities due to the leg injury. (Def.'s Ex. GG)

Five days after her letter reinstating Telesford's employment, and three days after the accommodation request, Superintendent Stallings-Harte reversed her own decision and that of the Chancellor's Committee and informed Telesford via letter, dated June 16, 2015, that he was to disregard her June 11, 2015 letter, and she was reaffirming her initial decision to deny Telesford's tenure and terminate his employment. Superintendent Stalling-Harte's explanation that the initial letter was an error, the first time this had ever occurred in her career, raises a question of fact to be determined by a jury. (Def.'s Ex.'s DD, EE)

It's reasonable for a juror to conclude that Telesford's accommodation request made Superintendent Stallings-Harte recall his pending discrimination complaints with the OEO and EEOC, prompting her to reverse her own decision. While Defendant argues that the two letters were simply an administrative error, there exists a question of fact as to that basis in light of totality of the circumstances, including that admittedly this error occurred the only time in her career just days after she was again put on notice of Plaintiff's protected activity.

Further, Defendant's stated basis for Superintendent Stalling-Harte's decision is pretextual when the entirety of the evidence is brought to light. Defendant's argue that Superintendent Stallings-Harte "reviewed Plaintiff's file….and considered his observations and letters file and determined his pedagogy did not warrant tenure." (Def.'s Memo in Support pg. 23; *See* Def. 56.1 ¶ 69).

22

However, Superintendent Stallings-Harte came to this conclusion by relying on less evidence than the DOE's own Chancellor's Committee, as she did not hear or review the testimony of Principal Small or Plaintiff at the hearing, as she was not present.  Further, there was no knowledge of Plaintiff's performance outside of the personnel file, as she never personably observed Plaintiff's teaching (Ex. AA at pgs. 23-24; 28) or actually spoke to Principal Small regarding his decision.  Admittedly, in making her decision, Superintendent Stallings-Harte received no information from the Chancellor's Committee other than its written decision which found that Plaintiff's discontinuance should be reversed.  (Ex. AA at pgs. 36-38).  Remarkably, Superintendent Stallings-Harte does not recall ever having gone against the majority decision of the DOE Chancellor's Committee in her time as Superintendent., except for in this instance.  (Ex. AA at 44-46)

The non-retaliatory basis for termination now argued by the DOE to support Superintendent Stalling-Harte's decision is based on more limited evidence than was available to the DOE's own Chancellor's Committee which found that, based on the totality of the evidence presented, Plaintiff should not have been discontinued.  (Ex. BB)

Superintendent Stallings-Harte, who was aware of Plaintiff's complaints of discrimination, decided for the first time in her career as superintendent to overrule the decision of the DOE's Chancellor's Committee by relying on more limited information than was available to the Chancellor's Committee.  This action, coupled with her initial letter accepting the decision to reinstate Telesford, and subsequent reversal of herself just days after receiving Telesford's accommodation request, raise sufficient questions of material fact to be determined by jury in this matter.

23

**C.      Defendant Failed to Accommodate Plaintiff's Disability**

Plaintiff submitted his accommodation request to Principal Small and Superintendent Stallings-Harte on June 13, 2015.  Defendant has admitted that these requests were reasonable, as Principal Small, Plaintiff's direct supervisor, had implemented similar accommodations previously.

However, just days after receipt of the accommodation request, Superintendent Stallings-Harte unilaterally terminated Plaintiff's employment.   Defendant's argument that it was unnecessary to engage in the interactive process with Plaintiff because it had previously decided to terminate Plaintiff's employment is contradictory to the documentary evidence that on June 11, 2015, two days prior to the accommodation request, Superintendent Stallings-Harte had stated that exact opposite to Plaintiff when saying that he was being reinstated to his teaching position. Only after receipt of the accommodation request does the documentary evidence indicated the Superintendent's decision to terminate Plaintiff's employment.  (Def.'s Ex. DD, EE, GG)

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court deny Defendant's

motion for summary judgment in its entirety and such other and further relief as the Court deems

just and proper.

Dated: New York, New York
      October 19, 2020               STEWART LEE KARLIN
                                 LAW GROUP, P.C.


                               /s/ Daniel E. Dugan, Esq.
                               DANIEL E. DUGAN, ESQ.
                               Attorney for Plaintiff
                               111 John St., 22nd Floor
                               New York, NY 10038
                               (212) 792-9670
                               dan@stewartkarlin.com