16 Civ. 819 (CBA) (SMG)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EDGAR TELESFORD,

                                                          Plaintiff,

                              -against-

NEW   YORK   CITY   DEPARTMENT   OF
EDUCATION,

                                                          Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

***JAMES E. JOHNSON***
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Mark R. Ferguson*
*Tel:  (212) 356-2507*
*Matter #:  2016-008526*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

       A.    Background ............................................................................................2

       B.    2012-2013 School Year ........................................................................3

       C.    Plaintiff's Probation is Extended ........................................................4

       D.    2013-2014 School Year ........................................................................4

       E.    Plaintiff is Denied Tenure ....................................................................5

       F.    Plaintiff's Internal Appeal of his Denial of
            Tenure,  Accommodation  Request,  and
            EEO Complaint ....................................................................................6

ARGUMENT

       POINT II

       NO TRIABLE ISSUE OF MATERIAL FACT
       EXISTS   CONCERNING   PLAINTIFF'S
       CLAIMS   OF   DISABILITY
       DISCRIMINATION UNDER THE ADA ...........................................7

       A.    Applicable Analytical Framework ......................................................7

       B.    Plaintiff Fails to Establish a *Prima Facie*
            Case of Disability Discrimination........................................................8

          1.  Plaintiff's Injury Does Not Qualify as
              a Disability under the ADA........................................................ 8

          2.  Plaintiff  Has  Failed  to  Raise  an
              Inference of Discrimination .......................................................10

       C.    Defendant  Can  Articulate  Legitimate,
            Non-Discriminatory  Reasons  For  Its
            Actions ...............................................................................................13

**Page**

      D.    Plaintiff   Cannot   Demonstrate   that Defendants' Proffered Reasons Are Pretextual ...................................................................15

POINT III

      NO TRIABLE ISSUES OF MATERIAL FACT EXIST CONCERNING PLAINTIFF'S CLAIMS OF RETALIATION UNDER THE ADA......................................................................................17

      A.    Plaintiff Cannot Make Out A *Prima Facie* Case of Retaliation......................................................17

      B.    Defendant Has Proffered Legitimate, Non-Retaliatory Reasons .................................................22

POINT IV

      NO TRIABLE ISSUES OF MATERIAL FACT EXIST CONCERNING PLAINTIFF'S CLAIMS OF FAILURE TO ACCOMMODATE.....................................................................24

CONCLUSION............................................................................ 26

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Pages**

*Alexidor v. Donahoe*,
   No. 11 Civ. 9113, 2017 U.S. Dist. LEXIS 30410
   (S.D.N.Y. March 2, 2017)..........................................................................................23

*Ayazi v. New York City Dep't of Educ.*,
   No. 8 Civ. 2456, 2012 U.S. Dist. LEXIS 140767 (E.D.N.Y. 2012)......................................18

*Baron v. Advanced Asset & Prop. Mgmt. Solutions, LLC*,
   15 F. Supp. 3d 274 (E.D.N.Y. 2014) ..................................................................................7, 8

*Bickerstaff v. Vassar College*,
   196 F.3d 435 (2d Cir. 1999),
   *cert. denied*, 530 U.S. 1242 (2000)..................................................................................13, 16

*Brown v. City of New York*,
   622 Fed. Appx. 19 (2d Cir. 2015)......................................................................................18

*Caskey v. Cty. Of Ontario*,
   560 Fed. Appx. 57 (2d. Cir. 2014)....................................................................................24

*Dressler v. New York City Dep't of Educ.*,
   No. 10 Civ. 3769, 2012 U.S. Dist. LEXIS 44249................................................................23

*Elhanafy v. Shinseki*,
   No. 10 Civ. 3192, 2012 U.S. Dist. LEXIS 81302 (E.D.N.Y. June 12, 2012)...................17-18

*Fagan v. United Intern. Ins. Co.*,
   128 F. Supp. 2d 182 (S.D.N.Y. 2001).................................................................................9

*Fisher v. Vassar College*,
   114 F.3d 1332 (2d Cir. 1997),
   *cert. denied*, 522 U.S. 1075 (1998)...................................................................................13

*Fouad v. Jeport Hotel Corp.*,
   No. 01 Civ. 8502, 2005 U.S. Dist. LEXIS 16149
   (S.D.N.Y. Aug. 5, 2005)......................................................................................................9

*Gibbs v. City of New York*,
   2005 U.S. Dist. LEXIS 3169 (E.D.N.Y. 2005)....................................................................10

*Heyman v. Queens Village Comm. for Mental Health for Jam. Community*
   *Adolescent Program, Inc.*,
   198 F.3d 68 (2d Cir. 1999)..................................................................................................7

**Cases**                                                                      **Pages**

*Jordan v. Forfeiture Support Assocs.*,
   928 F. Supp. 2d 588 (E.D.N.Y. 2013) ................................................................. 9-10

*Kessler v. Westchester Dept. of Social Services*,
   461 F.3d 199 (2d. Cir. 2006)..............................................................................22

*Krasner v. City of New York*,
   No. 11 Civ. 2048, 2013 U.S. Dist. LEXIS 136534
   (S.D.N.Y. Sept. 23, 2013) ...........................................................................17, 22

*Lore v. City of Syracuse*,
   670 F.3d 127 (2d Cir. 2012)..............................................................................17

*McBride v. BIC Consumer Prods. Mfg. Co.*,
   583 F.3d 92 (2d Cir. 2009)................................................................................24

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)...........................................................................................7

*McDonnell v. Schindler Elevator Corp.*,
   2014 U.S. Dist. LEXIS 96824 (S.D.N.Y. July 16, 2014)
   (*aff'd* 618 Fed. Appx. 697 (2d Cir. 2015))........................................................11

*McMillan v. City of New York*,
   711 F.3d 120 (2d. Cir. 2013)............................................................................24

*Murray v. Visiting Nurse Servs.*,
   528 F. Supp. 2d 257 (S.D.N.Y. 2007).............................................................8, 18

*Nakis v. Potter*,
   422 F. Supp. 2d 398 (S.D.N.Y. 2006)..............................................................19

*Natofsky v. City of New York*,
   921 F.3d 337 (2d Cir. 2019)............................................................................8, 17

*Nielsen v. New York City Dep't of Educ.*,
   No. 04 Civ. 2182, 2009 U.S. Dist. Lexis 8866 (E.D.N.Y. Feb. 4, 2009) ...............21

*Norton v. Sam's Club*,
   145 F.3d 114 (2d Cir. 1998),
   *cert. denied*, 525 U.S. 1001 (1998)..................................................................8

*Ouaratino v. Tiffany & Co.*,
   71 F.3d 58 (2d Cir. 1995)...............................................................................8, 16

**<u>Cases</u>**                                                              **<u>Pages</u>**

*Pinero v. Long Island State Veterans Home*,
  375 F. Supp. 2d 162 (E.D.N.Y. 2005) ...................................................................19

*Plourde v. Snow*,
  No. 02 Civ. 5532, 2006 U.S. Dist. LEXIS 96040 (E.D.N.Y. June 14, 2006),
  *aff'd sub nom. Plourde v. Paulson*, 236 F. App'x 656 (2d Cir. 2007).....................23

*Powell v. Merrick Acad. Charter Sch.*,
  2018 U.S. Dist. LEXIS 32810 (E.D.N.Y. Feb. 27, 2018)................................11, 12

*Powers v. Polygram Holding*,
  40 F. Supp. 2d 195 (S.D.N.Y. Apr. 2, 1999) .........................................................24

*Quinn v. Green Tree Credit Corp.*,
  159 F.3d 759 (2d Cir. 1998)....................................................................................17

*Ragin v. E. Ramapo Cent. Sch. Dist.*,
  No. 05 Civ. 6496, 2010 U.S. Dist. LEXIS 32576
  (S.D.N.Y. Mar. 31, 2010) .......................................................................................22

*Ragusa v. Malverne Union Free Sch. Dist.*,
  381 F. App'x 85 (2d Cir. 2010) ................................................................................9

*Reyes v. Krasdale Foods, Inc.*,
  945 F. Supp. 2d 486 (S.D.N.Y. 2013)....................................................................20

*Rios v. Core Facility Servs., LLC*,
  No. 16 Civ. 1748, 2018 U.S. Dist. LEXIS 56158
  (E.D.N.Y. Mar 28, 2018) ..........................................................................................9

*Rios v. Dep't of Educ.*,
  351 Fed. Appx. 503 (2d. Cir. 2009).........................................................................7

*Robles v. Medisys Health Network, Inc.*,
  No. 19 Civ. 6651, 2020 U.S. Dist. LEXIS 109115
  (E.D.N.Y. June 19, 2020) .......................................................................................24

*Rodriguez v. DeBuono*,
  44 F. Supp. 2d 601 (S.D.N.Y. 1999),
  *rev'd on other grounds*, 197 F.3d 611 (2d Cir. 1999)..............................................9

*Romano v. Stora Enso Corp.*,
  No. 07 Civ. 4293, 2010 U.S. Dist. LEXIS 24937
  (E.D.N.Y. Feb. 12, 2010).................................................................................20, 22

**Cases**                                                                                            **Pages**

*Rothenberger v. New York City Police Dep't*,
   No. 06 Civ. 868, 2008 U.S. Dist. LEXIS
   46614 (E.D.N.Y. June 16, 2008) ........................................................................20

*Saunders v. Queensborough Cmty. Coll.*,
   No. 13 Civ. 5617, 2015 U.S. Dist. LEXIS 128608
   (E.D.N.Y. Sept. 24, 2015).....................................................................................24

*Shabat v. Blue Cross Blue Shield*,
   925 F. Supp. 977 (W.D.N.Y. 1996),
   *aff'd sub nom Shabat v. Billotti*, 108 F.3d 1370
   (2d Cir. 1997).......................................................................................................22

*Slattery v. Swiss Reinsurance Am. Corp.*,
   248 F.3d 87 (2d Cir. 2001)....................................................................11, 19, 20

*Sotomayor v. City of New York*,
   862 F. Supp. 2d 226 (E.D.N.Y May 21, 2012) ...................................................15

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993)................................................................................................8

*Vives v. New York City Dep't of Corr.*,
   No. 15 Civ. 6127, 2019 U.S. Dist. LEXIS 51913 ................................................9

*Zick v. Waterfront Comm'n of N.Y. Harbor*,
   No. 11 Civ. 5093, 2012 U.S. Dist. LEXIS
   144920 (S.D.N.Y. Oct. 4, 2012) ...........................................................................9

**Statutes**

Local Civil Rule 56.1...................................................................................................2

**Other Authorities**

Chancellor's Regulation A-640 ...................................................................................3

## PRELIMINARY STATEMENT

Plaintiff, a former probationary science teacher assigned to the East New York Middle School of Excellence ("ENYMSE") at the beginning of the 2012-2013 school year, commenced this action asserting claims of age, race, and disability discrimination and retaliation. Following a motion for judgment on the pleadings, this Court dismissed all claims with the exception of plaintiff's disability discrimination and retaliation claims against the New York City Department of Education pursuant to the Americans with Disabilities Act of 1990 ("ADA"). Specifically, Plaintiff claims he was denied tenure because of his disability of a broken leg, denied an accommodation request, and was denied tenure in retaliation for his accommodation request. Defendant now moves for summary judgment. First, Plaintiff cannot state a *prima facie* case of disability discrimination under the ADA as Plaintiff has not shown that he was disabled within the meaning of that statute, and there is no evidence that any of the alleged adverse actions were taken "because of" Plaintiff's disability. Indeed, the sole adverse action in this case, plaintiff's denial of tenure and resulting termination, was already well in motion before Plaintiff's injury and resulting alleged disability. Prior to his injury and alleged disability, Plaintiff's probation had been extended by one year, he had accumulated 3 letters to file, was being investigated for improperly filming female students, and had received 6 negative classroom observation reports.

Second, Plaintiff's pedagogical problems are well documented and serve as Defendant's legitimate reasons for denying him tenure.  Plaintiff cannot show the requisite pretext; that is, that the reasons proffered by the DOE for denying tenure are false, and that the real reason was discrimination.

Plaintiff's retaliation claim under the ADA is similarly deficient because there is no evidence of a causal connection between his protected activity and the alleged adverse

actions. In particular, the record shows that some of the complained-of action occurred *before* Plaintiff engaged in protected activity, and, as a matter of logic and established case law, Plaintiff cannot credibly allege retaliation under such circumstances. As noted above, the sole adverse action at issue in this case—Plaintiff's denial of tenure and resulting termination—are supported by ample contemporaneous documentary evidence of Plaintiff's poor teaching. All of this evidence pre-dates Plaintiff's injury and alleged disability and, therefore, Plaintiff cannot establish pretext with respect to his retaliation claim either.

Finally, to the extent that Plaintiff asserts a failure to accommodate claim, that claim is fatally flawed for the simple reason that the decision to terminate Plaintiff had already been made at the time that he requested an accommodation. Under these circumstances, he did not need to be accommodated, because he would no longer be employed by DOE. Thus, that claim, too, must be dismissed.

## STATEMENT OF FACTS[1]

### A.    Background

Plaintiff, Edgar Telesford, is a former probationary teacher for the New York City Department of Education ("DOE"). *See* Def. 56.1, ¶¶11, 6 .70. Plaintiff worked as a substitute science teacher for the DOE from approximately 1987 to 1990. *See* Def. 56.1, ¶6. Plaintiff began working for the DOE as a member of the NYC Teaching Fellows program in the summer of 2012. *See* Def. 56.1, ¶8. The Teaching Fellows program recruits and trains recent college graduates and those considering a career change to teach subjects such as science and math. *See* Def. 56.1, ¶9. Plaintiff was provided with training in the summer of 2012 to learn essential

---

[1]For a full statement of the material facts as to which there is no genuine issue to be tried, the Court is respectfully referred to Defendant's September 4, 2020 Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1") and to the exhibits annexed to the September 4, 2020 Declaration of Mark R. Ferguson ("Ferguson Dec.").

teaching techniques and receive one-on-one coaching from experienced teachers. *See* Def. 56.1, ¶9. Plaintiff was hired by Principal Malik Small to work at the East New York Middle School of Excellence ("ENYMSE") as a science teacher on or about September 2012. *See* Def. 56.1, ¶10. Plaintiff had a probationary period of one year. *See* Def. 56.1, ¶11.

**B.    2012-2013 School Year**

In the fall of the 2012-2013 school year, Plaintiff was accused of suggestive looks by a female student, and was reassigned from ENYMSE from October 12, 2012 until the completion of the investigation in January 2013. *See* Def. 56.1, ¶¶13-14, Exs. F, G, and H. After resuming his teaching duties at ENYMSE, Plaintiff was again accused of misconduct towards five female students; this time for allegedly filming them during gym class on his cell phone. *See* Def. 56.1, ¶__. The female students alleged that after they confronted Plaintiff about filming them, he hid his phone and refused to answer their questions. *See* Def. 56.1, ¶¶15-16, Ex. J. Once Principal Small was informed of the complaints, he instructed the dean to take witness statements from the students. *See* Def. 56.1, ¶16, Ex. J. On May 28, 2013, Principal Small then reported the matter to the Special Commissioner of Investigation for the New York City School District ("SCI"), which investigates crime, corruption, and misconduct within the DOE. *See* Def. 56.1, ¶17. On May 29, 2013, SCI in turn transferred the investigation to the DOE's Office of Special Investigations ("OSI"), which investigates allegations of improper and unlawful behavior, including corporal punishment and verbal abuse against students. *See* Def. 56.1, ¶19. On June 21, 2013, OSI referred the matter back to Principal Small to conduct an internal investigation. *See* Def. 56.1, ¶20. Following Principal Small's investigation, he issued a letter to Plaintiff's file finding that Plaintiff had violated Chancellor's Regulation A-640, which concerns filming on school facilities, and specifically noted that, "[c]ontinued violation of NYC Dept. of

3

Education Chancellor's Regulations can result in an adverse rating and/or lead to termination of employment." *See* Def. 56.1, ¶¶21-24, Exs. I and K.

**C.       Plaintiff's Probation is Extended**

At the end of the 2012-2013 school year, Principal Small did not recommend that Plaintiff be granted tenure, but instead recommended that Plaintiff's probationary period be extended by one year, and the school's superintendent, Joyce Stallings-Harte, agreed. *See* Def. 56.1, ¶25-26. Plaintiff agreed to have his probationary period extended another year. *See* Def. 56.1, ¶26. The agreement to extend Plaintiff's probationary period explicitly stated that "the decision to either grant completion of probation, deny completion of probation, or grant an additional extension of probation to Edgar D. Telesford at a date no later than 11/22/14, shall be based upon an evaluation of Edgar D. Telesford's probationary service during the additional probationary period herein granted and also upon an evaluation of Edgar D. Telesford's probationary service rendered prior to 11/22/13." *See* Def. 56.1, ¶27, Ex. E.

**D.       2013-2014 School Year**

During the course of the 2013-2014 school year, Plaintiff received three letters to file concerning his professional and pedagogical performance. *See* Def. 56.1, ¶¶28-33. The October 4, 2013 letter noted that Plaintiff had failed to put up his bulletin board by the required deadline. *See* Def. 56.1, ¶28, Ex. M. Plaintiff received a second letter on December 13, 2013 after a meeting between himself, Principal Small, and Plaintiff's union representative after Plaintiff had marked a student "present" when the student was actually absent. *See* Def. 56.1, ¶29, Ex. N. The letter specifically stated that "This incident may lead to further disciplinary action, including an adverse rating." *See* Def. 56.1, ¶30, Ex. N. Plaintiff received a third letter to file on May 13, 2014, when Plaintiff refused to cover another teacher's class after being directed to do so by the Principal's office. *See* Def. 56.1, ¶¶31-32, Ex. O. The May 13, 2014 letter stated

4

that, "Please be advised that this incident may lead to further disciplinary action including an adverse rating and your termination." *See* Def. 56.1, ¶33, Ex. O.

In addition to the above-referenced letters to file, Plaintiff received six observations over the course of the 2013-2014 school year, which were conducted by both Principal Small and Assistant Principal Lee. *See* Def. 56.1, ¶¶35-54. The observations rated Plaintiff on the "HEDI" system, which rates teachers as "ineffective," "developing," "effective," and "highly effective" across four "domains" or areas of pedagogical practice. *See* Def. 56.1, ¶34. These four domains in turn are broken down into 22 categories. *See* Def. 56.1, ¶34. The four domains are: "Planning and Preparation," "Classroom Environment," "Instruction," and "Professional Responsibilities." *See* Def. 56.1, ¶34. Plaintiff received nearly four times as many "ineffective" and "developing" ratings as "effective" ratings, and no "highly effective" ratings. *See* Def. 56.1, ¶¶35-54, Exs. P, Q, R, S, T, and U. Critically, Plaintiff regularly received only "ineffective" or "developing" ratings across the entirety of the "Instruction" and "Professional Responsibilities" domains. *See* Def. 56.1, ¶¶35-54, Exs. P, Q, R, S, T, and U. Plaintiff's final rating for the year was "developing." *See* Def. 56.1, ¶55, Ex. HH.

On June 6, 2014, Plaintiff was injured on a field trip to a park wherein his left leg was broken. *See* Def. 56.1, ¶56. Plaintiff was approved for a Line of Duty Injury ("LODI") for six months. *See* Def. 56.1, ¶57, Ex. V.

**E.     Plaintiff is Denied Tenure**

In July 2014, Principal Small met with Assistant Principal Lee to discuss whether to approve tenure for the probationary teachers at ENYMSE. *See* Def. 56.1, ¶58. Principal Small and Assistant Principal Lee reviewed probationers' files and their observations. *See* Def. 56.1, ¶58. Based upon Plaintiff's professional failures and lack of pedagogical progress, Principal Small recommended that Plaintiff's tenure be denied. *See* Def. 56.1, ¶¶59-60. Principal Small

sent Plaintiff an email on July 8, 2014 informing Plaintiff that he had recommended denial of his tenure. *See* Def. 56.1, ¶59, Ex. W. Superintendent Stallings-Harte received the recommendation of denial of tenure and reviewed Plaintiff's file. *See* Def. 56.1, ¶62. Based upon her review of Plaintiff's file, Superintendent Stallings-Harte sent Plaintiff a letter dated September 22, 2014, informing Plaintiff that he was being denied tenure and that his "service under this [probationary] appointment shall terminate as of the close of business 60 days from the date of this letter or the probation completion date, whichever occurs first." *See* Def. 56.1, ¶¶62-63, Ex. X. On December 2, 2014, Superintendent Stallings-Harte sent Plaintiff a letter informing him that that she was denying his tenure effective that day and that his service under his probationary appointment would terminate as of the end of business on December 2, 2014. *See* Def. 56.1, ¶65, Ex. Z.

**F.  Plaintiff's Internal Appeal of his Denial of Tenure, Accommodation Request, and EEO Complaint**

Plaintiff appealed his denial of tenure through his union. *See* Def. 56.1, ¶66. Plaintiff also filed a complaint with the DOE's Equal Employment Opportunity Office on January 13, 2015, alleging that he had been discriminated against when his tenure was denied while on medical leave.  *See* Def. 56.1, ¶72. Plaintiff's appeal of his denial of tenure was heard in front of the Chancellor's Committee of the DOE Office of Appeals and Review on March 3, 2015. *See* Def. 56.1, ¶67. The chairman of the committee recommended that the decision to deny Plaintiff's tenure be upheld. *See* Def. 56.1, ¶68, Ex. BB. Superintendent Stallings-Harte reviewed the committee's report and once again reviewed Plaintiff's file and observations. *See* Def. 56.1, ¶69. Based upon her review of Plaintiff's pedagogical failings, Superintendent Stallings-Harte directed her secretary to send Plaintiff a letter reaffirming her prior decision denying Plaintiff tenure. *See* Def. 56.1, ¶69. Due to an administrative error, the wrong letter was sent on June 11,

2015 to Plaintiff, mistakenly reversing the Superintendent's denial of tenure. *See* Def. 56.1, ¶70. After discovering the mistake, Superintendent Stallings-Harte directed that the correct letter be sent to Plaintiff on June 16, 2015. *See* Def. 56.1, ¶71.

A few days prior to the corrected letter being sent out, on June 13, 2015, Plaintiff had sent a request for accommodations in an email to Superintendent Stallings-Harte, asking that when he returned to teaching at ENYMSE he be given access to the elevator and assistance in setting up the labs for his classes. *See* Def. 56.1, ¶¶73-74. Principal Small had previously granted similar accommodations to other teachers, including use of the elevator, assistance with moving from class to class, and help setting up the class for students. *See* Def. 56.1, ¶76.

## ARGUMENT

## POINT II

### NO TRIABLE ISSUE OF MATERIAL FACT EXISTS CONCERNING PLAINTIFF'S CLAIMS OF DISABILITY DISCRIMINATION UNDER THE ADA

**A.** **Applicable Analytical Framework**

Claims of disability discrimination brought under the ADA are subject to the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). *See Rios v. Dep't of Educ.*, 351 Fed. Appx. 503, 504-05 (2d. Cir. 2009) (*citing Heyman v. Queens Village Comm. for Mental Health for Jam. Community Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999). To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that he is a qualified individual with a disability and was subjected to an adverse action because of his disability. *See Baron v. Advanced Asset & Prop. Mgmt. Solutions, LLC*, 15 F. Supp. 3d 274, 280 (E.D.N.Y. 2014). If a plaintiff meets that burden, the burden then shifts to the employer to proffer a legitimate, nondiscriminatory reason for its action.

*See Baron,* 115 F. Supp. 3d at 280.  Once the employer has met its burden, the employee must then show that the reason advanced is pretextual, i.e., that it masks the employer's true discriminatory reason for its actions. *See Baron,* 115 F. Supp. 3d at 280.  At all times, moreover, the plaintiff bears "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Baron,* 115 F. Supp. 3d at 280. The Second Circuit recently clarified the causation standard applicable in ADA employment discrimination cases, holding that the ADA "requires a but-for causation standard." *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).

In sum, Plaintiff bears the ultimate burden of proving that Defendant's reasons for the claimed adverse employment action—here the denial of the completion of his probation and resulting termination—are "false *and* that discrimination was the real reason." *Ouaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)) (emphasis in original); *see also Murray v. Visiting Nurse Servs.*, 528 F. Supp. 2d 257, 276 (S.D.N.Y. 2007). When the plaintiff: (1) fails to prove a *prima facie* case; or (2) fails to present evidence showing that a well-presented legitimate reason for the adverse action is pretextual, a court must enter summary judgment for a defendant in an employment discrimination action. *See Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998), *cert. denied*, 525 U.S. 1001 (1998).

**B.    Plaintiff Fails to Establish a *Prima Facie* Case of Disability Discrimination**

**1.    Plaintiff's Injury Does Not Qualify as a Disability under the ADA**

Plaintiff's claims of disability discrimination fail for several reasons. First, plaintiff's "broken leg" does not qualify as a disability under the ADA. Not every injury is considered a disability under the ADA. "Courts within this circuit, and the vast majority of courts elsewhere, have held that temporary disabilities do not trigger the protections of the ADA

because individuals with temporary injuries are not disabled persons within the meaning of the act." *Fouad v. Jeport Hotel Corp.*, No. 01 Civ. 8502, 2005 U.S. Dist. LEXIS 16149, at *5 (S.D.N.Y. Aug. 5, 2005) (citations omitted). A broken leg falls among the types of temporary injuries unprotected as a "disability" under the ADA. *Zick v. Waterfront Comm'n of N.Y. Harbor*, No. 11 Civ. 5093, 2012 U.S. Dist. LEXIS 144920, at *9 (S.D.N.Y. Oct. 4, 2012); *Fagan v. United Intern. Ins. Co.*, 128 F. Supp. 2d 182, 185 (S.D.N.Y. 2001) (citing *Rodriguez v. DeBuono*, 44 F. Supp. 2d 601, 617 (S.D.N.Y. 1999) ("Intermittent, episodic impairments are not disabilities, the standard example being a broken leg."), *rev'd on other grounds*, 197 F.3d 611 (2d Cir. 1999)). Even a more serious injury, such as a broken hip, "may not be considered a 'disability' for purposes of the ADA [unless] the hip heals improperly, resulting in long-term difficulty in walking ....'" *Rodriguez*, 44 F. Supp. 2d at 617; *see also* see also *Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 88 (2d Cir. 2010) (noting that where an impairment can be "easily accommodated" by a simple alteration in work environment, such an impairment cannot qualify as a disability under the ADA). Thus, because plaintiff cannot show that he was disabled within the meaning of the ADA, his disability discrimination claim must be dismissed.

Nor can Plaintiff avail himself of the provision in the ADA that he need not be actually disabled but merely "perceived…as having a disability under the ADA." *Rios v. Core Facility Servs., LLC*, No. 16 Civ. 1748, 2018 U.S. Dist. LEXIS 56158, at *52 (E.D.N.Y. Mar 28, 2018). This is because "the 'regarded as' definition of disability does not apply to impairments that are both 'transitory and minor,' which the statute defines as impairments with an actual or expected duration of [six] months or less." *Vives v. New York City Dep't of Corr.*, No. 15 Civ. 6127, 2019 U.S. Dist. LEXIS 51913, at *29 (quoting *Jordan v. Forfeiture Support Assocs.*, 928

F. Supp. 2d 588, 606 (E.D.N.Y. 2013). Plaintiff's broken leg qualifies as both transitory and minor. First, Plaintiff's Line of Duty Injury ("LODI") was approved to last only from June 6, 2014 until January 8, 2015, a total of only six months. *See* Def 56.1 ¶57, Ex. V.  Second, Plaintiff's injury by his own request for accommodation required only access to the elevator and someone to help him set up labs. *See* Def 56.1 ¶74, Ex. GG. As Plaintiff's injury was both transitory and minor, it is irrelevant as to whether he was perceived as disabled.

Even if Plaintiff's injury was not transitory and minor, Plaintiff cannot show that he was perceived as disabled because there is nothing in the Amended Complaint or the record to imply that Principal Small considered Plaintiff to be disabled. Principal Small was only aware that Plaintiff had broken his leg and had eventually received a LODI for six months. Furthermore, Principal Small had no reason to perceive Plaintiff as disabled as he had easily provided accommodations for teachers and staff members that needed to use the elevator or have someone help them in the classroom because of an injury. *See* Def 56.1 ¶76.

### 2.     Plaintiff Has Failed to Raise an Inference of Discrimination

Plaintiff's disability discrimination claim also fails for the separate reason that there is no evidence that any of the complained-of actions occurred under circumstances giving rise to an inference of disability discrimination. *See Gibbs v. City of New York*, 2005 U.S. Dist. LEXIS 3169 at *26-27 (E.D.N.Y. 2005).  A plaintiff may raise an inference of discrimination by proffering evidence of remarks or actions taken by his employer motivated by a discriminatory animus, or by showing that similarly situated employees without disabilities received preferential treatment. *Id*. at 27.  Here, Plaintiff has failed to produce any evidence whatsoever that he was subjected to any such conditions, and offers instead only temporal proximity to support his discrimination claims.

In an attempt to demonstrate discriminatory animus, Plaintiff alleges that his denial of tenure occurred in December 2014 only after his injury, and that he was given no indication prior to his injury that he was in danger of being discontinued. *See* Amended Complaint, Ex. A at ¶¶ 24-25. First, Plaintiff's contention that he was unaware that he was in danger of being discontinued is demonstrably false. By December 2014, Plaintiff had received 4 letters to file, three of which advised Plaintiff that the ensuing incident could lead to further disciplinary action including an adverse rating and/or his termination. Moreover, he had received 6 poor classroom observations all of which detailed his teaching problems. Thus, Plaintiff's claim that he was somehow unaware that he was in danger of being discontinued is simply not credible.

Second, "temporal proximity alone is not enough to give rise to an inference of discrimination when gradual adverse job actions began well before the plaintiff became disabled." *Powell v. Merrick Acad. Charter Sch.*, 2018 U.S. Dist. LEXIS 32810 at *21 (E.D.N.Y. Feb. 27, 2018) (*citing McDonnell v. Schindler Elevator Corp.*, 2014 U.S. Dist. LEXIS 96824 at *18 (S.D.N.Y. July 16, 2014) (*aff'd* 618 Fed. Appx. 697 (2d Cir. 2015)); *see also Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). As noted above, before Plaintiff injured his leg, the denial of his tenure was well under way. Plaintiff had had his probationary period extended the school year prior. *See* Def 56.1 ¶¶26-27, Ex. E. Plaintiff had been accused of inappropriately filming five female students with his cell phone and was aware that he was being investigated. *See* Def. 56.1 ¶¶15-22, Ex. J. Plaintiff had received another three letters to file for professional misconduct, which notified him he could receive an adverse rating and/or termination. *See* Def 56.1 ¶¶ 28-33, Exs. L, M, and N.

Plaintiff had also received **six** observations during the course of the 2013-2014 school year, across which he received vastly more ratings of "ineffective" or "developing" than "effective" ratings, and no ratings of "highly effective." Notably, Plaintiff routinely received only "ineffective" or "developing" ratings for the domains of "Instruction" and "Professional Development." Plaintiff was continually criticized for his questioning style and consistently reminded to "[p]rovide every opportunity for students to engage in peer or group discussions." See Def. 56.1, ¶¶35-54, Exs. P, Q, R, S, T, and U. Plaintiff was plainly on notice that his superiors were unsatisfied with his pedagogical performance long before he broke his leg.

In *Powell*, the Court found that there was no inference of discriminatory intent behind the defendants' actions because the plaintiff was already facing disciplinary actions and her position was demonstrably at risk because her superiors had let her know they were unsatisfied with her performance and were questioning her competence before she disclosed her disability. *See Powell*, 2018 U.S. Dist. LEXIS 32810 at *21. As in *Powell*, Plaintiff here had already received numerous disciplinary letters and negative observations that put him on notice that his position was at risk well before his injury and subsequent disability. Beyond the fact that Plaintiff's injury occurred very close to the end of the school year, which happened to be when Principal Malik Small was required to make his recommendations to the superintendent regarding probation, there is nothing on this record from which to infer any discriminatory intent.

There is, therefore, nothing to connect Plaintiff's disability with the actions Defendant took in response to Plaintiff's well-documented performance deficiencies that ultimately led to his discontinuance. Thus, Plaintiff's disability discrimination claim under the ADA must fail for a lack of a *prima facie* case.

**C.      Defendant Can Articulate Legitimate, Non-Discriminatory Reasons For Its Actions**

Even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of disability discrimination, which he decidedly cannot, Plaintiff's claim fails because the record shows that Defendant's actions were motivated by legitimate, non-discriminatory reasons.  *See Fisher v. Vassar College*, 114 F.3d 1332, 1335-36 (2d Cir. 1997), *cert. denied*, 522 U.S. 1075 (1998).  Defendant's burden in this regard is minimal as Defendant must merely provide some explanation for the actions Plaintiff alleges to be discriminatory. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 446 (2d Cir. 1999), *cert. denied*, 530 U.S. 1242 (2000).

The record clearly demonstrates that Plaintiff's performance did not merit a grant of tenure at the end of the 2012-2013 school year, as his probation was extended. *See* Def 56.1 ¶26-27, Ex. E. Furthermore, Plaintiff received numerous letters to file during the following school year (2013-2014) regarding his lack of professionalism and development. *See* Def 56.1 ¶¶ 28-33, Exs. M, N, and O.

Finally, Plaintiff's observations in the 2013-2014 school year clearly demonstrated Plaintiff's failures as an educator.  For example, in his February 4, 2014 observation, Assistant Principal Lee prepared an evaluation of Plaintiff that rated "ineffective" or "developing" for the entirety of both the "Planning and Preparation" and "Instruction" domains. In this observation, Assistant Principal Lee noted "the classroom culture is characterized by a lack of teacher or student commitment to learning, and/or there is no investment of student energy to the task at hand." *See* Def. 56.1 ¶¶35-38, Ex. P. Similarly, in Principal Small's April 10, 2014 observation, he rated Plaintiff as "developing" in thirteen categories, including the entirety of the "Instruction" domain. Principal Small specifically noted that Plaintiff's "[q]uestions and assessments are rarely used to diagnose evidence of learning," and that his

"[f]eedback to students is general and few students assess their own work." *See* Def. 56.1, ¶¶39-41, Ex. Q.

In Principal Small's May 5, 2014 and Assistant Principal Lee's May 16, 2014 observations, Plaintiff was again rated either "ineffective" or "developing" for the entirety of the "Instruction" domain. Assistant Principal Lee noted in his observation that Plaintiff's "instructional purpose of the lesson is communicated to students but [he] does not tie it to the broader scope and learning," and that Plaintiff "has to be reminded of coverages and getting to meetings and classes on time." *See* Def. 56.1, ¶¶ 46-48, Ex. S. Furthermore, Principal Small noted that Plaintiff "participates to a limited extent in professional activities when appropriate," and that he "must be reminded by supervisors about complying with school and district regulations." *See* Def. 56.1, ¶¶42-45, Ex. R.

Plaintiff's final two observations of the 2013-2014 school year continued with this same pattern of negative ratings in the areas of instruction and professional development. In an Observation dated May 23, 2014, Assistant Principal Lee rated Plaintiff as "ineffective" in one category and "developing" in nine categories; Plaintiff received only "ineffective" or "developing" ratings for the entirety of the "Professional Development" domain. Assistant Principal Lee specifically noted that Plaintiff's "pacing of the lesson may not provide students the time needed to be intellectually engaged or may be so slow that many students have a considerable amount of 'downtime,'" and that Plaintiff "does not seek out for any professional growth or does so only when prompted." *See* Def. 56.1, ¶¶49-52, Ex. T. Finally, Principal Small's May 27, 2014 observation rated Plaintiff as "developing" in twelve categories, specifically noting that Plaintiff's "[l]esson structure is uneven or may be unrealistic about time expectations," "[his] approach to using formative assessment is rudimentary," and that Plaintiff

only "makes perfunctory attempts to incorporate students' questions and interests into the lesson." *See* Def. 56.1, ¶¶53-54, Ex. U. Plaintiff clearly did not improve his pedagogy as he was required when he signed his probation extension agreement at the end of the 2012-2013 school year, and DOE was therefore well justified in denying him tenure.

Here, the fact that both Assistant Principal Lee and Principal Small evaluated Plaintiff on multiple occasions and rated Plaintiff's pedagogical skills as "ineffective" or "developing" across the vast majority of the HEDI category system, undermines any potential inference of discriminatory intent. *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 259 (E.D.N.Y May 21, 2012) ("A discriminatory inference can be rebutted when multiple evaluators all express dissatisfaction with the plaintiff's performance.").

Critically, DOE had made several attempts during the 2012-2013 and 2013-2014 school years to help Plaintiff's performance including assigning him a mentor, advising him in writing how he could improve, extending his probationary period, and making professional development available to him. *See* Def. 56. 1 ¶¶ 12, 26-27, 35-54. Moreover, all of Plaintiff's classroom observation reports provided him with actionable, concrete recommendations for improving his pedagogy, recommendations that he repeatedly failed to implement. Principal Small stated that for him to recommend tenure, a teacher's instruction must be rated as "effective." *See* Chancellor Committee's Report, Ex. BB at D000437. Superintendent Stallings-Harte stated that her reason for going against the majority report from the Chancellor's Committee was her review of Plaintiff's observations and the letters to his file. *See* Def 56.1 ¶69. Ultimately Plaintiff's failure to improve warranted his denial of tenure.

**D.     Plaintiff Cannot Demonstrate that Defendants' Proffered Reasons Are Pretextual**

After a defendant articulates its legitimate non-discriminatory reasons, as was just done, the burden shifts back to Plaintiff to prove by a preponderance of the evidence that the

stated reasons are a pretext for discrimination based upon his disability; that is, that defendant's proffered reasons are "false *and* that discrimination was the real reason." *Ouaratino,* 71 F.3d at 64. Here, Plaintiff cannot satisfy this burden when his performance deficiencies are so well documented in contemporaneous documents, including letters to file and classroom observation reports. Plaintiff has not offered *any* evidence to show that the legitimate, non-discriminatory reasons offered by Defendant for its actions were false. Indeed, as the record makes clear, Plaintiff has proffered nothing more than conjecture and speculation along with his own disagreement of Defendant's observations and evaluation of his performance. However, such conclusory allegations that are unsupported by evidence are insufficient to show pretext. *See Bickerstaff*, 196 F.3d at 452.

Furthermore, Superintendent Stalling-Harte's decision to deny Plaintiff's completion of probation was based upon her review of his observations and letters to file. *See* Def. 56.1 ¶69. Any insinuation that Principal Small denied his tenure to avoid providing Plaintiff with an accommodation for his injuries is undercut by the fact that he made his recommendation well before Plaintiff requested any accommodations, and he has provided elevator access, aid in setting up classrooms, and someone to help carry items to other teachers that were injured or otherwise required assistance, including those in their probationary period. *See* Def. 56.1 ¶76. It strains credulity that Principal Small would not have denied Plaintiff's tenure "but-for" his injury when the accommodations that Plaintiff would have required had previously been provided to other similarly situated teachers. Therefore, Plaintiff has utterly failed to present any evidence that Defendant's legitimate non-discriminatory reasons are false, and that disability discrimination was the "but-for" cause for his denial of tenure and termination.

**POINT III**

**NO TRIABLE ISSUES OF MATERIAL FACT
EXIST CONCERNING PLAINTIFF'S CLAIMS
OF RETALIATION UNDER THE ADA**

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: 1) plaintiff engaged in an activity protected by the ADA; 2) plaintiff's employer was aware of the activity; 3) the employer took an adverse employment action against plaintiff; and 4) a causal connection exists between the alleged adverse employment action and protected activity. *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).  Summary judgment is proper with respect to a retaliation claim when a plaintiff fails to make out a *prima facie* case, or if the employer demonstrates a legitimate reason for the allegedly retaliatory conduct that the plaintiff is unable to rebut.  *See Quinn v. Green Tree Credit Corp*., 159 F.3d 759, 768-69 (2d Cir. 1998).

ADA retaliation claims require that the claimed protected activity be the "but-for" cause of the alleged adverse action by the employer.  *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).

**A.     Plaintiff Cannot Make Out A *Prima Facie* Case of Retaliation**

Plaintiff cannot show that there exists a causal connection between his protected activities (his January 13, 2015 OEO complaint and June 13, 2015 e-mail requesting reasonable accommodations), and the denial of his tenure and subsequent termination.

"A causal connection between the protected activity and the adverse action may be demonstrated by showing '(1) direct proof of retaliatory animus directed against the [p]laintiff, (2) disparate treatment of similarly situated employees, or (3) that the retaliatory action occurred close in time to the protected activities.'" *Krasner v. City of New York*, No. 11 Civ. 2048, 2013 U.S. Dist. LEXIS 136534, at *49 (S.D.N.Y. Sept. 23, 2013) (*quoting Elhanafy*

17

*v. Shinseki*, No. 10 Civ. 3192, 2012 U.S. Dist. LEXIS 81302, at *53-54 (E.D.N.Y. June 12, 2012).

Moreover, "[a]lthough temporal proximity of events can give rise to an inference of retaliation sufficient to establish causation 'the mere filing of such a complaint does not insulate an employee from subsequent discipline or discharge by his employer, nor create an automatic presumption that any subsequent employer action adverse to the employee in nature.'" *Ayazi v. New York City Dep't of Educ.*, No. 8 Civ. 2456, 2012 U.S. Dist. LEXIS 140767, at *23-24 (E.D.N.Y. 2012) (internal citations omitted).  In addition, the Second Circuit has upheld the dismissal of claims where the time span between the plaintiff's protected activity and the alleged retaliatory action was as short as two months. *Brown v. City of New York*, 622 Fed. Appx. 19, 20 (2d Cir. 2015).

Regarding Plaintiff's January 13, 2015 OEO complaint, any inference that Defendant retaliated against Plaintiff for making his complaints is undermined by the length of time between his complaint and the Superintendent's June 16, 2015 letter reaffirming her decision not to certify completion of his probation. *See* Def. 56.1  ¶¶69-71, 72, Exs. EE and GG. It was five months from Plaintiff's complaint until the Superintendent's affirmance of her prior decision. Furthermore, Superintendent Stallings-Harte did not recall ever learning of the OEO complaint. *See* Def. 56.1 ¶ 75. "[D]istrict courts in the Second Circuit have consistently held that a passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *See Murray v. Visiting Nurse Servs.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases).

Moreover, that Defendant began addressing Plaintiff's performance issues *before* Plaintiff filed his OEO complaint further undermines Plaintiff's claim of retaliation. Prior to

Plaintiff's January 13, 2015 OEO complaint and June 13, 2015 e-mail, Plaintiff's probation had previously been extended, he had received numerous letters to file regarding his professional failures, and he had received multiple observations that demonstrated his lack of pedagogical improvement. The Second Circuit has held that an inference of retaliation does not arise "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). *Accord Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d 162 (E.D.N.Y. 2005) ("There can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity") (citing *Slattery*). Thus, the fact that the Plaintiff had been repeatedly written up and issued multiple negative evaluations before his protected activity negates any inference of retaliatory intent.

Critically, and fatal to Plaintiff's claim, Principal Small had recommended denial of Plaintiff's completion of probation (in July 2014, *before* he complained to OEO), and Superintendent Stallings-Harte had denied Plaintiff's completion of probation and discontinued him (in September 2014, which was also *before* his OEO complaint). *See* Def. 56.1, ¶¶58-65; Exs. W, X, and Z. This timing does not permit an inference of retaliatory intent. *See Nakis v. Potter*, 422 F. Supp. 2d 398, 423 (S.D.N.Y. 2006) (no inference of retaliatory intent where adverse action predates protected activity).

While Plaintiff's June 13, 2015 letter requesting accommodations and the Superintendent's June 16, 2015 letter are closer in temporal proximity, the same standard applies, as the Superintendent's June 16 letter was in line with her previous letters sent on September 22, 2014 and December 2, 2014 denying Plaintiff tenure. That the incorrect letter to Plaintiff was sent on June 11, 2015 reversing the Superintendent's decision on December 2, 2014

does not change the fact that her June 16, 2015 letter was merely a continuation of a process that began long before any of Plaintiff's protected activity. *See Reyes v. Krasdale Foods, Inc*., 945 F. Supp. 2d 486, 494 (S.D.N.Y. 2013) ("[A] causal connection cannot be inferred between protected activity and adverse action, despite close temporal proximity, when an employer acts the same way both before and after the protected activity"); *Romano v. Stora Enso Corp.*, No. 07 Civ. 4293, 2010 U.S. Dist. LEXIS 24937, at *68-70 (E.D.N.Y. Feb. 12, 2010) (*citing Slattery* to find that temporal proximity is not enough where discussions regarding the plaintiff's unsatisfactory performance occurred before her discrimination complaint); *Rothenberger v. New York City Police Dep't*, No. 06 Civ. 868, 2008 U.S. Dist. LEXIS 46614, (E.D.N.Y. June 16, 2008) (retaliation claim dismissed where plaintiff received "below standards" evaluations before he filed his EEOC charge).

In *Slattery*, the plaintiff had received a promotion in March 1996, but had been receiving negative feedback by February 1997, and then had been reassigned in July 1998. *See Slattery*, 248 F.3d at 89. After receiving the negative feedback, the plaintiff engaged in protected activity by filing an EEOC charge alleging discrimination of which his employer became aware in January 1999. *See id.* at 95. Following plaintiff's protected activity, the defendant employer placed the plaintiff on probation in July 1999 and then terminated him in February 2000. *See id.* Though the adverse employment actions of probation and termination followed his protected activity, summary judgment was still appropriate because those adverse actions were "both part, and the ultimate product" of the prior, progressive discipline. *Id.* at 95.

On an even shorter timeline, in *Romano*, the plaintiff began working at the defendant employer in August 2005 and had received a positive evaluation in March 2006. *See Romano,* 2010 U.S. Dist. LEXIS 24937, at *2-4. On November 3, 2006, the plaintiff received a

negative evaluation and was informed she was not meeting the expectations for her position. *See id.* at *7-9. The plaintiff did not believe on November 3, 2006 that her job was in jeopardy. *See id.* at *10. The plaintiff continued to receive poor feedback in mid-November 2006 and was told by her supervisors to craft a plan for her continued employment. *See id.* The plaintiff then sent a letter on November 26, 2006 alleging discrimination. *See id.* at *15. On December 4, 2006, just days after the protected activity, the plaintiff was informed that her plan for continued employment was not satisfactory and she was terminated on December 13, 2006. *See id.* at *19, 22. Despite this close temporal proximity (a mere 8 days), the Court in *Romano* found no temporal proximity because the adverse action against plaintiff (her termination), was well under way by the time she engaged in a protected activity. *See id.* at *70-71.

Nor do the gradual adverse job actions have to be disciplinary in nature to negate an inference of retaliation. In *Nielsen v. New York City Dep't of Educ.*, No. 04 Civ. 2182, 2009 U.S. Dist. Lexis 8866 (E.D.N.Y. Feb. 4, 2009), the plaintiff had been hired in June 1988 and was given feedback on how he could improve his performance in evaluations over the course of his employment. After receiving evaluations with indications on how to improve, the plaintiff made a complaint of discrimination in November 1988. *See id.* at *2-3, 19. The plaintiff was then terminated on February 2, 1989, in a memorandum noting his unsatisfactory performance. *See id.* at *8. In *Nielsen*, the Court found that, despite the temporal proximity, there was no causation to be inferred because plaintiff had been instructed on how to improve his job performance in the evaluations which formed the basis of for his termination. *See id.* at *19.

As argued throughout this memorandum of law, prior to Plaintiff's protected activity, Plaintiff had had his probationary period extended, he had received numerous letters to file noting his professional failures and that he could face adverse ratings or termination, and had

received six observations that showed he was still deficient as an educator, especially in the domain of "Instruction." *See* Def. 56.1, ¶¶29-54, Exs. P, Q, R, S, T and U. Plaintiff's failures as a teacher were well documented prior to any protected activity.

While Plaintiff had received a rating of "Satisfactory" on his 2012-2013 evaluation, as evidenced in *Slattery* and *Romano*, prior promotions or positive performance evaluations do not negate subsequent declines in work performance. *See Shabat v. Blue Cross Blue Shield*, 925 F. Supp. 977, 988 (W.D.N.Y. 1996) ("[P]rior good evaluations alone cannot establish that later unsatisfactory evaluations are pretextual. To hold otherwise would be to hold that things never change, a proposition clearly without a basis in reality.") (citations omitted), *aff'd sub nom Shabat v. Billotti*, 108 F.3d 1370 (2d Cir. 1997); *Romano*, 2010 U.S. Dist. LEXIS 24937, at *37; *Ragin v. E. Ramapo Cent. Sch. Dist*., No. 05 Civ. 6496, 2010 U.S. Dist. LEXIS 32576, at *38 n.11 (S.D.N.Y. Mar. 31, 2010).

As Plaintiff cannot establish a causal connection between his protected activity and the adverse employment action, his ADA retaliation claim must be dismissed.

**B.      Defendant Has Proffered Legitimate, Non-Retaliatory Reasons**

Assuming *arguendo* that Plaintiff was able to establish a *prima facie* case of retaliation, the burden now shifts to Defendant to provide a legitimate, non-retaliatory reason for its action, and if that burden is met, the burden shifts back to Plaintiff to show that the proffered reason is pretextual. *See Krasner*, 2013 U.S. Dist. LEXIS 136534, at *45 (citing  *Kessler v. Westchester Dept. of Social Services*, 461 F.3d 199, 205-06 (2d. Cir. 2006).

Superintendent Stallings-Harte reviewed Plaintiff's file, as she did before her September 22, 2014 and December 3, 2014 letters, and considered his observations and letters to file and determined his pedagogy did not warrant tenure. *See* Def. 56.1 ¶69. The administrative error that caused Plaintiff to be sent an erroneous letter overturning his denial of tenure is

nothing more than that—an administrative error. There is simply no insidious intent to be inferred from such an error. As previously noted, due to a miscommunication between the Superintendent and her secretary, the wrong letter was sent out. Once the mistake was discovered, the correct letter was sent out posthaste. *See* Def. 56.1 ¶¶70-71. *See Plourde v. Snow*, No. 02 Civ. 5532, 2006 U.S. Dist. LEXIS 96040, at *36 (E.D.N.Y. June 14, 2006) (finding administrative error to be a legitimate non-discriminatory reason for an adverse action), *aff'd sub nom. Plourde v. Paulson*, 236 F. App'x 656 (2d Cir. 2007); *Alexidor v. Donahoe*, No. 11 Civ. 9113, 2017 U.S. Dist. LEXIS 30410, at *n9 (S.D.N.Y. March 2, 2017); *Dressler v. New York City Dep't of Educ.*, No. 10 Civ. 3769, 2012 U.S. Dist. LEXIS 44249, at *22 ("A corrected administrative error without attendant deleterious effect does not constitute an adverse employment action.").

      As Defendant has provided legitimate, non-discriminatory reasons for its actions, the burden shifts back to Plaintiff to show that the reasons are pretextual, which he cannot. Plaintiff can only point again to the temporal proximity of his June 13, 2015 letter and the corrected June 16, 2015 letter, but as explained above, temporal proximity alone cannot carry Plaintiff's burden. Furthermore, the close temporal proximity cited above is directly contravened by the admissible evidence that the first letter was sent in error.

      Because Plaintiff can neither show a causal connection, nor establish that Defendant's legitimate reasons for his termination were a pretext for unlawful retaliation, Plaintiff's retaliation claims under the ADA must be dismissed.

**POINT IV**

**NO TRIABLE ISSUES OF MATERIAL FACT
EXIST CONCERNING PLAINTIFF'S CLAIMS
OF FAILURE TO ACCOMMODATE**

To state a *prima facie* case for failure to provide a reasonable accommodation under the ADA, a plaintiff must demonstrate that (1) he has a disability; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations. *See McMillan v. City of New York*, 711 F.3d 120, 125-26 (2d. Cir. 2013) (*citing McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).

There can be no failure to accommodate claim here, as Plaintiff had been terminated prior to his request for accommodation. *See Robles v. Medisys Health Network, Inc.*, No. 19 Civ. 6651, 2020 U.S. Dist. LEXIS 109115, at *40 (E.D.N.Y. June 19, 2020) (no plausible claim for failure to engage in interactive process where plaintiff was already terminated) (*citing Caskey v. Cty. Of Ontario*, 560 Fed. Appx. 57, 58 (2d. Cir. 2014).

Furthermore, while "it is generally expected under the ADA that '[a]n employee's request for reasonable accommodation requires a great deal of communication between the employee and employer,'" it strains credulity to conclude that an employer must engage in discussions of accommodation with employees that it has previously decided to terminate. *Saunders v. Queensborough Cmty. Coll.*, No. 13 Civ. 5617, 2015 U.S. Dist. LEXIS 128608, at *20-21 (E.D.N.Y. Sept. 24, 2015) (*quoting Powers v. Polygram Holding*, 40 F. Supp. 2d 195, 203 (S.D.N.Y. Apr. 2, 1999). The EEOC itself has issued guidance stating that:

> Although the ADA does not require employees to ask for an accommodation at a specific time, the timing of a request for reasonable accommodation is important because an employer does not have to rescind discipline (including a termination) or an evaluation warranted by poor performance.

24

Applying Performance and Conduct Standards to Employees with Disabilities, III. Application of ADA Legal Requirements to Performance and Conduct Standards, A. Performance standards, U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/laws/guidance/applying-performance-and-conduct-standards-employees-disabilities, last visited Aug. 30, 2020.

Superintendent Stallings-Harte had previously determined, multiple times, that Plaintiff's tenure should be denied for pedagogical failures and it made no logical sense, nor did DOE have a duty, to engage in a discussion of reasonable accommodations with Plaintiff as he was already terminated. Accordingly, Plaintiff's failure to accommodate claim should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court issue an order granting Defendant's motion for summary judgment and dismissing Plaintiff's claims in their entirety, with prejudice, and awarding Defendant such other and further relief as the Court deems just and proper.

Dated:  Brooklyn, New York
        September 4, 2020

                                        **JAMES E. JOHNSON**
                                        Corporation Counsel of the City of New York
                                        Attorney for  Defendant
                                        100 Church Street, Room 2-122
                                        New York, New York  10007
                                        (212) 356-2507
                                        mferguso@law.nyc.gov


                        By:     _____
                                        /s/ *Mark R. Ferguson*
                                        Mark R. Ferguson
                                        Assistant Corporation Counsel


**MARK R. FERGUSON,**
**IVÁN A. MÉNDEZ, JR.,**
    **OF COUNSEL**

Index No.  16 Civ. 819 (CBA) (SMG)

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

EDGAR TELESFORD,

Plaintiff,

-against-

NEW     YORK     CITY     DEPARTMENT     OF
EDUCATION,

Defendant.

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**

---

***JAMES E. JOHNSON***
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street
New York, N.Y.  10007

*Of Counsel:  Mark R. Ferguson*
*Tel:  (212) 356-2507*
*Matter #.  2016-008526*

---

*Due and timely service is hereby admitted.*

*New York, N.Y.*  .................................................. *, 20......*

................................................................................, *Esq.*

*Attorney for* .....................................................................